IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) | Master Docket Case No. 19-cv-01717 |
|  | ) |  |
| In re: WATTS COORDINATED | ) | Judge Andrea R. Wood |
| PRETRIAL PROCEEDINGS | ) |  |
|  | ) | Magistrate Judge Sheila M. Finnegan |
|  | ) |  |

**This document relates to all cases.**

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS AND OTHER FEDERAL INVESTIGATIVE MATERIALS RELATED TO THE CRIMINAL PROSECUTION OF <u>DEFENDANTS WATTS AND MOHAMMED</u>**

Plaintiffs are entitled to grand jury materials and Title III materials from the investigation and prosecution of Kallatt Mohammed and Ronald Watts. This material is evidence of the corrupt criminal enterprise that is the subject of these coordinated proceedings, and the Court should order its disclosure subject to an appropriate confidentiality order. Indeed, the government does not oppose an order requiring the production of "relevant grand jury materials," and Plaintiffs submit that all the grand jury materials are relevant given the broad scope of the claims at issue in these cases. Although the government contends that some grand jury material may not be relevant to these proceedings, it provides no basis for that position. The government likewise provides no basis for its request that the Court review *in camera* the documents that the government concedes are relevant.

In addition, the information that the government collected pursuant to Title III, which, at a minimum includes conversations recorded with the consent of a then-confidential informant and certain pen-register information, is also relevant to these proceedings. The government opposes the production of any Title III materials even for *in camera* review, but the

government's argument on this issue ignores controlling case law. As discussed in Plaintiffs' motion and below, the Court has the authority to order disclosure of the Title III material, and the Court should exercise this authority here.

**ARGUMENT**

The parties agree on the standard for the release of grand jury materials pursuant to Federal Rule of Criminal Procedure 6(e). See Dkt. 46 at 5 (Plaintiffs' motion); Dkt. 60 at 3-4 (government's response).

The parties disagree on the standard to be applied to release of Title III material. As described below, certain Title III material may be disclosed without restriction. Namely, there are no restrictions prohibiting the disclosure of conversations that were recorded with the consent of at least one party to the conversation, and there are no restrictions prohibiting the disclosure of pen-register information. Although other Title III material, if any exists, may be disclosed only as provided by statute, all such material should be produced in this case pursuant to the statutory authority allowing the government to produce material that was lawfully collected pursuant to Title III for use in a subsequent civil case.

**I.    The Court should order the production of all grand jury materials.**

As noted above, Plaintiffs and the government agree that "relevant" grand jury materials should be released pursuant to a Court order. Plaintiffs, however, maintain that it is highly likely that all grand jury materials are relevant to this case. Although the government has declined to provide even a broad overview of the materials at issue, it is difficult to imagine that any grand jury material would not be relevant in this case.

Watts and Mohammed were prosecuted for stealing money from someone who they thought was a civilian involved in the drug trade but who was actually a confidential informant.

*See* Ex. 1 (Dkt. 1 in *United States v. Watts, et al.*, Case No. 1:12-cr-00087 (N.D. Ill.)). The confidential informant and the government also alleged that Watts had previously "threatened to plant drugs on the CS and then arrest him," and that at one point, Watts "had other officers falsely arrest the CS on drug charges." Ex. 2 (Dkt. 84 in 1:12-cr-00087). All of the Coordinated Plaintiffs allege that Watts and his crew framed them for crimes they did not commit; many also allege that Watts and his crew stole their money. These allegations directly parallel the government's accusations against Watts and Mohammed.

Any grand jury material that touches on Watts or Mohammed stealing money from someone who they believed was a civilian is relevant to Plaintiffs' claims, as is any grand jury material that touches on attempts by Watts or Mohammed to frame someone for a crime they did not commit. Similarly, Plaintiffs are pursuing *Monell* theories relating to the City's failure to supervise the Defendants and other officers, and its failure to take action in response to the many serious accusations of misconduct. The Court should therefore order the government to produce all grand jury material.

## II. The Court should not conduct an *in camera* review of documents that the government acknowledges are relevant or of documents that Watts or Mohammed received during the criminal proceedings.

The government proposes making a recommendation to the Court, *in camera* and *ex parte*, about what grand jury material is relevant and what material is not relevant, and it requests that the Court then review both categories of documents to determine whether the government's relevance position is correct. The Court should reject this proposal.

As stated above, it is highly likely that all material is relevant and should be produced. Any *in camera* review should exclude the following two categories of documents, which the Court should require the government to promptly produce.

3

First, the Court need not review documents that the government identifies as relevant. Nothing in Rule 6 requires such a review, and the government does not argue otherwise. Rather, all that Rule 6 requires is a Court order. The Court should therefore order the prompt production, subject to an appropriate confidentiality order, of all grand-jury material that the government agrees is relevant.

Second, the Court should decline to review any materials that the government provided to Mohammed or Watts during the criminal proceedings. As Plaintiffs explained in detail in their motion, refusing to provide that information to Plaintiffs gives Mohammed and Watts an unfair informational advantage during the civil proceedings. Dkt. 46 at 6-7. Neither the government nor Watts disputes that point. Mohammed argues only that any informational advantage he may have is not "unfair" because he went to prison. Dkt. 59 at 1-2. The fact that Mohammed went to prison is, of course, irrelevant to his informational advantage in these civil cases. Mohammed also argues that his current civil attorneys did not review the grand jury material that Mohammed received. Dkt. 59 at 2. Again, this is irrelevant. Mohammed himself had the materials. Thus, the Court should order, subject to an appropriate confidentiality order, the prompt production of any grand jury material that the government itself deems relevant, as well as any grand jury material that was provided to Watts or Mohammed during the criminal proceedings.

Moreover, multiple parties in the Coordinated Cases affirmatively support Plaintiffs' request for the materials, and no party other than Mohammed opposes the request, which further supports Plaintiffs' position that the materials are relevant. And because the government has failed to identify even at a high level what material it believes is irrelevant, the Court should order the production of all grand jury material. That said, to the extent there is grand jury material that falls outside of the two categories discussed above, Plaintiffs do not object to the

4

Court conducting an *in camera* review to confirm the parties' belief that the material is relevant before ordering production.

### III. The Court should order the production of all Title III materials.

While investigating Watts and Mohammed, the government recorded conversations with the consent of one or more then-confidential sources, and also collected pen register information. The government's own public filings in the criminal proceedings reveal that Watts and Mohammed were recorded talking about abusing their authority as police officers by taking money to which they were not entitled, which directly parallels allegations made by a number of the Plaintiffs in the coordinated cases. Because these conversations were recorded with the consent of one party to the conversations, there is no restriction on producing this information in civil discovery. And any other material may be produced pursuant to the statutory exception in 18 U.S.C. § 2517(3) that permits the production of Title III material for use in subsequent legal proceedings. As described below, the government's position that it may not produce any Title III information is untenable.

### A. Recordings made with the consent of at least one participant to the conversation, and pen-register information, are not subject to any restrictions on disclosure.

In the Seventh Circuit, recordings that were made with the consent of at least one party to the relevant conversation fall outside the restrictions set forth in Title III, 18 U.S.C. § 2517. That is the express holding of *In re High Fructose Corn Syrup Antitrust Litig.*, a civil antitrust case where the Seventh Circuit explained:

> **That interceptions exempted by sections 2511(2)(c) or (d) are not subject to section 2517(3) is apparent from the structure of Title III.** Section 2511(1) forbids the interception of covered communications (that is, oral, wire, or electronic) "except as otherwise specifically provided in [Title III]." There are two relevant sets of "otherwise specifically provid[ing]" provisions. One is in subsection 2 of section 2511 and includes, as we have been emphasizing, most conversations intercepted by

5

> (or with the consent of) one of the parties. The other exceptions in subsection 2 include pen registers, switchboard operators, marine distress signals, and foreign intelligence surveillance—a heterogeneous array. In each instance the excluded practice is described in its own subsection together with any exceptions to the exception, such as, in the case of section 2511(2)(d), for recording one's conversations for a criminal or tortious purpose. Each of the exception subsections in section 2511(2) is complete and self-contained. But then there is another set of provisions, sections 2516 to 2519, defining and implementing the key exception for interceptions pursuant to a warrant. It is in that cluster of sections that section 2517(3) resides. Its location indicates that it is limited to cases in which an otherwise unlawful interception is lawful by virtue of having been made pursuant to warrant; the surrounding provisions make clear that the "authorization" to which the subsection refers is judicial authorization, not exemption. To exempt is not to authorize, though the effect may be the same. **So if, as in the case of most interceptions of communications by or with the consent of a party, the interception does not require a warrant to be lawful, Title III does not restrict its use**.

*In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624–25 (7th Cir. 2000) (emphasis added) (internal citations omitted).

The Seventh Circuit in *In re High Fructose Corn Syrup* held that conversations recorded by a government informant were not subject to the Title III's disclosure restrictions. *Id.* at 625-626. We know that some conversations were recorded with the consent of at least one then-confidential source during the criminal investigation of Watts and Mohammed because the government disclosed both the existence and (in part) the content of some of those conversations. *See* Ex. 1 (Dkt. No. 1 in *United States v. Watts, et al.*, Case No. 1:12-cr-00087). In fact, not only were the contents of the recordings disclosed, but the identity of the informant who had consented to the recordings was disclosed as well. *See* Ex. 3 at 15-16 (10/9/2013 Sentencing Tr. in *United States v. Watts*, 12-cr-87-1) (Watts' counsel discussing the informant by name); *id.* at 23-24 (the Court discussing the informant by name); *see also* Ex. 4 (Dkt. 82 in 1:12-cr-00087) (Watts' sentencing memorandum, discussing informant by name). Given those disclosures and the relevant case law, there is no basis to withhold from the Coordinated Plaintiffs the recordings

6

from Watts and Mohammed's criminal cases made with the consent of at least one participant to the conversation.[1]

Public filings in the criminal cases also show that the government captured additional information using pen registers. *See* Ex. 1 ¶¶ 11-12 (Dkt. No. 1 in *United States v. Watts*). *High Fructose* explains that Title III does not prohibit the disclosure of this information either. *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d at 624-25. Accordingly, the Court should order disclosure, subject to an appropriate confidentiality order, of recordings made with the consent of at least one participant to the conversation and pen-register information.

### B. The Court should also order the disclosure of any other Title III material, including any conversations recorded without the consent of any participant to the conversation.

For conversations or information gained without the consent of either party, "Title III also specifically permits, as a matter of federal law, disclosure of an intercepted communication in connection with a court proceeding if the interception was authorized under Title III. 18 U.S.C. § 2517(1)-(3)." *Dumas v. Jensen*, 11 C 3032, 2013 WL 951102, at *2 (N.D. Ill. Mar. 11, 2013) (Kennelly, J.). Judge Kennelly's description of the law in *Dumas* follows the Seventh Circuit's reasoning in *In re High Fructose Corn Syrup*. His opinion is also consistent with the language of 18 U.S.C. § 2517, and in particular the provision permitting the disclosure of Title III information "in any proceeding held under the authority of the United States" found in § 2517(3).[2]

---

[1] Notably, in contrast to the broad objections lodged here, the government in the *High Fructose* case did not even object to the production of the recordings at issue.

[2] Judge Kennelly's reasoning is also consistent with *S.E.C. v. Rajaratnam*, 622 F.3d 159 (2d Cir. 2010), which was discussed at some length in both Plaintiffs' motion and the government's response. In short, the Second Circuit held that Title III did not prohibit the disclosure of recordings in subsequent civil proceedings, and it tasked the district court with determining the appropriate scope of disclosure given the particular facts of that case. The government concedes that *Rajaratnam* "holds that Title III does not

7

As the Seventh Circuit explained in the *High Fructose Corn Syrup*, § 2517(3)'s reference to proceedings "seems merely a shorthand for the longer and unambiguous definition in the complementary section 2515 of proceedings as covering 'any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof.'" *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d at 624. In other words, civil litigation is included in the scope of "legal proceedings" in which Title III information may be disclosed pursuant to § 2517(3). And the Seventh Circuit further explained that disclosure is not limited to an actual trial, noting that interpreting § 2517(3) to exclude the discovery stage of cases "would be a particularly strange limitation." *Id*. Thus, conversations that were lawfully intercepted pursuant to Title III during the investigation of Watts or Mohammed, even without the consent of any party to the recording, should also be disclosed, again pursuant to an appropriate confidentiality order.

### C. The government fails to provide any reason for the Court not to order production of the Title III materials.

The government's response brief neither addresses nor attempts to distinguish *In re High Fructose*. Rather, in opposing the production of all Title III material, the government cites *United States v. Dorfman*, 690 F.2d 1230 (7th Cir. 1982), and *United States v. Blagojevich*, 662 F. Supp. 2d 998 (N.D. Ill. 2009), for the broad proposition that where recordings are subject to Title III's restrictions, disclosure may only be made where the relevant statute, 28 U.S.C. § 2517, authorizes such disclosure. Dkt. 60 at 8.

*Dorfman* and *Blagojevich* are inapplicable because they both involved requests by the media for Title III information during criminal proceedings. Neither *Dorfman* nor *Blagojevich*

---

prohibit all disclosures of legally intercepted wire communications that it does not expressly permit." Dkt. 60 at 10 (government's response).

8

contradicts or undercuts *In re High Fructose Corn Syrup*, *Rajaratnam*, or the other case law addressing the production of Title III material in civil litigation—especially under an appropriate confidentiality order—and neither case supports the government's position that it may not produce Title III material in these coordinated cases.

Because there are no restrictions on the release of pen-register information or conversations recorded with the consent of at least one party, and because any other material may be released pursuant to the exception permitting disclosure in legal proceedings, the Court should grant Plaintiffs' motion and order disclosure, subject to an appropriate confidentiality order, of the Title III materials.

## CONCLUSION

For the reasons stated in their motion and above, Plaintiffs request that this Court enter an Order requiring production, subject to an appropriate confidentiality order, of the grand jury and Title III material from the criminal investigation and prosecution of Watts and Mohammed.

Respectfully submitted,

/s/ Scott Rauscher
One of the Attorneys for the Plaintiffs Represented by Loevy & Loevy in the Coordinated Proceedings

Arthur Loevy
Jon Loevy
Scott Rauscher
Joshua Tepfer
Theresa Kleinhaus
Sean Starr
Loevy & Loevy
311 N. Aberdeen St., Third Floor
Chicago, IL 60607

/s/ Joel A. Flaxman
One of the Attorneys for Plaintiffs Represented by Kenneth N. Flaxman, P.C. in the Coordinated Proceedings

Joel A. Flaxman
Kenneth N. Flaxman
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200