# EXHIBIT 3

*United States v. Watts, et al.*, Case No. 1:12-cr-00087
October 09, 2013, Transcript of Sentencing Proceedings

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
    UNITED STATES OF AMERICA,        )   No. 12 CR 87-1
 4                                   )
                 Plaintiff,          )
 5                                   )
         v.                          )   Chicago, Illinois
 6                                   )   October 9, 2013
    RONALD WATTS,                    )   1:35 p.m.
 7                                   )
                 Defendant.          )   Sentencing
 8

 9            TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE SHARON JOHNSON COLEMAN
10

11  APPEARANCES:

12  For the Government:     HON. GARY S. SHAPIRO
                            United States Attorney, by
13                          MS. MARGARET J. SCHNEIDER
                            MS. MEGAN C. CHURCH,
14                          Assistant United States Attorneys
                            219 South Dearborn Street
15                          Chicago, Illinois  60604

16
    For the Defendant:      LAW OFFICES OF THOMAS GLASGOW
17                          1834 Walden Office Square
                            Suite 500
18                          Schaumburg, Illinois  60173
                            BY:  MR. THOMAS T. GLASGOW
19                               MR. WILLIAM B. BEATTIE

20  U.S. PROBATION:         MR. ZAKARY FREEZE

21

22

23         TRACEY DANA McCULLOUGH, CSR, RPR
                 Official Court Reporter
24            219 South Dearborn Street
                       Room 1426
25            Chicago, Illinois  60604
                   (312) 435-5570
```

1  was the one who always accepted extortion payments.  Mr. Watts
2  was never there.
3        Additionally, Judge, he claims on page 3 that he
4  never got any payments from the extortions of any dealers or
5  any payments other than a $200 loan from the charged conduct,
6  which again, is an absurd assertion for this Court -- that
7  the government would put forth to the Court.
8        As for the false case of Mr. Hopkins, this Court
9  knows that the defendant -- or excuse me, Mr. Hopkins has a
10 lengthy criminal record.  I believe that we litigated parts of
11 his criminal background, and the Court is well aware of the
12 felonies that Mr. Hopkins has, as well as the crimes of moral
13 turpitude that he has in his background.  He admitted to the
14 crimes that he was arrested for.  The government's supposition
15 that it was Mr. Watts who put a case on him is nothing more
16 than that.  There was nothing that I could find for this Court
17 that would indicate through a transcript or through anything
18 else during the course of his plea that he made any assertion
19 or allegation towards Mr. Watts or any other law enforcement
20 official that they had done anything wrong.
21       This Court has to take into consideration the fact
22 that not only is Mr. Hopkins a convicted felon and served
23 penitentiary time, but he does have severe alcohol and drug
24 problems.  Additionally, the Court is well aware that has a
25 propensity to lie due to his prior arrests and convictions that

1  have been brought forward and made part of the litigation in
2  this case.  Mr. Hopkins is a questionable individual at best,
3  and he has every reason to lie about his action towards Mr.
4  Watts as he was getting payment from law enforcement for his
5  participation in this matter.
6         Mr. Watts has through the presentation and the
7  attachments that we have presented to this Court, has engaged
8  in a long life of public service.  And but for the charges that
9  have been levied against him and the actions which the
10 government ends up alleging, he has had a very storied
11 background as a Chicago police officer.  Obtaining numerous
12 awards, gaining the benefit of the community, and helping the
13 community around him.  I know this Court has read the letters
14 that have been attached to our sentencing memorandum showing
15 what kind of father and what kind of person he is.  It shows
16 the character that Mr. Watts does have, and it shows a
17 rehabilitatable person that is worth saving and worth going the
18 extra mile for.
19         Mr. Watts has numerous amounts of mitigation in this
20 matter, which we have presented.  And I always find it
21 interesting that the government attempts to characterize that
22 in some way as aggravation as if he had a lengthy criminal
23 background that would be a much better issue for this Court to
24 take into aggravation.  The fact that he has a good background
25 shows that he is somebody that is not deserving of a long

1  support.

2           So if the Court were to look at the picture of you
3  through that lens only, this Court would see a picture of a
4  strong male figure not only in his family, but in his ethnic
5  community, professional community, community at large.
6  Somebody to be respected and to be an example.  And then the
7  Court has another lens that the Court has to look through.  And
8  your counsel is arguing that when I look through that lens, I
9  look through it understanding that you're coming from a point
10 where all things were good and you get credit for that.

11          The problem is that the mistake you made here, even
12 though there is one count that you pled to and there's some
13 questions of whether Mr. Mohammed is putting more on you to get
14 himself out of some of his trouble, this was ongoing.  All
15 right.  And I don't know who all did what, when, but you were
16 part of more than just one incident.  And you were a sergeant,
17 and you were operating in a community that should hold you up
18 as the example I just stated.  And you took advantage of that
19 community.

20          The government talks about it being a community, the
21 Ida B. Wells Homes, formally Ida B. Wells Homes, talks about it
22 being a place rampant with crime and drugs and problems.  The
23 place was rampant with poverty, underprivileged, addictions,
24 illnesses.  The crime stuff comes after.  And it's because of
25 that.  And you were there to protect those people, and you

1  didn't. And Mr. Hopkins, you know, based on a lot of what I
2  read may be one of the baddest things walking around, but
3  that's why you chose him. Who would believe him? And who
4  would be vulnerable or be amenable to participating.
5          And what really upsets this Court is that, you know,
6  it's bad enough that drugs are brought from the outside into
7  the community that's already down and out, but for you to be
8  part of the face of that or even be condoning it or not
9  stopping it is unconscionable to this Court. So your own
10 children have advantages. You had all those little kids in
11 that area, this is what they see. So they see drugs. They see
12 crime. They see cops shaking down people. They see drug
13 dealers being able -- allowed to continue to do what they're
14 supposed to -- want to do.
15         And then what are they taught? They're taught not to
16 respect men such as yourself or anybody with a badge on, which
17 is a big problem we have here. And it not only goes to the
18 badge, it goes to the whole judicial system, the whole criminal
19 justice system. That we have to constantly work to try to make
20 people understand that we try to be fair. Sometimes we aren't,
21 but we try to be fair. But when they see examples live in
22 front of them, what are they supposed to think?
23         Your actions, sir, were a betrayal to your oath as a
24 police officer. You betrayed your community, both your law
25 enforcement community, the African-American community, that