**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) | Master Docket Case No. 19-cv-01717 |
| In re: WATTS COORDINATED | ) |  |
| PRETRIAL PROCEEDINGS | ) | Judge Andrea R. Wood |
|  | ) |  |
|  | ) | Magistrate Judge Sheila M. Finnegan |
|  | ) |  |

**Plaintiffs' Motion For A Protective Order To Prohibit Defendants From
Asking Plaintiffs About Uncharged Alleged Criminal Activity**

The Plaintiffs represented by Loevy & Loevy respectfully move for a protective order pursuant to Federal Rules of Civil Procedure 26 and 30 to prohibit Defendants from fishing for information about uncharged alleged criminal conduct that may have occurred years after the events at issue in these coordinated cases. There is no proper purpose for those questions, and they serve only to embarrass, harass, or annoy Plaintiffs while also presenting a potential safety risk to the Plaintiffs who are being questioned.

**Introduction**

On February 19, 2020, Defendants deposed Plaintiff Phillip Thomas for 7 hours, 4 minutes, and 45 seconds. In Plaintiffs' view, Defendants spent more time than necessary repeatedly asking Mr. Thomas about the circumstances of past acts that are irrelevant to this case, such as arrests for retail theft dating back nearly thirty years, and an arrest for a more serious offense that occurred nearly forty-five years ago when Mr. Thomas was a young teenager. Mr. Thomas answered

Defendants questions about those past acts. Mr. Thomas also testified at length about his drug use, candidly acknowledging that he has struggled with drug addiction on and off for many years.[1]

As noted in the parties' February 21, 2020 joint status report, a dispute arose during Mr. Thomas' deposition with respect to one line of questioning, and the parties were unable to resolve that dispute during the deposition. Dkt. 115 ¶5. The parties have conferred by telephone twice in an effort to resolve the issue without Court intervention. Those efforts resulted in a substantial narrowing of the disputed issues but did not completely resolve the dispute. Therefore, Plaintiffs move for a protective order regarding the remaining dispute.

In short, Defendants have indicated that they plan to ask Plaintiffs questions to determine whether the Plaintiffs have violated the law after their alleged wrongful arrests that are at issue in this case, and more specifically whether Plaintiffs have been involved in the drug trade (whether they bought or sold illegal drugs), regardless if there are any arrests or convictions for such acts on their records. As noted above, depending on the particular Plaintiff, the wrongful arrests at issue in these cases took place from 12 to nearly 20 years ago. In addition, if a Plaintiffs answers in the affirmative about engaging in potentially illegal conduct post-dating their wrongful arrest, Defendants plan to ask that Plaintiff to identify third-parties who may have been involved in the conduct. For example, if a Plaintiff

---

[1] Plaintiffs do not have a copy of the deposition transcript. The length of the deposition is based on the videographer's statement at the end of the deposition. Other representations about the deposition are based on counsel's memory and notes of the deposition.

testifies that they purchased drugs at some point after their wrongful arrest, Defendants plan to ask Plaintiffs to identify who sold them the drugs. Plaintiffs submit that such questions are improper under Federal Rules of Civil Procedure 26 and 30.

## Background

Plaintiff Phillip Thomas alleges that Defendant Ronald Watts and members of Watts' team beat him and framed him in May 2007 when they falsely claimed that he hid illegal drugs in a hole in the wall inside an apartment building in Ida B. Wells. Mr. Thomas has always maintained his innocence. After living with his wrongful conviction for years, his conviction was finally vacated and he received a certificate of innocence before filing this lawsuit. Mr. Thomas' case is now one of approximately 60 cases in these coordinated cases, each involving an individual Plaintiff (or two) who alleges that they were framed by the Watts team.

The events at issue in the coordinated cases occurred many years ago. By way of background, nearly all of the cases in the coordinated proceedings center on events that occurred in the Ida B. Wells housing development, which was closed in 2008. *See* "Left behind by plan for progress," available at https://www.chicagotribune.com/news/ct-xpm-2008-08-11-0808100304-story.html (last visited on March 11, 2020). And the cases that the Loevy & Loevy clients have filed cover alleged false arrests that occurred from 2002 through 2008. Thus, the oldest relevant false arrest of a Loevy & Loevy client in the coordinated proceedings

occurred nearly 20 years ago, and the most recent occurred approximately 12 years ago.

To be clear, Plaintiffs are prepared to answer questions regarding any of their convictions or arrests (though, as described below, most such convictions and arrests are irrelevant and inadmissible at trial), as well as about any uncharged conduct that may have occurred during the years when Plaintiffs lived at or visited Ida B. Wells. Defendants should not, however, be permitted to fish for information about other potentially illegal activity that is unconnected to this litigation and that occurred, if at all, years after the conduct at issue in the litigation. Such questions are irrelevant and meant only to fish for negative information in a way that "unreasonably annoys, embarrasses, or oppresses" Plaintiffs such as Mr. Thomas. *See* Fed. R. Civ. P. 30(d). And asking Mr. Thomas and other Plaintiffs to identify other individuals involved in illegal activity creates a potential safety risk. This risk is not warranted where there is no reasonable possibility that this line of questioning would ever result in admissible evidence.

## Argument

In relevant part, Federal Rule of Civil Procedure 30(d) provides that "a party may move to terminate or limit [a deposition] on the ground that it is being conducted in … a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30. Once such a motion is filed, a court may for good cause issue a protective order to, among other things, prohibit "the disclosure or discovery." *See* Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 30; *see also Lincoln Nat'l. Life Ins. v. TCF Nat'l Ban*k, 10 C 6142, 2011 WL 13119407, at *1 (N.D. Ill. Dec. 12,

2011) ("Rule 26(c)(1) allows the Court to enter a protective orders preventing depositions 'for good cause.'").

As described above, Mr. Thomas alleges that the Defendants framed him by completely fabricating a drug case against him. In addition to questioning him about the circumstances of the arrest at issue in this case, Defendants extensively probed Mr. Thomas' addiction issues and many ancient prior arrests, despite the fact that this information is not relevant and will not be admissible in his trial. *See*, *e.g.*, *Nelson v. City of Chicago*, 810 F. 3d 1061, 1067 (7th Cir. 2016) (reversible error to admit the arrest record of a civil rights plaintiff because "the probative value of such evidence is so overwhelmingly outweighed by its inevitable tendency to inflame and prejudice the jury against the party-witness that total and complete exclusion is required in order that the right to trial by a fair and impartial jury may not be impaired") (quoting *Barber v. City of Chicago*, 725 F. 3d 702, 709 (7th Cir. 2013)); *see also Cruz v. Safford*, 579 F.3d 840, 845 (7th Cir. 2009) (affirming the district court's limitation on the scope of cross-examination in § 1983 case, noting that "seven arrests and one battery conviction were not credibility matters, but highly prejudicial"); *Young v. Cook County*, No. 06 C 552, 2009 WL 2231782, at *6 (N.D. Ill. Jan.27, 2009) (excluding evidence of "arrests that have not resulted in convictions" as "grossly unfairly prejudicial in a way that greatly outweighs its minuscule probative value").

Recognizing the broad scope of permissible deposition questions and the fact that a deponent may not refuse to answer a question merely because the question

seeks irrelevant information, however, Mr. Thomas answered Defendants' questions about any arrests (even those that did not result in convictons) during his more than 7-hour deposition, and he did not refuse to answer any questions merely because he believed they were irrelevant.

Plaintiffs believe the parties have resolved their dispute with respect to Mr. Thomas' deposition, but based on the meet and confer discussions, there is a dispute as to whether Defendants may ask questions going forward about whether Plaintiffs have committed potentially illegal acts after the Ida B. Wells housing development was torn down if those acts did not lead to arrests or convictions. The Court should bar such questions because they serve no purpose other than to annoy, harass, or embarrass Plaintiffs.

The Plaintiffs represented by Loevy & Loevy thus seek a protective order prohibiting Defendants from fishing for negative information regarding other potentially illegal behavior that allegedly occurred after the Ida B. Wells housing development was torn down if that conduct did not result in a conviction or arrest. As noted above, most convictions and all or nearly all arrests that did not lead to convictions are inadmissible in civil rights cases. Here, Defendants are insisting on probing for potentially illegal conduct beyond convictions and arrests, and in doing so intend to ask questions about conduct that, if it occurred at all, occurred many years after the incidents at issue in these cases and are completely unconnected to the allegations in these cases. Rather than seeking relevant information, it appears that such questions are designed only to embarrass or annoy Plaintiffs. That is not

6

proper. *See* Fed. R. Civ. P. 30(d). In addition, those questions might also potentially, and unfairly, cause Plaintiffs to invoke their Fifth Amendment rights to not be forced to incriminate themselves. *Cf. U.S. Election Corp. v. Microvote Corp.*, 51 F.3d 276, 1995 WL 156561, *6 (7th Cir. 1995) (no error in refusing to inform jury that plaintiff invoked Fifth Amendment in response to irrelevant questions asked during discovery). Because the above-described line of questions serve no proper purpose, the Court should issue an order prohibit Defendants from asking them at future depositions.

Based on questions from Mr. Thomas' deposition, Plaintiffs understand that Defendants also intend to ask Plaintiffs to identify third-parties who may have been involved in illegal activities that are unconnected to this case. For example, if a Plaintiff has a drug arrest post-dating the closure of Ida B. Wells, Defendants intend to ask the Plaintiff to identify the person who they purchased the drugs from, even if that person was not charged and is not identified in police reports. This information is also irrelevant and the questions would serve to harass, annoy, or embarrass Plaintiffs, in addition to presenting a potential safety risk. The Court should also prohibit these questions.

## Conclusion

For the reasons stated above, the Court should grant Plaintiffs' motion for a protective order.

Respectfully submitted,

/s/ Scott Rauscher

Arthur Loevy
Jon Loevy

7

Scott Rauscher
Joshua A. Tepfer
Theresa Kleinhaus
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900

*Attorneys for the Plaintiffs represented by Loevy & Loevy in the coordinated proceedings*