UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re: WATTS COORDINATED
PRETRIAL PROCEEDINGS

Master Docket No. 19-cv-1717
Judge Franklin U. Valderrama

MEMORANDUM OPINION AND ORDER

Plaintiffs in these coordinated proceedings have filed suit for violations of their Fourth and Fourteenth Amendment rights and for violations of state law against current and former Chicago Police Department (CPD) officers Ronald Watts, Kallatt Mohammed, Alvin Jones, Kenneth Young, Jr., Calvin Ridgell, Jr., Gerome Summers, Jr., Ronald Heard, Daryl Akins, Elsworth J. Smith, Jr., (collectively, the Defendant Officers) and the City of Chicago, Philip Cline, Karen Rowan, Debra Kirby (Supervisory Officials) (together with the Defendant Officers, Defendants). R. 170-1, FAC.[1] Before the Court is Defendants' Motion to Dismiss the Fourteenth Amendment claims and federal malicious prosecution claims, as well as any derivative claims, asserted in the complaints of Plaintiffs represented by Loevy & Loevy (the Loevy Firm).[2] R. 170, Mot. Dismiss. For the reasons stated below, Defendants' motion to dismiss is denied.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation. The record citations pertain to the filings in the coordinated proceedings, 19-cv-01717; to the extent the Court cites to a case that is part of the coordinated proceedings, it will so note.

[2]For ease of references, the plaintiffs represented by the Loevy firm will be referred to as Plaintiffs.

## Background

### I.     In Re: Watts Procedural Posture

Plaintiffs claim that they are victims of a criminal enterprise run by now-convicted felon and former CPD Sergeant Ronald Watts (Watts) and his tactical team of officers that patrolled a public housing project on the south side of Chicago in the 2000s. FAC ¶¶ 27–32; *see, e.g.*, *Baker v. City of Chicago et al.*, 16-cv-08940 (N.D. Ill.), ECF No. 1; *Scott v. City of Chicago et al.*, 18-cv-05128 (N.D. Ill.), ECF No. 1. According to Plaintiffs, Watts and his tactical team harassed, intimidated, and fabricated criminal charges against the area's residents and visitors, with the knowledge of high-ranking officials in the CPD who did nothing to intervene. FAC ¶¶ 31–32, 87, 113–15. Watts and Kallatt Mohammed were charged criminally in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer. *See United States v. Watts et al.*, 12-cr-00087 (N.D. Ill.), ECF Nos. 1, 56, 79. Both eventually pled guilty. *Id.*

Numerous individuals who were arrested by Watts and his team, and subsequently charged and convicted, have filed claims against Watts, his team, and other defendants. Some of these plaintiffs are represented by the Loevy Firm and others by Kenneth N. Flaxman P.C. (the Flaxman Firm). The Court approved a procedure by which Defendants in the Coordinated Pretrial Proceedings would file two representative motions to dismiss, one as to the version of the complaints filed by Plaintiffs represented by the Loevy Firm and a second as to the version of the complaints filed by Plaintiffs represented by the Flaxman Firm. R. 155; R. 163.

Defendants' motion to dismiss pertains to the version of facts of the complaints filed by Plaintiffs represented by the Loevy Firm.[3] Defendants refer to the allegations in the complaint filed in *Thomas v. City of Chicago*, Case No. 18-cv-5131.

## II. Thomas' Complaint[4]

Plaintiff Henry Thomas (Thomas) alleges that he is one of the victims of Defendant Watts and his tainted crew of officers who ruled virtually unchecked in the Ida B. Wells housing complex in the 2000s. FAC ¶¶ 1–4, 27–32, 73.

Thomas was arrested on two separate occasions—February 5, 2003, and December 4, 2006—by Watts and several members of his team. FAC ¶¶ 2, 34, 37–38, 52–53. According to Thomas, when he was arrested, no drugs were found on him. *Id.* ¶¶ 36–38, 50–52. Thomas alleges that Watts planted drugs on him, and the Defendant Officers fabricated police reports. *Id.* ¶¶ 38–39, 54–55, 58.

The Defendant Officers never disclosed to the prosecutors that they had fabricated the evidence and falsified the police reports related to Thomas' arrests. FAC ¶¶ 42, 62. Further, Thomas alleges that although he was innocent, he pled guilty to both crimes because he knew that a trial would expose him to even longer prison

---

[3]Pursuant to the parties' February 23, 2021 Joint Stipulation Regarding Pleadings, Defendants' joint motion applies only to those consolidated cases in which a responsive pleading has not previously been filed. R. 186, Stip. ¶ 2. The joint stipulation does not affect Defendants' rights to later seek reconsideration or summary judgment as the case law continues to develop on the issues raised herein. *See id.* ¶ 4; *see also* R. 192, Defs.' Flaxman Reply at 1 n.1 (citing Stip.).

[4]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

sentences, and the outcome of trial would depend on whether the fact-finder believed Thomas or the Defendant Officers. *Id.* ¶¶ 7, 40, 60.

Watts and his team members were well known to the residents of the Ida B. Wells housing complex and had a reputation in the community for harassing, intimidating, and fabricating criminal charges against the area's residents and visitors, including Thomas. FAC ¶¶ 29, 31, 32. Thomas claims that Watts and his team sought bribes, planted drugs, and accused residents like Thomas of possessing drugs they did not possess. *Id.* ¶ 4.

After Watts and Mohammed were convicted, Thomas' convictions were vacated, and he was exonerated. FAC ¶¶ 15, 75, 107. Thomas thereafter filed this lawsuit against Defendants asserting nine counts. *See* FAC. He asserts: four federal claims under 42 U.S.C. § 1983 including violation of due process under the Fourteenth Amendment (Count I), malicious prosecution and unlawful detention under the Fourth and Fourteenth Amendments (Count II), failure to intervene (Count III), and conspiracy to deprive constitutional rights (Count IV); state law claims for malicious prosecution, intentional infliction of emotional distress, civil conspiracy (Counts V, VI, and VII); and state law claims against the City of Chicago seeking to hold it responsible for the actions of the Defendant Officers on theories of *respondeat superior* (Count VIII) and indemnification (Count IX) under Illinois law. *Id.* Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I. Fourteenth Amendment Due Process (Count I)

Thomas alleges in Count I that the Defendant Officers violated his due process rights by fabricating testimony and withholding exculpatory evidence. FAC ¶ 112.

Defendants advance two arguments for dismissal of Count I. First, they argue that because no fabricated evidence was admitted at trial, Thomas fails to state a due process violation based on fabricated evidence. Mot. Dismiss at 8. Second, Thomas fails to state a *Brady*-based due process claim because (i) there is no duty to disclose

impeachment evidence prior to a guilty plea, (ii) Thomas knew the evidence against him had been fabricated, (iii) Thomas and his community knew of the allegations about the Defendant Officers' pattern of misconduct before his arrests, (iv) the prosecutors had the duty to disclose civilian complaints to Thomas, and (v) police officers have no duty to disclose their own alleged misconduct. *Id.* at 8–9. The Court addresses each in turn.

### A. Fabrication of Evidence Claim

Thomas alleges in Count I that the Defendant Officers violated his due process rights by knowingly fabricating false evidence, which resulted in Thomas' criminal convictions. FAC ¶¶ 112, 116.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause protects criminal defendants from being deprived of their liberty based on various kinds of police misconduct." *Fletcher v. Bogucki*, 2021 WL 4477968, at * 3 (N.D. Ill. Sept. 30, 2021). "The essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick v. City of Chicago*, 974 F.3d 835 (7th Cir. 2020). The Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his]

liberty *in some way.*" *Whitlock v. Brueggeman*, 682 F.3d 567, 580 (7th Cir. 2012) (emphasis added); *see also Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016).

### 1. Elements of a Due Process Fabrication Claim

Defendants contend that a due process claim based on fabricated evidence can arise only if the fabricated evidence is admitted at trial and causes the plaintiff's conviction. Mot. Dismiss. at 9. Defendants reason that since Thomas pled guilty before a trial, he therefore cannot allege a due process claim based on allegedly fabricated evidence. *Id.* at 9–11 (citing primarily *Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017); *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014); *Patrick*, 974 F.3d 824).

In response, Thomas notes that four courts that are a part of the *In Re: Watts* coordinated proceedings have considered and rejected Defendants' argument that a plaintiff cannot bring a Fourteenth Amendment claim based on the fabrication of evidence if the plaintiff pled guilty. *Id.* at 13–14 (citing *Baker v. City of Chicago*, 483 F. Supp. 3d 543, 553 (N.D. Ill. 2020); *Carter v. City of Chicago*, 2018 WL 1726421, at *4 (N.D. Ill. Apr. 10, 2018); *White v. City of Chicago*, 2018 WL 1702950, at *3 (N.D. Ill. Mar. 31, 2018); *Powell v. City of Chicago*, 2018 WL 1211576, at *8 (N.D. Ill. Mar. 8, 2018)). Defendants' case law, contends Thomas, does not compel a different conclusion. *Avery* does not stand for the proposition that Defendants cite it for; rather, according to Thomas, *Avery* stands for the uncontroversial proposition that the use of fabricated evidence to secure a conviction at trial violates the Fourteenth Amendment. Resp. at 14 (citing 847 F.3d at 442–43). Similarly, Thomas asserts that

Defendants make much of *Patrick*, merely because the fabricated evidence at issue in *Patrick* had also been used to convict the plaintiff at a criminal trial. Resp. at 15 (citing 974 F.3d at 835–836). Thomas reasons, however, the fact that introducing fabricated evidence at trial violates the Fourteenth Amendment does not mean that using fabricated evidence to secure a conviction in another manner (such as a guilty plea) does not violate the Fourteenth Amendment. Resp. at 15. Thomas maintains that Defendants ignore that Instruction No. 7.14 of the Seventh Circuit Pattern Civil Jury Instructions, cited in *Patrick*, provides two paths to showing that fabricated evidence was used to deprive a plaintiff of his liberty: either by proving that the evidence was introduced at trial *or* by proving that the evidence was used in some manner during the plaintiff's criminal case. *Id.* (citing Fed. Civ. Jury Instr. 7th Cir. 7.14 (2017)).

As an initial matter, the parties do not cite, and the Court is not aware of any, Seventh Circuit authority that directly addresses the question of whether a due process claim based on the fabrication of evidence can proceed if the accused pled guilty based on the fabricated evidence rather than go to trial.[5]

---

[5]Thomas cites *Armstrong v. Daily*, 786 F.3d 529, 551 (7th Cir. 2015), for the proposition that the use at trial of fabricated evidence is not required to state a Due Process claim. Resp. at 11. However, Armstrong's claim was deprivation of liberty without due process of law as a result of the destruction of evidence by a state actor. *Id.* The court determined that the outright destruction of exculpatory evidence raises immediate constitutional concerns because the resulting prejudice to the defense is permanent. *Id.* at 552. The court thus concluded that whatever unfairness resulted from the destruction of evidence would infect all future proceedings because the exculpatory evidence would continue to be unavailable. *Id.* Given that Thomas' claims are premised on the fabrication of evidence, not the destruction of evidence, the Court finds that *Armstrong* is of little utility in resolving the issue before the Court.

As noted above, the Seventh Circuit in *Whitlock* held that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty *in some way*." 682 F.3d at 580 (emphasis added). Numerous courts in this District—including three addressing motions to dismiss in cases that are now part of the coordinated proceedings—have read *Whitlock* to mean that a plaintiff plausibly alleges a fabricated evidence due process claim when the defendant alleges that the fabricated evidence was used to deprive the defendants of his or her liberty even in the absence of a trial. *See Carter*, 2018 WL 1726421, at *5 ("The due process violation—that is the liberty deprivation—caused by fabricated evidence results from its use to secure the defendant's conviction, not from its use at trial.") (internal quotation marks and citation omitted); *White*, 2018 WL 1702950, at *3 (N.D. Ill. Mar. 31, 2018); *Powell*, 2018 WL 1211576, at *6; *Alvarado v. Hudak*, 2015 WL 9489912, at *3 (N.D. Ill. Dec. 30, 2015); *Sumling v. Vill. of E. Dundee*, 2015 WL 5545294, at *2–3 (N.D. Ill. Sept. 18, 2015); *Saunders v. City of Chicago*, 2014 WL 3535723, at *4 (N.D. Ill. July 11, 2014).

The Court recognizes, and Defendants point out in reply, that *Manuel v. City of Joliet*, 580 U.S. 357, 137 S. Ct. 911 (2017) (*Manuel I*) has placed the law with respect to the Fourth Amendment, and potentially Fourteenth Amendment, in flux. In *Manuel I*, the petitioner was arrested and detained on a drug charge before the state dropped the case. 137 S. Ct. at 915–16. The plaintiff subsequently filed a § 1983 action alleging that the city violated his Fourth Amendment rights in two ways: (1)

by arresting him without probable cause, and (2) by detaining him in police custody based on fabricated evidence. *Id.* at 916. The Supreme Court reversed the district court and Seventh Circuit and held "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Id.* at 920. Rather than drawing the Fourth Amendment's outer boundary at the initiation of criminal proceedings, the Supreme Court instead placed the line of demarcation at conviction, explaining that "[o]nce a trial has occurred, the Fourth Amendment drops out: [a] person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id.* at 920 n.8; *see also Manuel v. City of Joliet,* 903 F.3d 667, 670 (7th Cir. 2018) (*Manuel II*).

In the wake of *Manuel I*, courts are now defining the contours of both Fourth and Fourteenth Amendment violations. *See, e.g.*, *Grayer v. City of Chicago*, 2021 WL 2433661, at *2–3 (N.D. Ill. June 15, 2021) (internal citations omitted). In light of the above, the Court turns to the cases cited by Defendants to determine if, after *Manuel I*, "a due process claim based on fabricated evidence can arise *only* if the fabricated evidence is admitted at trial and causes the plaintiff's conviction." Mot. Dismiss at 9; Reply at 6 (emphasis added).

In *Avery*, the plaintiff was convicted based on a false confession and the false testimony of three jailhouse informants. 847 F.3d at 436–37. The jury returned a verdict in favor of the plaintiff on his due process fabrication of evidence claim. *Id.* at 435. The district court, however, set aside the verdict, finding that the claim was not

viable given the availability of a state law remedy for malicious prosecution. *Id.* at 437–438. The Seventh Circuit reversed, holding that the "availability of a state-law remedy for malicious prosecution doesn't defeat a federal due-process claim against an officer who fabricates evidence that is later used to obtain a wrongful conviction." *Id.* at 441. The Seventh Circuit explained that "[f]alsified evidence will *never* help a jury perform its essential truth-seeking function. That is why convictions premised on deliberately falsified evidence will always violate the defendant's right to due process." *Id.* at 439 (emphasis in original). The Seventh Circuit held that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way." *Id.* (quoting *Whitlock*, 682 F.3d at 580).

The Court, unlike Defendants, does not read *Avery* as requiring that the fabricated evidence be used at trial for a due process violation to occur. Rather, the due process violation occurs once the fabricated evidence is introduced "in some way" that results in the criminal defendant's conviction and ultimately deprives him of his liberty. 847 F.3d at 439. So too with *Fields*, another case cited by Defendants. *Fields*, similarly to *Avery*, found that plaintiff stated a due process claim based on evidence introduced at his trial, noting that "if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without a harm there is, as we noted earlier, no tort." 740 F.3d at 1114. The main takeaway from *Avery* and *Fields* is not that a trial was required to sustain the claim, but rather that the fabricated evidence had to be considered at the trial that resulted in the accused's conviction in

11

order for harm to occur, which is a prerequisite of a due process claim.[6] Here, as discussed in more detail below, *see infra* Section I.A.2, Thomas alleges that he pled guilty *because of* the fabricated evidence.

While the Court finds that *Avery* and *Fields* do not support Defendants' contention, *Patrick* is a closer call. In *Patrick*, the plaintiff was convicted of double murder and sentenced to life in prison following a jury trial. 974 F.3d at 827. The plaintiff's convictions were subsequently vacated, and he was released. *Id.* at 830. The plaintiff filed suit asserting Section 1983 claims and state law claims for malicious prosecution and civil conspiracy against the Chicago police officers and prosecutors who investigated and prosecuted him. *Id.* The jury found six of the officers liable and awarded plaintiff a sizeable verdict, including an award of punitive damages. *Id.* at 831. On appeal, the defendants challenged several of the district court's rulings and the jury instructions. *Id.* Specifically, the defendants claimed that the district court erred by rejecting their proposed jury instruction on the due process fabrication of evidence claim, "that would have placed the burden on [the plaintiff] to prove that the defendant (each one considered individually) fabricated evidence

---

[6]To the extent Defendants rely on *Lewis* to support their argument that a trial is required for a due process claim based on fabricated evidence, the Court finds it inapposite because it addressed a pretrial detention claim. 914 F.3d 472. Moreover, the Seventh Circuit's statement that "a claim for wrongful pretrial detention based on fabricated evidence is distinct from a claim for wrongful conviction based on fabricated evidence: '[C]onvictions premised on deliberately fabricated evidence will always violate the defendant's right to due process,'" can be read to support the proposition that *any* convictions premised on deliberately fabricated evidence—regardless of whether the evidence was introduced at trial or introduced to convince a criminal defendant to enter a plea of guilty—will always violate that criminal defendant's right to due process. *Lewis*, 914 F.3d at 479 (citing *Avery*, 847 F.3d at 439). That said, the Court recognizes that this is not *Lewis*' explicit holding and does not rely on it as such.

against him; the evidence was used at his criminal trial; the evidence was material; and he was damaged as a result." *Id.* at 835. The defendants' proposed instruction was based on an updated pattern jury instruction that had "been proposed and published for comment by the Seventh Circuit Committee on Pattern Civil Jury Instructions but had not yet been finally approved for publication by the Seventh Circuit Judicial Council." *Id.* The district court declined to give the defendants' proposed instruction, and instead instructed the jury that, to succeed on his due process claim, the plaintiff must prove by a preponderance of the evidence that: "1. The Defendant you are considering knowingly fabricated false evidence or participated in fabricating false evidence; 2. That evidence was used to deprive Plaintiff of his liberty in some way; [and] 3. The fabricated evidence proximately caused Plaintiff to be damaged." *Id.*

The Seventh Circuit found the instruction given by the district court "incomplete in that it failed to explain that Patrick had the burden to prove that the fabricated evidence was used against him at his criminal trial and was material." *Patrick*, 974 F.3d at 835. The Seventh Circuit, however, found the error to be harmless and affirmed the verdict. *Id.* at 835–36.

Defendants read *Patrick* to mean that, "in the absence of a trial, the only constitutional remedy available to plaintiff based on Defendant Officers' alleged fabrication of evidence (if proven) would be claims for post-legal process, pre-trial detention without probable cause under the Fourth Amendment and the Fourth Amendment alone." Mot. Dismiss at 11. True, *Patrick* found that the broad phrase

13

"in some way" was insufficient to guide the jury. 974 F.3d at 835. Indeed, the Seventh Circuit explained that the district court should have specifically instructed that plaintiff had to burden to prove that the fabricated evidence was used against him at his criminal trial and was material. *Id.* However, the jury instructions were guided by the plaintiff's original criminal conviction, which resulted from a jury trial. *Id.* at 827. It logically follows that the jury instruction be related to the events that gave rise to the alleged conviction. As Thomas points out in response, Pattern Instruction No. 7.14, which was proposed by the defendants in *Patrick*, includes two alternatives, plaintiff has the burden to prove that the fabricated evidence was used against him "[at his criminal trial]" or "[in his criminal case]." *See* Fed. Civ. Jury Instr. 7th Cir. 7.14 (2017). The Seventh Circuit did not—and indeed did not need to—opine on the alternative "[in his criminal case]" option from the pattern instructions, since the clearly applicable option was "[at his criminal trial]." *Patrick*, 974 F.3d at 835.

The Court is aware that the Pattern Jury Instructions are not binding on courts. But the Seventh Circuit has noted that they are a helpful starting point. *See Reyes v. United States*, 998 F.3d 753, 758 (7th Cir. 2021) ("Though our pattern instructions are not 'holy writ,' they do 'reflect the collective experience of the judges and lawyers who crafted them and can serve as a helpful starting point.'"). And while the Seventh Circuit in *Patrick* endorsed one alternative in Instruction 7.14; as noted above, it did not need to consider the other alternatives provided in the instruction. Because the Seventh Circuit has not addressed this issue, the Court relies on the instructions to the extent that they provide a helpful, albeit not binding, guide.

14

All in all, *Patrick*'s rejection of an instruction that stated that fabricated evidence "was used to deprive Plaintiff of his liberty *in some way*" in favor of an instruction stating that "the fabricated evidence was used against [Plaintiff] at his criminal trial" makes the question before the Court—whether a fabricated evidence due process claim can be premised on a guilty plea—a close call. However, for the reasons stated above, the Court does not read *Patrick* to stand for the proposition that fabricated evidence based due process claims *requires* the introduction of the fabricated evidence at trial, so long as it was used "in his criminal case." *See Patrick*, 974 F.3d at 835; Fed. Civ. Jury Instr. 7th Cir. 7.14.

A fair reading of Seventh Circuit fabricated evidence jurisprudence, from *Whitlock* to *Patrick*, reveals that the due process violation occurs once the material fabricated evidence is introduced "in some way"—or more precisely, "in his criminal case"—that results in the criminal defendant's conviction and ultimately deprives him of his liberty. 847 F.3d at 439. One such way, but not the only way, is through a conviction following a trial. Another way is when the fabricated evidence is used to coerce the defendant to plead guilty. Any reading to the contrary would reward egregious deliberate misconduct from state actors by making conviction following trial the only pathway to vindicate constitutional violations. The Court can discern no cogent basis for such a distinction. Therefore, the Court does not find Defendants' argument persuasive. *See Carter*, 2018 WL 1726421, at *5; *White*, 2018 WL 1702950 at *3; *Powell*, 2018 WL 1211576, at *6.

## 2. Whether a Guilty Plea Breaks the Causal Chain

Defendants next assert that "[b]ecause a guilty plea breaks the chain of events that preceded the plea, any constitutional violations that occurred prior to the plea cannot form the basis of attacking the plea." Mot. Dismiss at 12 (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *McMann v. Richardson*, 397 U.S. 759, 770 (1970); *Parker v. North Carolina*, 397 U.S. 790 (1970); *Hurlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013)). Defendants contend that *McMann* is instructive on this point because the court therein concluded that the defendant could have chosen to go to trial and contest the State's tainted evidence, including through appellate and collateral proceedings; "[i]f he nevertheless pleads guilty the plea can hardly be blamed on the [tainted evidence]." 397 U.S. at 768. Defendants reason that, because Thomas chose to plead guilty, he waived his right to a trial, the very purpose of which is to "effectuate due process," and he cannot now blame his guilty pleas (which caused his convictions and subsequent incarcerations) on due process violations that did not occur because the alleged fabricated evidence was never admitted at trial. Mot. Dismiss at 13.

Thomas responds that the cases that Defendants cite are inapplicable. Resp. at 17. The Court agrees with Thomas. *See Tollett*, 411 U.S. 258 (1973) (discussing a guilty plea in the context of a federal habeas proceeding); *McMann*, 397 U.S. 759 (same); *Hurlow*, 726 F.3d 958 (same); *Parker*, 397 U.S. 790 (addressing guilty plea in context of criminal defendant's post-conviction application for relief under state statute). Defendants cite no authority, nor is the Court aware of authority, that bars

a civil due process claim based on fabricated evidence where the plaintiff pled guilty because of the fabricated evidence and subsequently had his sentence vacated, was granted a certificate of innocence, or both. Still, Defendants are correct that it is settled law that, absent some important exceptions, generally a plea executed with the benefit of counsel "'operates as a waiver of all formal defects' in the proceedings (even constitutional defects)." *Powell*, 2018 WL 1211576, at *7 (quoting *United States v. Lockett*, 859 F.3d 425, 427 (7th Cir. 2017)). Plea agreements typically constitute enforceable contracts, and thus "no 'general constitutional-argument exception' exists for waivers in plea agreements." *Id.* (quoting *United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014) (internal quotation marks omitted). "Regardless of the plea, however, '[a plaintiff] may . . . attack the voluntary and intelligent character of the guilty plea." *White*, 2018 WL 1702950, at *3 (quoting *Tollett*, 411 U.S. at 267). What's more, "in certain circumstances, federal courts can refuse to enforce a knowing waiver contained within a guilty plea if enforcing it would result in a 'miscarriage of justice.'" *Powell*, 2018 WL 1211576, at *7 n.2 (quoting *United States v. Litos*, 847 F.3d 906, 910 (7th Cir. 2017) (collecting cases)).

Here, Thomas alleges that he pled guilty in two cases. FAC ¶¶ 2, 7, 40–41, 60. He claims that although he was innocent, he pled guilty to both crimes because he knew that a trial would expose him to even longer prison sentences, and the outcome of trial would depend on whether the fact-finder believed Thomas or the Defendant Officers about whether the evidence underlying the criminal charges was fabricated. *Id.* ¶¶ 7, 40, 60. Thomas' convictions have been vacated, and he has been exonerated.

*Id.* ¶¶ 15, 107. Construing the allegations in the light most favorable to Thomas, as the Court must, it finds that it can be reasonably inferred that the fabricated evidence was used to compel a guilty plea from Thomas; or, put another way, that it was used in his criminal case to deprive him of his liberty.[7] *See Whitlock*, 682 F.3d at 580; Fed. Civ. Jury Instr. 7th Cir. 7.14. It follows that without the fabricated evidence as the driving force, Thomas would not have pled guilty. *See White*, 2018 WL 1702950, at *3 ("Plaintiff's admission on the record makes it clear that the fabricated evidence was the driving force behind his decision to plead guilty.").

In sum, the Court finds that Thomas adequately states a due process claim based on the fabrication of evidence. This holding is in line with several other well-reasoned decisions from courts in this District rejecting arguments similar to those raised by Defendants. *See Carter*, 2018 WL 1726421, at *5; *White*, 2018 WL 1702950, at *3; *Powell*, 2018 WL 1211576, at *6; *Saunders*, 2014 WL 3535723, at *5; *see also Baker*, 483 F.3d at 553 (finding that plaintiffs who alleged that fabricated evidence compelled them to plead guilty to charges stemming from their December 2005 arrests stated valid claims for due process violations apart from any alleged *Brady* violations).

---

[7]The Court cannot determine at this stage whether Thomas' plea constitutes an effective waiver of his fabricated evidence-based due process claim. As articulated in *Powell*, more facts are needed to be able to make such a determination. "For example, was there a written plea agreement? When the judge accepted his guilty plea, did Plaintiff swear under oath and confirm the facts underlying the government's case establishing his guilt? Did his plea specifically address and waive trial rights, including discovery issues?" *Powell*, 2018 WL 1211576, at *8 n.3.

## B. *Brady* Violation Claim

In addition to alleging in Count I that Defendants violated his due process rights by fabricating evidence that caused his convictions, Thomas also alleges that the Defendant Officers violated his due process rights by withholding exculpatory evidence. FAC ¶ 112.

Under *Brady v. Maryland*, a criminal defendant is entitled to the production by the government of exculpatory evidence that is material to guilt or punishment. 373 U.S. 83, 87 (1963). The Supreme Court has extended *Brady*'s duty to disclose to law enforcement officers. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *see also Cariel v. Alderden*, 821 F.3d 823, 832 (7th Cir. 2016) ("A corollary of the prosecution's duty to disclose to the defense is that the police must disclose exculpatory evidence to the prosecutors."). "Usually, a police officer's *Brady* obligations are discharged by disclosing material exculpatory evidence to the prosecutor, for it is the prosecutor's responsibility to turn the evidence over to defense counsel." *Beaman v. Freesmeyer*, 776 F. 3d 500, 512 (7th Cir. 2015).

To state a *Brady* claim against an officer, the plaintiff must show that: (1) the evidence is favorable to him; (2) the evidence was concealed by the officer; and (3) the concealed evidence resulted in prejudice. *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007); *see also Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2016) (noting that a plaintiff must show that the favorable evidence is material, thus meaning that it "could reasonably be taken to put the whole case in such a different light as to undermine confidence" in the outcome of the proceeding) (internal quotation marks

and citation omitted). As stated above, Defendants argue that Thomas' *Brady*-based due process claim fails as a matter of law and raise several bases in support of dismissal. Mot. Dismiss at 8–9.

Thomas responds that, as a preliminary matter, the Court "need not parse out the various potential theories of liability with respect to Count I at the pleadings stage." Resp. at 19 (citing *Baker*, 483 F. Supp. 3d at 553). True, at this stage, as *Baker* states, "it does not matter whether [Thomas] label[s] [his] due process claims as 'evidence fabrication' claims, *Brady* violations, or something else." 483 F. Supp. 3d at 553; *see also Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations."). *But see Weston v. City of Chicago*, 2021 WL 2156459, at *6 (N.D. Ill. May 27, 2021) (finding that evidence fabrication and *Brady* claims overlapped but were "not predicated on precisely the same operative facts: the former is based on what sort of evidence defendants revealed, and the latter is based on what evidence defendants withheld," but declining to "run to the ground . . . whether these are two claims or one" because the court agreed that the plaintiff adequately pled claims under both theories).

As discussed in more detail below, *see infra* Section II.A, because the Court has found that Thomas' Fourteenth Amendment due process claim can proceed based on his fabrication of evidence theory, if the claims are co-extensive, it would be improper to dismiss his *Brady* theory underlying the same claim. *See BBL, Inc. v. City of*

*Angola*, 809 F.3d 317, 325 (7th Cir. 2015). But, as noted above, the Court finds it to be a close call whether a Fourteenth Amendment fabrication of evidence claim can be sustained in the Seventh Circuit. So, for the sake of completeness—and, to the extent the claims are not factually co-extensive, *see Weston*, 2021 WL 2156459, at *6—the Court substantively addresses Defendants' arguments for dismissal of Thomas' Fourteenth Amendment claims based on a *Brady* theory, *see, e.g.*, *Baker*, 483 F. Supp. 3d at 553. The Court agrees with Thomas that he has sufficiently alleged *Brady*-based violations to move past the pleading stage.[8] Resp at 19.

### 1. Impeachment Evidence

Defendants argue that Thomas fails to allege a *Brady*-based due process claim because there is no constitutional duty to disclose impeachment evidence prior to a guilty plea. Mot. Dismiss at 14 (citing *United States v. Ruiz*, 536 U.S. 622, 633 (2002)). It is undisputed that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering into a plea agreement with a criminal defendant." *Ruiz*, 563 U.S. at 633. Defendants contend that disclosure of the fabrication of evidence and pattern of the Defendants Officers' misconduct could only be used as impeachment evidence and thus any claim based on the failure to disclose such evidence is barred under *Ruiz*. Mot. Dismiss at 14–15.

The Court agrees with Thomas that Defendants read the complaint too narrowly. Resp. at 21. Thomas alleges in his complaint that the Defendant Officers

---

[8]Since the Court finds that Thomas has sufficiently pled his Fourteenth Amendment claim under the *Brady* theory, under the same principle advanced in *City of Angola*, even if the Court had found Thomas' evidence fabrication theory deficient, dismissal of that theory at this stage would also be improper. *City of Angola*, 809 F.3d at 325.

failed to disclose to Thomas that they framed Thomas, specifically that they did not catch him possessing or selling drugs but rather fabricated that evidence. FAC ¶¶ 42–43, 45, 112. Other courts in this District have found such evidence to be exculpatory evidence, not impeachment evidence. *See, e.g.*, *Powell*, 2018 WL 1211576, at *6–7; *see also Fields v City of Chicago*, 981 F.3d 534, 555 (7th Cir. 2020) (evidence that "rebuts the substantive evidence introduced into the record by the defendants, and exposes the misrepresentations" of witnesses is not merely impeachment evidence but is also substantive evidence). Thomas further alleges that the Supervisory Officers concealed exculpatory evidence from Thomas, "specifically information about Watts's and his team's pattern of misconduct." FAC ¶ 115. Defendants' misconduct, alleges Thomas, "directly resulted in the unjust criminal convictions" of Thomas. *Id.* ¶ 116. Moreover, as to evidence of the Defendant Officers' prior misconduct, the Court agrees with Thomas that such evidence could be used as exculpatory prior bad acts evidence under Federal Rule of Evidence 404(b), in addition to being used as impeachment evidence. Resp. at 21 n.10 (citing *People v. Cannon*, 688 N.E.2d 693, 697 (Ill. 1997) (citing *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993))).

Defendants' contention that the allegedly withheld evidence (of both fabricated evidence and a pattern of misconduct) was not exculpatory, but rather impeachment evidence, invites the Court to draw an impermissible inference on a motion to dismiss. The evidence may show that the allegedly withheld evidence would have been impeachment material, exculpatory material, or both. Resp. at 21. The Court cannot make that determination on a motion to dismiss. Rather, those arguments are more

appropriate for a motion for summary judgment. *See, e.g.*, *Powell*, 2018 WL 1211576, at *6–8.

## 2. Thomas' Knowledge of Fabricated Evidence

Next, Defendants argue that Thomas' *Brady*-based due process claim fails because Thomas knew about the allegedly fabricated evidence. Mot. Dismiss at 15. Thomas counters that while a plaintiff may generally be aware of some relevant information, that does not mean that a *Brady* claim is subject to dismissal. Resp. at 22 (citing *Avery*, 847 F.3d 433).

Defendants are correct that "evidence cannot be said to have been suppressed in violation of *Brady* if it was already known to the defendant." *Avery*, 847 F.3d at 443. Here, Defendants' argument is premised on the proposition that Thomas had knowledge of not only all of the fabricated evidence, but also of the circumstances surrounding the creation of the evidence. Mot. Dismiss at 15. That proposition, however, is contrary to the allegations in the complaint. Thomas alleges that the circumstances surrounding the creation of the fabricated evidence itself, such as the police reports, were never disclosed to Thomas, his defense counsel, or the prosecutors. FAC ¶¶ 41–45, 58–64. Therefore, the Court does not find Defendants' argument persuasive in this respect.

The cases Defendants cite in support of their argument do not change this conclusion. Mot. Dismiss at 15–16 (citing *Harris*, 486 F.3d 1010; *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006)). *Harris* and *Sornberger* are distinguishable procedurally and factually. First, both were decided at summary

judgment. Second, the facts of each case are dissimilar to those here. In *Harris*, the plaintiff alleged that an officer committed a *Brady* violation by failing to disclose to the prosecutor that, among other things, the officer lied to the prosecutor when he said that the plaintiff and another person—who confessed to the crime that plaintiff was accused of)—associated together in the street. 486 F.3d at 1016–17. Because the plaintiff "knew about his relationship, or lack thereof" with the other person, the officer's false statement did not create a *Brady* violation. *Id.* at 1017.

Similarly, in *Sornberger*, the court rejected the plaintiff's *Brady* claim that defendants violated her due process rights by generating a police report that falsely described the circumstances of her confession and by lying to the state prosecutor about the confession. 434 F.3d at 1028–29. The court reasoned that, because the plaintiff knew what she said during the interrogation, she was not deprived of exculpatory evidence by the defendants' failure to disclose the circumstances of her interrogation. *Id.* at 1029. Here, as Thomas argues in response, although he knew that the drugs were planted on him, he did not know all of the circumstances related to the fabrication of evidence, such as the real origin of the drugs, the chain of custody paperwork establishing that origin, or witnesses who knew the drugs' real origin. Resp. at 23–24. Unlike the false statements in *Harris* and *Sornberger*, when construing the allegations in the light most favorable to Thomas, it is not clear that evidence about the drugs' origin was known to or reasonably available to Thomas. Accordingly, the Court finds these cases of limited use.

24

On the other hand, the Court finds two cases cited by Thomas, *Powell* and *Baker*—cases that are part of the coordinated proceedings and therefore involve similar fact patterns based on fabricated evidence of drugs and plaintiffs' subsequent arrests, prosecutions, and convictions—instructive.

In *Powell*, the defendants moved to dismiss, among other claims, the plaintiff's *Brady* claim, arguing that plaintiff had no constitutional right to a pre-plea disclosure of exculpatory evidence. 2018 WL 1211576, at *6. The court disagreed, finding that "*Brady* and its progeny require the prosecution team to disclose known (and material) exculpatory evidence before a criminal defendant pleads guilty." *Id*. Admittedly, observed the court, the Supreme Court has not "squarely addressed whether due process requires" the disclosure of exculpatory information outside the trial context. *Id*. at *7. However, the court found that "it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea." *Id*. at *7 (quoting *McCann v. Mangliardi*, 337 F.3d 782, 788 (7th Cir. 2003)). Admittedly, *Powell* does not specifically address whether the plaintiff knew about the fabricated evidence, and whether such knowledge foreclosed the plaintiff's *Brady* claim. However, *Powell* is nevertheless instructive to the extent that the court found that similar allegations about undisclosed fabricated evidence was squarely exculpatory evidence falling within *Brady*.

*Baker* is also instructive. In *Baker*, the defendants moved to dismiss several claims, including the *Brady* claim asserted against them. 483 F. Supp. 3d at 552–53. The defendants argued that "*Brady* does not impose disclosure requirements in connection with guilty pleas," and therefore qualified immunity barred the plaintiffs' *Brady* claims.[9] *Id.* at 554. The court rejected that argument, concluding that "a reasonable person would have known at the time that failure to disclose material exculpatory evidence to a criminal defendant violated a clearly established constitutional right of that defendant." *Id.* at 555. The court found that the claim should proceed past the pleading stage, as the "[p]laintiffs are entitled to develop a record as to the circumstances surrounding the evidence fabrication so that they may argue what information they could have used in defense of the criminal charges, how they would have used that evidence, and whether it would have had an impact on their convictions." *Id.* Although *Baker*'s discussion related to the affirmative defense of qualified immunity, which the plaintiffs "were not required to plead around," the discussion is still helpful here. *Id.* The Court finds the reasoning in *Powell* and *Baker* to be persuasive and sees no reason to deviate.

Like the plaintiffs in *Powell* and *Baker*, Thomas alleges that the Defendant Officers never disclosed to the prosecutors or Thomas' public defender any of the Defendant Officers' misconduct. FAC ¶¶ 42–43, 62–63, 112. Thomas alleges that had the prosecutors known that the Defendant Officers fabricated evidence, lied under

---

[9]*Baker* also discussed the plaintiff's *Brady* claim in the context of trial, since one of the plaintiffs in that case went to trial after one arrest by the officer defendant and pled guilty after the next arrest. 483 F. Supp. 3d at 553–54. That discussion is of limited use here since Thomas pled guilty.

oath, and committed other misconduct, they would not have prosecuted Thomas, and he would not have been deprived of his liberty. *Id.* ¶¶ 44, 63. He further alleges that the entirety of the State's case against him rested on the Defendant Officers' fabrication of evidence and the credibility of the Defendant Officers, and the exculpatory evidence would have been material to Thomas' defense of his criminal charges. *Id.* ¶ 45. Moreover, Thomas alleges that the Defendant Officers deliberately withheld exculpatory evidence from him, as well as from prosecutors. *Id.* ¶ 112. Thomas also alleges that the Supervisory Officers concealed exculpatory evidence from him, "specifically information about Watts's and his team's pattern of misconduct." *Id.* ¶ 115. Furthermore, alleges Thomas, the Defendants' misconduct directly resulted in his unjust criminal conviction. FAC ¶ 116. The Court agrees with Thomas that at this juncture, Thomas has plausibly alleged a *Brady*-based due process claim.

### 3. Thomas' and the Community's Knowledge of Pattern of Misconduct

Defendants relatedly argue that Thomas' *Brady*-based due process claim fails because (1) he and the Ida B. Wells community knew about the alleged "pattern of misconduct" before Thomas' arrests and, in any event, in the exercise of reasonable diligence, he and his attorneys had ready access to witnesses from his community as well as any and all civilian complaints, and (2) Thomas' prosecutors had access to any and all civilian complaints and it was their duty to disclose the complaints to him.

Mot. Dismiss at 15–21 (citing *Gauger v. Hendle*, 349 F.3d 354, 360 (2003); *Sornberger*, 434 F.3d at 1029; *Harris,* 486 F.3d at 1015).[10]

The Court again finds that Defendants' arguments miss the mark. True, Thomas alleges that it was generally known in the community that Watts led a corrupt group of Chicago police officers. *See* FAC ¶ 31. However, nothing in the complaint suggests that Thomas and/or the community knew the extent of the misconduct or that such evidence was available to Thomas during his criminal proceedings. *See* Resp. at 24. Nor is there any mention in the complaint that, at the time of his criminal proceedings, Thomas had available to him any citizen complaints regarding the Defendant Officers. *Id.* Lastly, the complaint is devoid of any allegation that prosecutors were aware of and had access to citizen complaints. *Id.* To the contrary, the complaint alleges that complaints of misconduct were withheld. *Id.* (citing FAC ¶ 106). In short, Defendants' arguments are not based on the allegations of the complaint, but rather from inferences Defendants draw from the complaint in support of their motion. That, however, is not the standard applied on a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

### 4. Defendant Officers' Duty to Disclose Fabricated Evidence

Lastly, Defendants contend that *Brady* does not require the Defendant Officers to tell the truth about their investigations, including that they supposedly fabricated

---

[10]In the cases cited by Defendants, the Seventh Circuit found that the plaintiffs could not prevail on their *Brady* claims because the specific information that the plaintiffs claimed was concealed was already available to them. *See Gauger*, 349 F.3d at 360; *Harris*, 486 F.3d at 1015; *Sornberger*, 434 F.3d at 1029. As noted above, *see supra* Section I.B.2, and below, *see supra* Section I.B.4, the Court finds *Harris*, *Sornberger*, and *Gauger* procedurally and factually distinguishable.

evidence. Mot. Dismiss at 18–21 (citing primarily *Gauger*, 349 F.3d at 354; *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015)). That is, the state has no duty to conduct an investigation or assist in the preparation of a defendant's case. *Id.*

Thomas counters that the Defendant Officers cannot evade liability for *Brady* violations merely because they also fabricated evidence. Resp. at 25. The Defendant Officers' contention, according to Thomas, runs counter to well established Seventh Circuit precedent. *Id.* (citing *Avery*, 847 F.3d at 443–44); *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013); *Manning v. Miller*, 355 F.3d 1028, 1032–33 (7th Cir. 2004); *Tillman v. Burge*, 813 F. Supp. 2d 946, 962 (N.D. Ill. 2011)).

The Court agrees with the Defendants that under binding Seventh Circuit case law, *Brady* does not require the creation of exculpatory evidence, nor does it require police officers to accurately disclose the circumstances of their investigations to the prosecution. *Saunders-El*, 778 F.3d at 562. Thomas's complaint, however, alleges more than that. Thomas claims that he was not aware of the *Brady* material at issue in this case—that is, evidence of the circumstances surrounding the fabrication of evidence leading to his arrest.

None of the Seventh Circuit case law cited by the Defendants on this point were decided on a motion to dismiss; rather, they were all decided at summary judgment and thus are of limited applicability at this stage. Mot. Dismiss at 18–21 (citing *Gauger*, 349 F.3d at 354; *Saunders-El*, 778 F.3d 556; *Sornberger*, 434 F.3d at 1029; *Harris*, 486 F.3d at 1015). Defendants' arguments, with the benefit of discovery, are better suited for summary judgment. *See, e.g.*, *Garcia v. Hudak*, 156 F. Supp. 3d

907, 917 (N.D. Ill. 2016) (holding that plaintiff had plausibly alleged all the elements of a *Brady* claim when he alleged that the police officers who arrested him planted drugs on him and withheld the fact that plaintiff was innocent); *Ollins v. O'Brien*, 2005 WL 730987, at *11 (N.D. Ill. Mar. 28, 2005) (denying plaintiff's motion to dismiss because plaintiff's allegations that the police officers failed to disclose information of factual innocence during the plea bargaining process was sufficient to state a claim); *see also Powell*, 2018 WL 1211576, at *8 & n.3 (denying motion to dismiss *Brady* claim and noting "[m]any questions remain unanswered" about the viability of the claim before a fuller factual record is developed). *But see Walker v. White*, 2017 WL 2653078, at *3 (N.D. Ill. June 20, 2017) (relying on *Saunders-El* and dismissing the plaintiff's *Brady* claim).[11]

At the pleading stage, all that is required is for Thomas' allegations to "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Bartholet*, 953 F.2d at 1078 ("A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents."). The Court finds that at

---

[11]Relying on *Saunders-El*, the court found that the plaintiff's *Brady* claim could not proceed because it merely repeated the plaintiff's fabrication of evidence claim. *Walker*, 2017 WL 2653078, at *4. The court also noted that, because the plaintiff knew the drugs were not his and were planted, he knew enough to pursue evidence of the true source of the drugs, and nothing in the complaint suggested that the avenue was closed off to the plaintiff. *Id.* Although the facts are similar, the Court respectfully disagrees with the court's dismissal of the *Brady* claim. First, as discussed above, *Saunders-El* was decided on summary judgment, and therefore is of limited use on a motion to dismiss. The Court finds that, given the alleged grave misconduct alleged in the complaint, Thomas has sufficiently pled that several avenues of investigation into the circumstances of the fabricated evidence were not reasonably available to him. Second, as discussed above—and in more detail below, *see infra* Section II.A, because the Court has found that Thomas' Fourteenth Amendment due process claim can proceed based on his fabrication of evidence theory, it would be improper to dismiss his *Brady* theory underlying the same claim. *See City of Angola*, 809 F.3d at 325.

this stage in the proceedings, when viewing the allegations as true—as it must—that Thomas has sufficiently alleged a due process *Brady* claim.

## II. Due Process – Malicious Prosecution and Pretrial Detention (Count II)

Thomas alleges in Count II that Defendants seized him without probable cause, deprived him of his liberty, and subjected him to criminal prosecutions without cause, in violation of his rights secured by the Fourth and Fourteenth Amendments. FAC ¶¶ 157–165. Defendants argue that "[t]o the extent Count II asserts Fourteenth Amendment due process claims based on any pre-trial deprivation of liberty, or federal malicious prosecution claims, controlling Supreme Court and Seventh Circuit precedent require their dismissal." Mot. Dismiss at 4.

### A. Unlawful Pretrial Detention Claim

Defendants argue that the Supreme Court dispositively held in *Manuel I* that even after legal process, pretrial detention caused by fabricated evidence may violate the Fourth Amendment, but cannot violate the Fourteenth Amendment's Due Process Clause. Mot. Dismiss at 5. Defendants maintain that since *Manuel I*, the Seventh Circuit has repeatedly held that a claim for post-legal process, pretrial detention arises only under the Fourth Amendment. *Id.* (citing primarily *Lewis*, 914 F.3d at 476–78 (collecting cases)). Accordingly, Defendants contend that Thomas' Fourteenth Amendment detention claim must be dismissed.

Thomas responds that the Seventh Circuit has instructed that courts should not parse out claims by legal theory at the pleading stage, dismissing some theories and allowing others to proceed. Resp. at 7–8 (citing *City of Angola*, 809 F.3d at 325

31

("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.")). "As long as the plaintiff can, in response to a motion to dismiss, identify some plausible theory that would entitle it to relief on its claim, that claim may move forward and a motion to dismiss other legal theories must be denied." *KFC Corp. v. Iron Horse of Metairie Rd., LLC*, 2020 WL 3892989, at *3 (N.D. Ill. July 10, 2020).

Because Defendants do not dispute that Thomas' claim for unlawful pretrial seizure and detention is viable under the Fourth Amendment, Thomas contends that there is no basis to dismiss his pretrial detention claim in Count II under applicable Seventh Circuit law. Resp. at 8. In line with *City of Angola*, Thomas argues, two courts in this District, *Mack v. City of Chicago*, 2020 WL 7027649, at *3 (N.D. Ill. Nov. 30, 2020) and *Culp v. Flores*, 454 F. Supp. 3d 764, 770 (N.D. Ill. 2020) have recently refused to dismiss portions of wrongful pretrial seizure and detention claims. Resp. at 8.

Notably, Defendants do not address Thomas' argument that, in light of *City of Angola* and *KFC Corp.*, his Fourteenth Amendment pretrial detention claim should be allowed to proceed. *See* Reply. Defendants' failure to address this argument constitutes waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Waiver aside, the Court agrees with Thomas.

A motion to dismiss under Rule 12(b)(6) does not permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief. *City of Angola*, 809 F.3d at 325. It is axiomatic that a plaintiff is not required to plead legal theories at all. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777 (7th Cir. 2015) ("[P]laintiffs are not required to plead specific legal theories."); *see also KFC Corp.*, 2020 WL 3892989, at *3 (citing *Jajeh v. County of Cook*, 678 F.3d 560, 567 (7th Cir. 2012)). Consequently, "no penalty attaches to the assertion in the complaint of legal theories that fail as a matter of law." *KFC Corp.*, 2020 WL 3892989 at *3 (citing *Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error.")). Thus, "as long as the plaintiff can, in response to a motion to dismiss, identify some plausible theory that would entitle [him] to relief on [his] claim, that claim may move forward and a motion to dismiss other legal theories must be denied." *Id.*

Given that the parties agree that Thomas' claim for unlawful pretrial detention is viable under at least one legal theory—the Fourth Amendment—there is no basis to dismiss his pretrial detention claim in Count II. *See KFC Corp.*, 2020 WL 3892989 at *3; *Weston*, 2021 WL 2156459, at *9.

Moreover (or, even if there are separate Fourth and Fourteenth Amendment claims in Count II), as Thomas points out, other courts in this District—including some after briefing on the motion to dismiss concluded—have declined to dismiss a Fourteenth Amendment pretrial detention claim at this stage. *See Winn v. City of*

*Chicago*, 2022 WL 80272, at *3 (N.D. Ill. Jan. 6, 2022); *Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1267 (N.D. Ill. 2021); *Treadwell v. Salgado*, 2021 WL 3129290, at *3 (N.D. Ill. July 23, 2021); *Weston*, 2021 WL 2156459, at *9; *Wright v. City of Chicago*, 2021 WL 736234, at *2 (N.D. Ill. Feb. 25, 2021); *Mack*, 2020 WL 7027649, at *3; *Culp*, 454 F. Supp. 3d at 770. Admittedly, however, a split exists within this District, as at least two courts have recently dismissed such claims on motions to dismiss. *See Grayer*, 2021 WL 2433661, at *3 & n.2; *Henderson v. Rangel*, 2020 WL 5642943, at *3 (N.D. Ill. Sept. 21, 2020).

The Court follows the majority of courts in this District and finds that it is not appropriate to dismiss Thomas' Fourteenth Amendment pretrial detention claim at this stage in the proceedings. Thomas has pled a plausible claim for relief; whether he can prevail turns on whether his arrests and pretrial detentions were supported by probable cause, "not whether he has invoked the Fourth or Fourteenth Amendment." *Winn*, 2022 WL 80272, at *3. What's more, as many courts in this District have noted, allowing Thomas' Fourteenth Amendment claim to proceed will not significantly change the scope of discovery. *See, e.g.*, *Treadwell*, 2021 WL 3129290, at *3 ("[D]iscovery on the plaintiff's Fourth Amendment claim would be coextensive with discovery on any claim that his detention violated due process under the Fourteenth Amendment.").

Accordingly, the Court declines to dismiss Thomas' Fourteenth Amendment pretrial detention claim. At this stage, the Court need not address the parties' substantive arguments for and against dismissal; however, the Court will consider

this issue again if presented on summary judgment. *See Culp*, 454 F. Supp. 3d at 770; *KFC Corp.*, 2020 WL 3892989, at *3 n.5.

**B**. **Malicious Prosecution Claim**

Defendants argue that to the extent Thomas attempts to assert a federal malicious prosecution claim in Count II, that claim fails as a matter of law. Mot. Dismiss. at 7. Defendants maintain that controlling Supreme Court and Seventh Circuit precedent holds that the Constitution does not create a free-standing malicious prosecution claim. *Id.* (citing *Manuel I*, 137 S. Ct. 911; *Manuel II*, 903 F.3d at 669–70; *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001)). Thomas responds that the Seventh Circuit has not addressed the issue of whether a federal constitutional claim for malicious prosecution exists since *McDonough v. Smith* was decided. Resp. at 10–11 (citing 139 S. Ct. 2149 (2019)). Thomas contends that, at a minimum, the Court should read *McDonough* as recognizing that a distinct "constitutional malicious prosecution claim" exists because *McDonough* approved of a malicious prosecution claim, even if the exact contours of the claim have yet to be defined. Resp. at 9–10 (citing 139 S. Ct. at 2156 n.3). Therefore, reasons Thomas, the Court should not dismiss his Fourteenth Amendment malicious prosecution claim at the pleading stage. Resp. at 10–11.

The Court need not determine at this stage whether a malicious prosecution claim can proceed under the Fourteenth Amendment. Since briefing on the motion to dismiss concluded, the Supreme Court in *Thompson v. Clark*, confirmed that the Fourth Amendment housed a "malicious prosecution claim." 142 S. Ct. 1332, 1337

(2022) (citing *Manuel I*, 137 S. Ct. 911; and *Albright*, 510 U.S. 266). Before *Thompson*, the Seventh Circuit had held that a plaintiff subject to prosecution in Illinois could not bring a malicious prosecution claim under the Fourth or Fourteenth Amendments. *See Navarro v. City of Aurora*, 2022 WL 1988990, at *2 (N.D. Ill. June 6, 2022) (citing *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) ("Malicious prosecution is not by itself an infringement on the constitutional right to due process under the Fourteenth Amendment."); *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) ("Federal courts are rarely the appropriate forum for malicious prosecution claims. We have previously stated that individuals do not have a federal right not to be summoned into court and prosecuted without probable cause, under either the Fourth Amendment or the Fourteenth Amendment's Procedural Due Process Clause.")).

As the court in *Navarro* found, *Thompson* overruled Seventh Circuit precedent that there was no cognizable claim for malicious prosecution under the Fourth Amendment. *Navarro*, 2022 WL 1988990, at *2. Although *Thompson* was silent as to whether a malicious prosecution claim exists under the Fourteenth Amendment, as this Court has repeatedly noted above, so long as Thomas can identify some plausible theory that entitles him to relief on his claim, that claim may move forward and Defendants' motion to dismiss other legal theories must be denied. *See KFC Corp.*, 2020 WL 3892989, at *3. Therefore, because under *Thompson*, Thomas' Fourth Amendment malicious prosecution claim is cognizable, the Court will not, at this stage, dismiss his Fourteenth Amendment malicious prosecution claim.

III.    **Derivative Claims (Count III and Count IV)**

Finally, Defendants argue that, absent an underlying constitutional violation, there can be no independent claims for failure to intervene and conspiracy and because Thomas' underlying Fourteenth Amendment and federal malicious prosecution claims are not actionable, his failure to intervene claims must be dismissed. Mot. Dismiss at 22.

As discussed above, the Court finds that Thomas sufficiently pled a Fourteenth Amendment due process claim based on fabricated evidence, as well as a *Brady* claim. *See supra* Section I. Additionally, Thomas has pled a malicious prosecution claim under the Fourth Amendment. Thus, his claims for failure to intervene and conspiracy based on these claims may also move past the pleading stage. *See Carter*, 2018 WL 1726421, at *5 ("Because the court has sustained the underlying federal claims, it denies the motion to dismiss the failure to intervene and conspiracy claims.").

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [170] is denied.


Dated: October 14, 2022

_____
United States District Judge
Franklin U. Valderrama