UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re: WATTS COORDINATED
PRETRIAL PROCEEDINGS

Master Docket No. 19-cv-1717
Judge Franklin U. Valderrama

MEMORANDUM OPINION AND ORDER

Plaintiffs in these coordinated proceedings have filed suit for violations of their Fourth and Fourteenth Amendment rights and for violations of state law against current and former Chicago Police Department (CPD) officers, Brian Bolton, Miguel Cabrales, Darryl Edwards, Robert Gonzalez, Alvin Jones, Manuel Leano, Douglas Nichols, Jr., Calvin Ridgell, Jr., Elsworth J. Smith, Jr., Kenneth Young, David Soltis, John Rodriguez, Lamonica Lewis, Rebecca Bogard, Frankie Lane, Katherine Moses-Hughes, Nobel Williams, Michael Spaargaren, Gerome Summers, Jr., Matthew Cadman, Ronald Watts, and Kallatt Mohammed (collectively, the Defendant Officers) and the City of Chicago, CPD Superintendent Phillip Cline, and CPD Assistant Deputy Superintendent Debra Kirby (together with the Defendant Officers, Defendants). R. 173-1, Compl.[1] Before the Court is Defendants' motion to dismiss the Fourteenth Amendment claims and federal malicious prosecution claims, as well as any derivative claims, asserted in the complaints of Plaintiffs represented by

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation. The record citations pertain to the filings in the coordinated proceedings, 19-cv-01717; to the extent the Court cites to a case that is part of the coordinated proceedings, it will so note.

Kenneth N. Flaxman P.C. (the Flaxman Firm).[2] R. 173, Mot. Dismiss. For the reasons stated below, Defendants' motion to dismiss is denied.

## Background

### I.     In Re Watts Procedural Posture

Plaintiffs claim that they are victims of a criminal enterprise run by now-convicted felon and former CPD Sergeant Ronald Watts (Watts) and his tactical team of officers (the "Watts Gang"), that patrolled a public housing project on the south side of Chicago in the 2000s. Compl. ¶¶ 7–11; *see, e.g., Baker v. City of Chicago et al.*, 16-cv-08940 Dkt. 238 (N.D. Ill.); *Scott v. City of Chicago et al.*, 18-cv-05128 Dkt. 1 (N.D. Ill.). According to Plaintiffs, the Watts Gang engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges against the residents of the housing project, with the knowledge of high-ranking officials in the CPD who did nothing to intervene. Compl. ¶¶ 11–12, 64, 68–70. Watts and Kallatt Mohammed were charged criminally in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer. *See United States v. Watts et al.*, 12-cr-00087 Dkts. 1, 56, 79 (N.D. Ill.). Both eventually pled guilty. *Id.* Upon learning about the Watts Gang's "criminal enterprise" Plaintiffs challenged their convictions and eventually had their convictions set aside. Compl. ¶¶ 8, 61–62.

Numerous individuals who were arrested by Watts and his team, and subsequently charged and convicted, have filed claims against Watts, his team, and

---

[2]For ease of reference, the plaintiffs represented by the Flaxman firm will be referred to as Plaintiffs.

other defendants. Some of these plaintiffs are presented by the Flaxman Firm and Loevy & Loevy (the Loevy Firm). The Court approved a procedure by which Defendants in the Coordinated Pretrial Proceedings would file two representative motions to dismiss, one as to the version of the complaints filed by Plaintiffs represented by the Loevy Firm and a second as to the version of the complaints filed by Plaintiffs represented by the Flaxman Firm. R. 155; R. 163. Defendants' motion to dismiss refers to the version of facts of the complaints filed by Plaintiffs represented by the Flaxman Firm.[3] Defendants refer to the allegations in the complaint filed in *Henderson v. City of Chicago*, Case No. 19-cv-00129.

## II.  Henderson's Complaint[4]

Plaintiff Ricky Henderson (Henderson) alleges that he is one of the many victims of a criminal enterprise that Watts and his tactical team formed at the Ida B. Wells housing complex in the 2000s. Compl. ¶ 7. Henderson was arrested on four separate occasions—June 25, 2002, August 27, 2003, March 12, 2005, and July 22, 2006—for drug crimes that were invented by officers working under the direction of Watts. *Id.* ¶¶ 17, 20, 28, 31, 39, 42, 50, 53. Henderson alleges that on each arrest, the Defendant Officers did not have a warrant, did not observe Henderson commit a

---

[3]Pursuant to the parties' February 23, 2021 Joint Stipulation Regarding Pleadings, Defendants' joint motion applies only to those consolidated cases in which a responsive pleading has not previously been filed. R. 186, Stip. ¶ 2. The joint stipulation does not affect Defendants' rights to later seek reconsideration or summary judgment as the case law continues to develop on the issues raised herein. R. 192, Reply at 1 n.1 (citing Stip. ¶ 4).

[4]The Court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

crime, and did not have information from any source that he had committed a crime. Compl. ¶¶ 18, 29, 40, 51.

According to Henderson, in each case the Defendant Officers conspired and agreed to fabricate a false story to justify his unlawful arrests and to cover-up their wrongdoing. Compl. ¶¶ 19, 30, 41, 52. He further alleges that one or more of the Defendant Officers prepared false reports—which Watts formally approved knowing them to be false—and communicated the false reports to prosecutors. *Id.* ¶¶ 21, 32, 43, 54. This led Henderson to be wrongfully charged, detained, and prosecuted. *Id.* ¶¶ 19, 23, 30, 34, 41, 45, 52, 56. Henderson claims that, although innocent of the four drug crimes, he pled guilty to each of the crimes because he "knew that proving that the . . . Arresting Officers had concocted the charges against him would not be possible" and therefore thought he would lose at trial. *Id.* ¶¶ 24–25, 35–36, 46–47, 57–58. Each guilty plea resulted in Henderson's imprisonment. *Id.* ¶¶ 14, 25, 36, 47, 58.

Henderson alleges the Internal Affairs Division of the CPD had received numerous civilian complaints that Watts and the Watts Gang were engaging in robbery, extortion, the use of force, planting evidence, fabricating evidence, and manufacturing false charges against people at the Ida B. Wells Complex. Compl. ¶¶ 64, 68. According to Henderson, CPD's official policies or customs of failing to discipline, supervise, and control its officers, and its "code of silence" were a proximate cause of the Watts Gang's criminal enterprise. *Id.* ¶ 13.

After learning of evidence of the Defendant Officers' misconduct, Henderson challenged his convictions and on September 24, 2018, the Circuit Court of Cook County granted the State's motion to set aside Henderson's convictions. Compl. ¶¶ 61, 62. Immediately thereafter, the Circuit Court granted the State's request to *nolle prosequi*[5] all four cases. *Id.* ¶ 62.[6] On November 2, 2018, the Circuit Court of Cook County granted Henderson four Certificates of Innocence. *Id.* ¶ 63.

Henderson subsequently filed a Complaint against Defendants, asserting federal claims against Defendants for violating Henderson's Fourth and Fourteenth Amendments rights, and state law claims for malicious prosecutions against the City of Chicago. Compl. ¶¶ 97, 98. Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on

---

[5]"[T]he Latin term nolle prosequi means 'not to wish to prosecute.' . . . [The Illinois Supreme Court has] previously explained that a nolle prosequi is the formal entry of record by the State which denotes its unwillingness to prosecute a charge." *Kuri v. City of Chicago*, 2017 WL 4882338, at *8 n.5 (N.D. Ill. Oct. 30, 2017) (quoting *People v. Hughes*, 983 N.E.2d 439, 448 (Ill. 2012)).

[6]Several exonerees have had multiple convictions vacated, but Henderson is the only exoneree framed by the Watts gang four separate times. R. 176, Resp. at 3.

5

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Defendants move to dismiss the allegations in the Complaint that purport to allege claims for pretrial detention without probable cause; federal malicious prosecution; and fabricated evidence-based due process violations under the Fourteenth Amendment. Mot. Dismiss at 4. The Court addresses each argument in turn.

### I.    Fourteenth Amendment Pretrial Detention Claim

Henderson brings claims against the Defendant Officers for fabricating evidence that caused him to be unreasonably seized and deprived of liberty in violation of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. *See* Compl. ¶¶ 14, 97. Defendants move to dismiss Henderson's claim for pretrial detention without probable cause under the Fourteenth Amendment because such a claim arises exclusively under the Fourth Amendment. Mot. Dismiss at 4–6 (citing, among other cases, *Manuel v. City of Joliet*, 580 U.S. 357 (2017) (*Manuel I*); *Lewis v. Chicago*, 914 F.3d 472 (7th Cir. 2019)).

6

Henderson concedes in his response that currently in the Seventh Circuit, claims for unlawful pretrial detention arise under the Fourth Amendment, rather than under the Fourteenth Amendment. R. 176, Resp. at 9. However, he notes the Supreme Court in *McDonough v. Smith* subsequently left open the possibility that the Due Process Clause might support claims of unlawful pretrial detention. *Id.* (citing 139 S. Ct. 2149, 2155 (2019); *Savory v. Cannon*, 947 F.3d 409, 416 nn.3–4 (7th Cir. 2020); *Smith v. City of Chicago*, No. 19-2725)).

Henderson points out generally in his response that a complaint need not cite to the appropriate statute or legal rule, nor must it plead legal theories. Resp. at 7–8 (citing *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992); *Koger v. Dart*, 950 F.3d 971, 974–75 (7th Cir. 2020)). Neither party addresses specifically how the Court's analysis as to Henderson's Fourteenth Amendment pretrial detention claim should be informed by this principle or the corollary that a motion to dismiss under Rule 12(b)(6) does not "permit piecemeal dismissals of *parts* of claims."[7] *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("[T]he question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."). Even though not directly addressed by the parties, the Court must follow Seventh Circuit law. *See Paddock Publications, Inc. v. Chicago Trib. Co.*, 103 F.3d 42, 46 (7th Cir. 1996). And the Court agrees with Henderson that it is axiomatic that a plaintiff is not required to plead legal theories at all. *Bartholet*, 953 F.2d at 1078; *see also Avila v. CitiMortgage, Inc.*, 801 F.3d 777

---

[7] Plaintiffs represented by the Loevy Firm make this argument in their response to Defendants' motion to dismiss their complaints. R. 178, Loevy Resp. at 8.

(7th Cir. 2015) ("[P]laintiffs are not required to plead specific legal theories."); *see also KFC Corp.*, 2020 WL 3892989, at *3 (citing *Jajeh v. County of Cook*, 678 F.3d 560, 567 (7th Cir. 2012)). Consequently, "no penalty attaches to the assertion in the complaint of legal theories that fail as a matter of law." *KFC Corp.*, 2020 WL 3892989 at *3 (citing *Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error.")). Thus, "as long as the plaintiff can, in response to a motion to dismiss, identify some plausible theory that would entitle [him] to relief on its claim, that claim may move forward and a motion to dismiss other legal theories must be denied." *Id.*

Given that there is no dispute among the parties that Henderson's claim for unlawful pretrial detention is viable under at least one legal theory—the Fourth Amendment—there is no basis to dismiss his pretrial detention claim in Count II. *See KFC Corp.*, 2020 WL 3892989 at *3; *Weston v. City of Chicago*, 2021 WL 2156459, at *9 (N.D. Ill. May 27, 2021).

Moreover (or, even if there are separate Fourth and Fourteenth Amendment claims alleged), as Henderson points out, other courts in this District—including some after briefing on the motion to dismiss concluded—have declined to dismiss a Fourteenth Amendment pretrial detention claim at this stage. *See Winn v. City of Chicago*, 2022 WL 80272, at *3 (N.D. Ill. Jan. 6, 2022); *Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1267 (N.D. Ill. Nov. 22, 2021); *Treadwell v. Salgado*, 2021 WL 3129290, at *3 (N.D. Ill. 2021); *Weston*, 2021 WL 2156459, at *9; *Wright v. City of*

8

*Chicago*, 2021 WL 736234, at *2 (N.D. Ill. Feb. 25, 2021); *Mack v. City of Chicago*, 2020 WL 7027649, at *3 (N.D. Ill. Nov. 30, 2020); *Culp v. Flores*, 454 F. Supp. 3d 764, 770 (N.D. Ill. 2020). Admittedly, however, a split exists within this District, as at least two courts have recently dismissed such claims on motions to dismiss. *See Grayer*, 2021 WL 2433661, at *3 & n.2; *Henderson v. Rangel*, 2020 WL 5642943, at *3 (N.D. Ill. Sept. 21, 2020).

The Court follows the majority of courts in this District and finds that it is not appropriate to dismiss Henderson's Fourteenth Amendment pretrial detention claim at this stage in the proceedings. Henderson has pled a plausible claim for relief; whether he can prevail turns on whether his arrests and pretrial detentions were supported by probable cause, "not whether he has invoked the Fourth or Fourteenth Amendment." *Winn*, 2022 WL 80272, at *3. What's more, as many courts in this District have noted, allowing Henderson's Fourteenth Amendment claim to proceed will not significantly change the scope of discovery. *See, e.g.*, *Treadwell*, 2021 WL 3129290, at *3 ("[D]iscovery on the plaintiff's Fourth Amendment claim would be coextensive with discovery on any claim that his detention violated due process under the Fourteenth Amendment.").

Accordingly, the Court declines to dismiss Henderson's Fourteenth Amendment pretrial detention claim and therefore need not address the parties' substantive arguments as to whether a pretrial detention claim exists under the Fourteenth Amendment; however, the Court will consider this issue again if

presented on summary judgment. *See Culp*, 454 F. Supp. 3d at 770; *Weston*, 2021 WL 2156459, at \*9; *KFC Corp.*, 2020 WL 3892989, at \*3 n.5.

## II.    Fourteenth Amendment Malicious Prosecution Claim

Next, Defendants argue that to the extent Henderson asserts federal malicious prosecution claims, these claims should also be dismissed because the "Seventh Circuit has long held the Constitution does not create a free-standing claim for malicious prosecution." Mot. Dismiss at 6–8 (citing *Stone v. Wright*, 734 F. App'x 989, 989–90 (7th Cir. 2018); *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018) ("*Manuel II*"); *Newsome v. McCabe*, 256 F.3d. 747, 751 (7th Cir. 2001)).[8] Henderson, in response, clarifies that he does not bring any federal malicious prosecution claims. Resp. at 9. Here, the Complaint makes no reference to any federal malicious prosecution claims under either the Fourth or Fourteenth Amendments. Accordingly, the Court need not discuss this further and the motion to dismiss on this basis is denied as moot.

---

[8]As discussed in more detail in the Opinion addressing Defendants' motion to dismiss the complaints filed by Plaintiffs represented by the Loevy Firm, the Supreme Court recently confirmed that the Fourth Amendment housed a "malicious prosecution claim." *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). As another court in this District has recently found, the Supreme Court overruled Seventh Circuit precedent that "a plaintiff subject to a prosecution in Illinois could not bring a malicious prosecution claim under the Fourth or the Fourteenth Amendments . . . as to the Fourth Amendment, but not the Fourteenth Amendment." *Navarro v. City of Aurora*, 2022 WL 1988990, at \*2 (N.D. Ill. June 6, 2022) (internal citations omitted).

### III.     Due Process Claim Based on Fabricated Evidence[9]

Henderson alleges that the Defendant Officers violated his due process rights because they used fabricated evidence to convince him to plead guilty, which resulted in his wrongful convictions. Compl.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause protects criminal defendants from being deprived of their liberty based on various kinds of police misconduct." *Fletcher v. Bogucki*, 2021 WL 4477968, at * 3 (N.D. Ill. Sept. 30, 2021). "The essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick v. City of Chicago*, 974 F.3d 835 (7th Cir. 2020). The Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty *in some way." Whitlock v. Brueggeman*, 682 F.3d 567, 580 (7th Cir. 2012) (emphasis added); *see also Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016).

### A.  Elements of a Due Process Fabrication Claim

Defendants contend that a due process claim based on fabricated evidence "can arise only if the fabricated evidence is admitted at trial and causes the plaintiff's conviction." Mot. Dismiss at 9. Defendants reason that since Henderson pled guilty

---

[9]This section of the Opinion applies to the Flaxman Plaintiffs who pled guilty. *See* Mot. Dismiss at 8 n.5.

before a trial, he therefore cannot allege a due process claim based on allegedly fabricated evidence. *Id.* at 9–11 (citing primarily *Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017); *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014); *Patrick*, 974 F.3d 824).

In response, Henderson contends that none of the cases cited by Defendants *requires* the use of fabricated evidence at trial, rather, they merely recognize that showing use at trial is one way to prove such a claim. Resp. at 11. According to Henderson, the relevant inquiry is not whether the fabricated evidence was used at trial, but whether it was used in his criminal case to deprive his liberty in some way. *Id.* at 12. The fabricated evidence, submits Henderson, did just that because it was used in each criminal case to bring charges against him by "presenting the evidence at a preliminary hearing or to a grand jury, as required by Illinois law." *Id.* at 12–13. Additionally, the fabricated evidence was introduced at each guilty plea hearing where the prosecutor provided the judge with a factual basis for the plea. *Id.* at 13. Henderson maintains that Defendants ignore that Instruction No. 7.14 of the Seventh Circuit Pattern Civil Jury Instructions, cited in *Patrick*, provides two paths to showing that fabricated evidence was used to deprive a plaintiff of his liberty: either by proving that the evidence was introduced at trial *or* by proving that the evidence was used in some manner during the plaintiff's criminal case. *Id.* at 12 (citing Fed. Civ. Jury Instr. 7th Cir. 7.14 (2017)). Thus, Henderson reasons that his allegations are consistent with Instruction No. 7.14, which requires that the fabricated evidence be either used at a defendant's trial or in his criminal case. *Id.*

12

In their reply, Defendants concede that Henderson is correct that the Seventh Circuit's Pattern Jury Instructions reflect that the fabricated evidence must have been introduced against the plaintiff at his "criminal trial" or "in his criminal case." R. 192, Reply at 8. But *Manuel I*, and recent case law like *Avery, Lewis,* and *Patrick*, insist Defendants, make clear that the bracketed language of the instructions "in his criminal case" could only address pretrial deprivation. *Id.*

As an initial matter, the parties do not cite, and the Court is not aware of any, Seventh Circuit authority that directly addresses the question of whether a due process claim based on the fabrication of evidence can proceed if the accused pled guilty based on the fabricated evidence rather than go to trial.[10]

As noted above, the Seventh Circuit in *Whitlock* held that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty *in some way*." 682 F.3d at 580 (emphasis added). Numerous courts in this District—including three addressing motions to dismiss in cases that are now part of the coordinated proceedings—have read *Whitlock* to mean that a plaintiff plausibly alleges a

---

[10]Henderson cites *Armstrong v. Daily*, 786 F.3d 529, 551 (7th Cir. 2015), for the proposition that the use at trial of fabricated evidence is not required to state a Due Process claim. Resp. at 11. However, Armstrong's claim was deprivation of liberty without due process of law as a result of the destruction of evidence by a state actor. *Id.* The court determined that the outright destruction of exculpatory evidence raises immediate constitutional concerns because the resulting prejudice to the defense is permanent. *Id.* at 552. The court thus concluded that whatever unfairness resulted from the destruction of evidence would infect all future proceedings because the exculpatory evidence would continue to be unavailable. *Id.* Given that Henderson's claims are premised on the fabrication of evidence, not the destruction of evidence, the Court finds that *Armstrong* is of little utility in resolving the issue before the Court.

fabricated evidence due process claim when the defendant alleges that the fabricated evidence was used to deprive the defendants of his or her liberty even in the absence of a trial. *See Carter*, 2018 WL 1726421, at *5 ("The due process violation—that is the liberty deprivation—caused by fabricated evidence results from its use to secure the defendant's conviction, not from its use at trial.") (internal quotation marks and citation omitted); *White*, 2018 WL 1702950, at *3 (N.D. Ill. Mar. 31, 2018); *Powell*, 2018 WL 1211576, at *6; *Alvarado v. Hudak*, 2015 WL 9489912, at *3 (N.D. Ill. Dec. 30, 2015); *Sumling v. Vill. of E. Dundee*, 2015 WL 5545294, at *2–3 (N.D. Ill. Sept. 18, 2015); *Saunders v. City of Chicago*, 2014 WL 3535723, at *4 (N.D. Ill. July 11, 2014).

The Court recognizes, and Defendants point out in reply, that *Manuel I* has placed the law with respect to the Fourth Amendment, and potentially Fourteenth Amendment, in flux. In *Manuel I*, the petitioner was arrested and detained on a drug charge before the state dropped the case. 137 S. Ct. at 915–16. The plaintiff subsequently filed a § 1983 action alleging that the city violated his Fourth Amendment rights in two ways: (1) by arresting him without probable cause, and (2) by detaining him in police custody based on fabricated evidence. *Id.* at 916. The Supreme Court reversed the district court and Seventh Circuit and held "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Id.* at 920. Rather than drawing the Fourth Amendment's outer boundary at the initiation of criminal proceedings, the Supreme Court instead placed the line of demarcation at conviction, explaining that "[o]nce a trial has occurred, the

Fourth Amendment drops out: [a] person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id.* at 920 n.8; *see also Manuel II,* 903 F.3d at 670.

In the wake of *Manuel I*, courts are now defining the contours of both Fourth and Fourteenth Amendment violations. *See, e.g.*, *Grayer v. City of Chicago*, 2021 WL 2433661, at *2–3 (N.D. Ill. June 15, 2021) (internal citations omitted). In light of the above, the Court turns to the cases cited by Defendants to determine if, after *Manuel I*, "a fabricated evidence-based due process claim can arise *only* if the fabricated evidence is admitted at trial and causes the plaintiff's conviction." Mot. Dismiss at 9; Reply at 5 (emphasis added).

In *Avery*, the plaintiff was convicted based on a false confession and the false testimony of three jailhouse informants. 847 F.3d at 436–37. The jury returned a verdict in favor of the plaintiff on his due process fabrication of evidence claim. *Id.* at 435. The district court, however, set aside the verdict, finding that the claim was not viable given the availability of a state law remedy for malicious prosecution. *Id.* at 437–438. The Seventh Circuit reversed, holding that the "availability of a state-law remedy for malicious prosecution doesn't defeat a federal due-process claim against an officer who fabricates evidence that is later used to obtain a wrongful conviction." *Id.* at 441. The Seventh Circuit explained that "[f]alsified evidence will *never* help a jury perform its essential truth-seeking function. That is why convictions premised on deliberately falsified evidence will always violate the defendant's right to due

process." *Id.* at 439 (emphasis in original). The Seventh Circuit held that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way." *Id.* (quoting *Whitlock*, 682 F.3d at 580).

The Court, unlike Defendants, does not read *Avery* as requiring that the fabricated evidence be used at trial for a due process violation to occur. Rather, the due process violation occurs once the fabricated evidence is introduced "in some way" that results in the criminal defendant's conviction and ultimately deprives him of his liberty. 847 F.3d at 439. So too with *Fields*, another case cited by Defendants. *Fields*, similarly to *Avery*, found that plaintiff stated a due process claim based on evidence introduced at his trial, noting that "if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without a harm there is, as we noted earlier, no tort." 740 F.3d at 1114. The main takeaway from *Avery* and *Fields* is not that a trial was required to sustain the claim, but rather that the fabricated evidence had to be considered at the trial that resulted in the accused's conviction in order for harm to occur, which is a prerequisite of a due process claim.[11] Here, as

[11]To the extent Defendants rely on *Lewis* to support their argument that a trial is required for a due process claim based on fabricated evidence, the Court finds it inapposite because it addressed a pretrial detention claim. 914 F.3d 472. Moreover, the Seventh Circuit's statement that "a claim for wrongful pretrial detention based on fabricated evidence is distinct from a claim for wrongful conviction based on fabricated evidence: '[C]onvictions premised on deliberately fabricated evidence will always violate the defendant's right to due process,'" can be read to support the proposition that *any* convictions premised on deliberately fabricated evidence—regardless of whether the evidence was introduced at trial or introduced to convince a criminal defendant to enter a plea of guilty—will always violate that criminal defendant's right to due process. *Lewis*, 914 F.3d at 479 (citing *Avery*, 847 F.3d at 439). That said, the Court recognizes that this is not *Lewis*' explicit holding and does not rely on it as such.

discussed in more detail below, *see infra* Section III.B, Henderson alleges that he pled guilty because of the fabricated evidence.

While the Court finds that *Avery* and *Fields* do not support Defendants' contention, *Patrick* is a closer call. In *Patrick*, the plaintiff was convicted of double murder and sentenced to life in prison following a jury trial. 974 F.3d at 827. The plaintiff's convictions were subsequently vacated, and he was released. *Id.* at 830. The plaintiff filed suit asserting Section 1983 claims and state law claims for malicious prosecution and civil conspiracy against the Chicago police officers and prosecutors who investigated and prosecuted him. *Id.* The jury found six of the officers liable and awarded plaintiff a sizeable verdict, including an award of punitive damages. *Id.* at 831. On appeal, the defendants challenged several of the district court's rulings and the jury instructions. *Id.* Specifically, the defendants claimed that the district court erred by rejecting their proposed jury instruction on the due process fabrication of evidence claim, "that would have placed the burden on [the plaintiff] to prove that the defendant (each one considered individually) fabricated evidence against him; the evidence was used at his criminal trial; the evidence was material; and he was damaged as a result." *Id.* at 835. The defendants' proposed instruction was based on an updated pattern jury instruction that had "been proposed and published for comment by the Seventh Circuit Committee on Pattern Civil Jury Instructions but had not yet been finally approved for publication by the Seventh Circuit Judicial Council." *Id.* The district court declined to give the defendants' proposed instruction, and instead instructed the jury that, to succeed on his due

process claim, the plaintiff must prove by a preponderance of the evidence that: "1. The Defendant you are considering knowingly fabricated false evidence or participated in fabricating false evidence; 2. That evidence was used to deprive Plaintiff of his liberty in some way; [and] 3. The fabricated evidence proximately caused Plaintiff to be damaged." *Id.*

The Seventh Circuit found the instruction given by the district court "incomplete in that it failed to explain that Patrick had the burden to prove that the fabricated evidence was used against him at his criminal trial and was material." *Patrick*, 974 F.3d at 835. The Seventh Circuit, however, found the error to be harmless and affirmed the verdict. *Id.* at 835–36.

Defendants contend that the bracketed language "in his criminal case" could only address pretrial deprivation. Reply at 8 (citing Fed. Civ. Jury Instr. 7th Cir. 7.14 (2017)).[12] Defendants cite no authority from the Seventh Circuit that defines the phrase "in his criminal case." *See* Reply. *Patrick* suggests the contrary. As stated above, the Seventh Circuit explained that the fabrication of evidence instruction

---

[12]The jury instruction reads, in relevant part:

> To succeed on this claim, Plaintiff must prove each of the following (number of elements) things by a preponderance of the evidence:
>
> 1. Defendant [knowingly concealed [from the prosecutor] exculpatory and/or impeachment evidence, and the evidence was not otherwise available to Plaintiff, through the exercise of reasonable diligence, to make use of at his criminal trial] [and/or] [knowingly fabricated evidence that was introduced against Plaintiff *[at his criminal trial] [in his criminal case]*.
> 2. The evidence was material.
> 3. Plaintiff was damaged as a result.

Fed. Civ. Jury Instr. 7th Cir. 7.14 (2017) (emphasis added).

given by the district court was erroneous because it failed to explain that the plaintiff had the burden to prove that the fabricated evidence was used against him at his criminal trial and was material. 974 F.3d at 835–36. However, the jury instructions were guided by the plaintiff's original criminal conviction, which resulted from a jury trial. *Id.* at 827. It logically follows that the jury instruction be related to the events that gave rise to the alleged conviction. As Henderson points out in response, Pattern Instruction No. 7.14, which was proposed by the defendants in *Patrick*, includes two alternatives: plaintiff has the burden to prove that the fabricated evidence was used against him "[at his criminal trial]" or "[in his criminal case]." *See* Fed. Civ. Jury Instr. 7th Cir. 7.14 (2017). The Seventh Circuit did not—and indeed did not need to— opine on the alternative "[in his criminal case]" option from the pattern instructions, since the clearly applicable option was "[at his criminal trial]." *Patrick*, 974 F.3d at 835.

The Court is aware that the Pattern Jury Instructions are not binding on courts. But the Seventh Circuit has noted that they are a helpful starting point. *See Reyes v. United States*, 998 F.3d 753, 758 (7th Cir. 2021) ("Though our pattern instructions are not 'holy writ,' they do 'reflect the collective experience of the judges and lawyers who crafted them and can serve as a helpful starting point.'"). And while the Seventh Circuit in *Patrick* endorsed one alternative in Instruction 7.14, as noted above it did not need to consider the other alternatives provided in the instruction. Because the Seventh Circuit has not addressed this issue, the Court relies on the instructions to the extent that they provide a helpful, albeit not binding, guide.

All in all, *Patrick*'s rejection of an instruction that stated that fabricated evidence "was used to deprive Plaintiff of his liberty *in some way*" in favor of an instruction stating that "the fabricated evidence was used against [Plaintiff] at his criminal trial" makes the question before the Court—whether a fabricated evidence due process claim can be premised on a guilty plea—a close call. However, for the reasons stated above, the Court does not read *Patrick* to stand for the proposition that fabricated evidence-based due process claims *requires* the introduction of the fabricated evidence at trial, so long as it was used "in his criminal case." *See Patrick*, 974 F.3d at 835; Fed. Civ. Jury Instr. 7th Cir. 7.14.

A fair reading of Seventh Circuit fabricated evidence jurisprudence, from *Whitlock* to *Patrick*, reveals that the due process violation occurs once the material fabricated evidence is introduced "in some way"—or more precisely, "in his criminal case"—that results in the criminal defendant's conviction and ultimately deprives him of his liberty. 847 F.3d at 439. One such way, but not the only way, is through a conviction following a trial. Another way is when the fabricated evidence is used to coerce the defendant to plead guilty. Any reading to the contrary would reward egregious deliberate misconduct from state actors by making conviction following trial the only pathway to vindicate constitutional violations. The Court can discern no cogent basis for such a distinction. Therefore, the Court does not find Defendants' argument persuasive. *See Carter*, 2018 WL 1726421, at *5; *White*, 2018 WL 1702950 at *3; *Powell*, 2018 WL 1211576, at *6.

20

### B. Whether a Guilty Plea Breaks the Causal Chain

Defendants next assert that "[b]ecause a guilty plea breaks the chain of events that preceded the plea, any constitutional violations that occurred prior to the plea cannot form the basis of attacking the plea." Mot. Dismiss at 12 (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *McMann v. Richardson*, 397 U.S. 759, 770 (1970); *Parker v. North Carolina*, 397 U.S. 790 (1970); *Hurlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013)).

Henderson responds that the cases cited by Defendants are inapplicable. Resp. at 13. The Court agrees with Henderson. *See Tollett*, 411 U.S. 258 (1973) (discussing a guilty plea in the context of a federal habeas proceeding); *McMann*, 397 U.S. 759 (same); *Hurlow*, 726 F.3d 958 (same); *Parker*, 397 U.S. 790 (addressing guilty plea in context of criminal defendant's post-conviction application for relief under state statute). Defendants cite no authority, nor is the Court aware of authority, that bars a civil due process claim based on fabricated evidence where the plaintiff pled guilty because of the fabricated evidence and subsequently had his sentence vacated, was granted a certificate of innocence, or both. Still, Defendants are correct that it is settled law that, absent some important exceptions, generally a plea executed with the benefit of counsel "'operates as a waiver of all formal defects' in the proceedings (even constitutional defects)." *Powell*, 2018 WL 1211576, at *7 (quoting *United States v. Lockett*, 859 F.3d 425, 427 (7th Cir. 2017)). Plea agreements typically constitute enforceable contracts, and thus "no 'general constitutional-argument exception' exists for waivers in plea agreements." *Id.* (quoting *United States v. Adkins*, 743 F.3d 176,

193 (7th Cir. 2014) (internal quotation marks omitted). "Regardless of the plea, however, '[a plaintiff] may . . . attack the voluntary and intelligent character of the guilty plea." *White*, 2018 WL 1702950, at *3 (quoting *Tollett*, 411 U.S. at 267). What's more, "in certain circumstances, federal courts can refuse to enforce a knowing waiver contained within a guilty plea if enforcing it would result in a 'miscarriage of justice.'" *Powell*, 2018 WL 1211576, at *7 n.2 (quoting *United States v. Litos*, 847 F.3d 906, 910 (7th Cir. 2017) (collecting cases)).

Here, Henderson alleges that he pled guilty in four cases because he knew that he could not prove that the individual Officer Defendants had brought false charges against him. Compl. ¶¶ 24–25, 35–36, 46–47, 57–58. Henderson's convictions and guilty pleas have been vacated, he is not in custody on any of the vacated convictions, and he has received certificates of innocence for each of his convictions. *Id.* ¶¶ 61–63. Construing the allegations in the light most favorable to Henderson, as the Court must, it finds that it can be reasonably inferred that the fabricated evidence was used to compel a guilty plea from Henderson; or, put another way, that it was used in his criminal case to deprive him of his liberty.[13] *See Whitlock*, 682 F.3d at 580; Fed. Civ. Jury Instr. 7th Cir. 7.14. It follows that without the fabricated evidence as the driving force, Henderson would not have pled guilty. *See White*, 2018 WL 1702950, at *3

---

[13]The Court cannot determine at this stage whether Henderson's plea constitutes an effective waiver of his fabricated evidence-based due process claim. As articulated in *Powell*, more facts are needed to be able to make such a determination. "For example, was there a written plea agreement? When the judge accepted his guilty plea, did Plaintiff swear under oath and confirm the facts underlying the government's case establishing his guilt? Did his plea specifically address and waive trial rights, including discovery issues?" *Powell*, 2018 WL 1211576, at *8 n.3.

("Plaintiff's admission on the record makes it clear that the fabricated evidence was the driving force behind his decision to plead guilty.").

In sum, the Court finds that Henderson adequately states a due process claim based on the fabrication of evidence. This holding is in line with several other well-reasoned decisions from courts in this District rejecting arguments similar to those raised by Defendants. *See Carter*, 2018 WL 1726421, at *5; *White*, 2018 WL 1702950, at *3; *Powell*, 2018 WL 1211576, at *6; *Saunders*, 2014 WL 3535723, at *5; *see also Baker*, 483 F.3d at 553 (finding that plaintiffs alleging that fabricated evidence compelled them to plead guilty to charges stemming from their December 2005 arrests stated valid claims for due process violations apart from any alleged *Brady* violations).[14]

_____

[14]Henderson's response brief suggests that he raised a *Brady* violation theory in his Complaint. Although a close call, the Court finds, at this stage, that Henderson alleges enough facts to place Defendants on notice of a *Brady* claim. Henderson alleges that the Defendant Officers fabricated evidence against him and communicated that false evidence to prosecutors, knowing that such acts would cause Henderson to be wrongfully prosecuted for offenses that had not occurred. Compl. ¶¶ 19–25, 30–36, 41–47, 52–58. Henderson alleges that he pled guilty because he knew that proving that the officers had concocted the charges against him would not be possible, and relatedly alleges that the Defendant Officers conspired to "cover-up their wrongdoing." *Id.* Henderson's response brief argues that he took his "pleas after 'taking stock of the lack of exculpatory evidence in his possession (complete or not) and inculpatory evidence in the government's possession (false or not).'" Resp. at 14 (quoting *Saunders*, 2014 WL 3535723, at *5). He goes on to argue that district courts following *McCann v. Mangliardi*, 337 F.3d 782 (7th Cir. 2003), have rejected the argument that a vacated guilty plea forecloses a due process claim with regard to *Brady* violations. Resp. at 14 (citing *Garcia v. Hudak*, 156 F. Supp. 3d 907, 916 (N.D. Ill. Jan. 5, 2016); *Ollins v. O'Brien*, 2005 WL 7309087, at 11 (N.D. Ill. Mar. 28, 2005)). As discussed above, and in more detail in the Opinion addressing Defendants' motion to dismiss the complaints filed by Plaintiffs represented by the Loevy Firm, a plaintiff need not plead legal theories, and at this stage, "it does not matter whether [Henderson] label[s] [his] due process claims as 'evidence fabrication' claims, *Brady* violations, or something else." *Baker*, 483 F. Supp. 3d at 553; *see also Bartholet*, 953 F.2d at 1078. Moreover, because the Court has found that Henderson's Fourteenth Amendment due process claim can proceed based on his fabrication of evidence

### IV.  Failure to Intervene, Conspiracy and *Monell* Claims

Finally, Defendants argue that, absent an underlying constitutional violation, there can be no independent claim for failure to intervene and because Henderson's underlying Fourteenth Amendment and federal malicious prosecution claims are not actionable, his failure to intervene claims must be dismissed. Mot. Dismiss at 14. Also, for those same reasons, Henderson's conspiracy claims and his *Monell* claims against the City of Chicago should be dismissed. *Id.*

As discussed above, the Court finds that Henderson sufficiently pled his Fourteenth Amendment due process claims. *See supra* Sections I, III. Thus, Henderson's related claims for failure to intervene and conspiracy based on these claims, as well as his *Monell* claim, may also move past the pleading stage. *See Carter*, 2018 WL 1726421, at *5 ("Because the court has sustained the underlying federal claims, it denies the motion to dismiss the failure to intervene and conspiracy claims.").

---

theory, if the claims are co-extensive, it would be improper to dismiss his *Brady* theory underlying the same claim. *See City of Angola*, 809 F.3d at 325; *Weston*, 2021 WL 2156459, at *9. Accordingly, to the extent Henderson does raise a *Brady* violation Fourteenth Amendment due process claim, it is sufficient to withstand a motion to dismiss.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [173] is denied.

Dated: October 14, 2022

_United States District Judge_
Franklin U. Valderrama