**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ) | Master Docket Case No. 19-cv-01717 |
| ) | |
| In re: WATTS COORDINATED ) | Judge Franklin U. Valderrama |
| PRETRIAL PROCEEDINGS ) | |
| ) | Magistrate Judge Sheila M. Finnegan |
| ) | |

**DEFENDANT OFFICERS' RESPONSE TO PLAINTIFFS' MOTION
TO QUASH SUBPOENAS TO ILLINOIS DEPARTMENT OF
CORRECTIONS FOR PLAINTIFFS' PHONE CALLS**

Defendant Officers, Alvin Jones, Robert Gonzalez, Miguel Cabrales, Douglas Nichols,

Jr., Manuel S. Leano, Brian Bolton, Kenneth Young, Jr., David Soltis, Elsworth J. Smith, Jr.,

Gerome Summers, Jr., John Rodriguez, Lamonica Lewis, Frankie Lane, Katherine Moses-

Hughes, Darryl Edwards, and Noble Williams, by and through their attorneys, Hale & Monico,

LLC, hereby respond to Plaintiffs' Motion to Quash Subpoenas to Illinois Department of

Corrections (IDOC) for Plaintiffs' Phone Calls [Dkt. 649] as follows:

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION…………………………………………………………………...…4

FACTUAL BACKGROUND……………………………………………………….………5

LEGAL STANDARD……………………………………………………………….……….8

ARGUMENT…………………………………………………………………………10

I.     Plaintiffs Omit Many Details about the timing of this discovery………………………..10

II.     Plaintiffs Lack A Sufficient Privacy Interest to Quash Subpoenas or Prohibit Defendants from Listening to Calls Obtained ………..………………………………………...…..12

III.     There is No Undue Burden on Plaintiff or the Court………………………………26

1

**TABLE OF AUTHORITIES**

**CASE**                                                                                          **PAGE**

*Allstate Ins. Co. v. Electrolus Home Prod., Inc.,* 2017 WL 5478293 (N.D. Ill. 2017)……...…..26

*Alvin Waddy v. City of Chicago,* 19 L 10035, at 11-12 (Cir. Ct. Cook Cty.)…………………9, 24

*Appleton Papers Inc. v. George A. Whiting Paper Co*., No. 08-C-16, 2009 WL 2408898,
(E.D. Wis. July 31, 2009)…………………………………………….………………...11

*Bishop v. White*, No. 16 C 6040, 2023 WL 35157, (N.D. Ill. Jan. 4, 2023)……………………..25

*Bond v. Utreras*, 585 F.3d 1061, (7th Cir. 2009)…………………………………….…...……...14

*Cent. States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc*., No. 1:06-CV-01205,
2009 WL 3255246, (N.D. Ill. Oct. 6, 2009)……………………………………………...…11

*Chalmers v. City of Chicago*, 21-cv-01531, ECF No. 82 (N.D. Ill. Sept. 16, 2021)………….....13

*Coleman v. City of Peoria*, No. 15-cv-1100, 2016 WL 3974005, (C.D. Ill. July 22, 2016)……..13

*Craftwood II, Inc. v. Generac Power Sys., Inc.*, No. 17-CV-4105, 2018 WL 497282
(N.D. Ill. Jan. 22, 2018)………………………………………………………………..........9

*DeLeon-Reyes v. Guevara*, No. 18-CV-1028, 2020 WL 7059444 (N.D. Ill. Dec. 2, 2020)…...9, 24

*Harris v. City of Chicago*, 20-cv-04521, ECF No. 58 (N.D. Ill. Aug. 5, 2021)………….…..13, 25

*Jump v. Montgomery Cty*., No. 13-3084, 2015 WL 6558851 (C.D. Ill. Oct. 29, 2015)…………26

*Kessel v. Cook County*, No. 00 C 3980, 2002 WL 398506 (N.D. Ill. Mar. 13, 2002)…………...13

*Malibu Media, LLC v. John Does 1-14*, No. 12-cv-263, 2012 WL 6019259
(N.D. Ind. Dec. 3, 2012)……………………………………………………………………12

*Marcel Brown v. City of Chicago*, 19 C 4082 (N.D. Ill.)…………………………………...…13

*Mitchell v. City of Chicago*, 862 F.3d 583 (7th Cir. 2017)………………………………….....12

*Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012)…………………….…………...11

*Parker v. Four Seasons Hotels, Ltd*., 291 F.R.D. 181 (N.D. Ill. 2013)…………...………12, 26

*Pursley v. City of Rockford*, 18 CV 50040, 2020 WL 1433827 (N.D. Ill. Mar. 24 2020)……….24

*Pursley v. City of Rockford¸* 18 C 50040, 2020 WL 7260797 (N.D. Ill. Dec. 10, 2020)…...…9, 24

*Rodriguez v. City of Chicago*, No. 18-cv-7951, 2021 WL 2206164
 (N.D. Ill. June 1, 2021)……………………………………………………………12, 13

*Simon v. Nw. Univ.*, 1:15-CV-1433, 2017 WL 66818 (N.D. Ill. Jan. 6, 2017)…………………..24

*Teague v. Salgado*, No. 19-CV-04113……………………………………………………...25

*Tittle v. Carver*, No. 06-cv-938, 2008 WL 4425882 (E.D. Wis. Sept. 24, 2008)………………..13

*Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 3231726 (N.D. Ill. July 29, 2021)........Passim

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12-CV-5490, 2013 WL 5348377
 (N.D. Ill. Sept. 24, 2013)……………………………………………………………..9, 24

*Woodard v. Victory Recs., Inc.*, No. 14 CV 1887, 2014 WL 2118799
 (N.D. Ill. May 21, 2014)……………………………………………………………....11

*Young v. City of Chicago*, 2017 WL 25170 (N.D. Ill. Jan. 3, 2017)…………………………..9, 11

| **STATUTE / RULE** | **PAGE** |
|---|---|

Fed. R. Civ. P. 26………………………………………………………………...…..8, 14, 27

Fed. R. Civ. P. 45………………………………………………………………….....9, 11, 26

Local Rule 16.1………………………………………………………………………..…12

## INTRODUCTION

As this Court knows there is substantial damages at stake so in order to properly defend themselves, Defendants seek to obtain, review, and produce a limited number of IDOC phone calls to individuals who have relevant information about Plaintiffs' damages and/or knowledge about the underlying facts giving rise to their lawsuits. In total Defendants have narrowed the amount of phone calls they want to review to 1,161 calls for nine lawsuits, or 129 per Plaintiff. Defendants have identified many of these phone calls occurring between Plaintiffs and fact/damages witnesses that Plaintiffs have disclosed. Plaintiffs' privacy interests are minimum at best, as numerous courts have acknowledged, as they knew these phone calls were recorded and reviewed by IDOC. This discovery is entirely permissible and proportional under the Federal Rules of Civil Procedure and binding case law.

Plaintiffs mislead this Court and suggest that Defendants have been dilatory, but it is in fact the opposite. From Plaintiffs' motion, one would believe that Defendants started to obtain the phone calls at issue for the first time December 2023. But in reality, Defendants issued their first subpoena for phone calls in June 2020 for three of the nine test Plaintiffs at issue. Those Plaintiffs did not object or file a motion to quash that subpoena, and Defendants obtained 502 phone calls in July 2020. The three Plaintiffs never filed (and still have not) a motion for protective order regarding those phone calls. They told Defendants—after the phone calls were received—that they objected to the discovery, so out of courtesy, Defendants have not yet listened to them, but the motion to quash is not timely nor the proper mechanism for the relief they seek.

Knowing Plaintiffs objected to the discovery of the calls themselves, Defendants then issued subpoenas in May 2023 and October 2023 for only the call logs of certain Plaintiffs. Defendants did this in an attempt to reach a compromise, but they were unable to reach any

agreement with Plaintiffs. In December 2023, four subpoenas were issued for the remaining calls in the already discovered call logs, that had not been already produced.

So Defendants requests for calls were not a last-minute surprise. Defendants had been holding off on this discovery because of Plaintiffs objections and Plaintiffs had been continuing to object but not taking court action. If they objected it was on them to act. Plaintiffs have refused any middle ground. Plaintiffs cannot now complain that there are too many phone calls and too little time to review because Plaintiffs have chosen to drag their feet and not provide necessary information to narrow the number of calls at issue. Moreover, as the calls span nine separate lawsuits, this discovery is not overly burdensome or disproportional.

## FACTUAL BACKGROUND

On June 19, 2020, Defendants issued a subpoena to IDOC to request call logs **and all recorded phone calls** for three test-case Plaintiffs Bobby Coleman, Milton Delaney, and William Carter. *See attached* Exhibit A, June 19, 2020 IDOC Subpoena. Plaintiffs did not object or file a motion to quash the June 19, 2020 subpoena. Defendants received 502 phone calls from IDOC and produced them to Plaintiffs on July 13, 2020.[1] Upon receipt of the calls, Plaintiffs <u>then</u> stated they objected to Defendants reviewing all the calls, and Defendants agreed not to review them at that time. But Plaintiff never filed a motion for a protective order.

On May 16, 2023, knowing Plaintiffs objected to discovery of the calls themselves, Defendants issued a subpoena to IDOC to request call logs for two more test-case Plaintiffs Clifford Roberts and Lionel White, Sr.[2] *See attached* Exhibit B, May 16, 2023 IDOC Subpoena.

---

[1] In Defendants' December 8, 2023 correspondence [Dkt. 649-1], Defendants mistakenly refer to the Coleman, Delaney, and Carter phone calls as "Calls that [defense counsel] possess," but all parties possess the calls.

[2] Lionel White, Sr. is deceased and his daughter, Lionetta White, is now technically the Plaintiff, but for ease of reference, Defendants will refer to Lionel White, Sr. as Plaintiff.

Instead of producing only the call logs, IDOC inadvertently produced the recorded phone calls of Roberts and White, Sr. (872 total calls). Plaintiffs again objected to Defendants reviewing any of the calls, and Defendants agreed not to at that time.[3]

In total, from the June 2020 subpoena (502 calls), and the May 2023 subpoena (872 calls), IDOC has produced 1374 recorded phone calls. Through narrowing, Defendants seek to review only 874 of those calls.

On October 23, 2023, Defendants issued a subpoena to IDOC for call logs of more Plaintiffs. *See attached* Exhibit C, October 23, 2023 Subpoena to IDOC. On October 24, 2023, the parties met and conferred and Defendants indicated that after they obtained all of the call logs, they would like to discuss who is on the call logs, and they would like to issues subpoenas to obtain some of the recorded phone calls. Plaintiffs responded only that they would move to quash any subpoenas issued for phone calls. On November 5, 2023, Defendants received the call logs (to the extent they existed). *See attached* Exhibit D, November 5, 2023 IDOC email. Shortly after November 5th, the parties met and conferred again. In an effort to more narrowly tailor their subpoenas for phone calls, Defendants requested that Plaintiffs identify the unknown callers in the call logs, in order to determine if were occurrence witnesses, damages witnesses, or totally unrelated to these proceedings. However, Plaintiffs refused to do so and responded that they would move to quash any subpoenas issued for phone calls.[4]

---

[3] Upon Plaintiffs' request, Defendants immediately turned over to Plaintiffs' the recorded calls, so Defendants no longer have access to them.

[4] Defendants had already identified some of the callers listed on the call logs, since IDOC previously produced several "PAN lists" to Defendants. A PAN list identifies the name of the person called, their phone number, address, and relationship to Plaintiff (i.e. mother, brother, cousin, friend). IDOC claimed they did not have a PAN list for several of the test case Plaintiffs, therefore, making it necessary for Defendants to ask Plaintiffs the identity of some callers.

On December 8, 2023, Defendants sent correspondence to Plaintiffs indicating they intended to issue four subpoenas to IDOC for some, but not all, of the recorded phone calls of Plaintiffs Allen Jackson, Henry Thomas, Phillip Thomas, and Andre McNairy[5] based on the logs received. See ECF No. 649-1. That correspondence also indicated that Defendants had the identity of some, but not all, of the individuals on the logs. *Id*. On December 12, 2023, the parties met and conferred. Defendants again requested that Plaintiffs identify the unknown callers in the call logs. Plaintiffs objected stating they had no obligation to provide the identities of the caller, the subpoenas were untimely, and the subpoenas were seeking irrelevant evidence.

On December 12, 2023, Defendants issued four subpoenas to IDOC. *See attached* Exhibit E, Four IDOC Subpoenas. The first subpoena is for 52 calls made by Plaintiff Allen Jackson, to his mother Rosalyn Morris and an unidentified number that Defendants believe from investigation belongs to someone named Shaunte R. Lance, from May 15, 2009 – July 1, 2009. Exh. E and Exh. D. The second subpoena is for 104 calls made by Plaintiff Henry Thomas, to his girlfriend Linda Owens, from May 31, 2009 – November 1, 2012. *Id.* The third subpoena is for 8 calls made by Plaintiff Phillip Thomas to his ex-wife Vanessa Thomas and a phone number that Defendants have identified as belonging to Lauretta E. Sears, from February 7, 2009 – October 11, 2009. *Id*. The fourth subpoena is for 123 calls made by Plaintiff Andre McNairy, to his sister Tina Patterson and his friend Danielle Barnett, from May 5, 2017 – July 6, 2018. That is a total of 287 phone calls.

On December 12, 2023, the parties met and conferred, not only regarding the four subpoenas at issue, but also on Defendants' ability to review the phone calls that the parties

---

[5] Like White Sr., Allen Jackson and Phillip Thomas are deceased and have family representatives (sister and daughter, respectively) who have replaced them as Plaintiffs. Again, for ease of reference, Defendants will refer to Jackson and Thomas as Plaintiffs.

possess.  In an attempt to reach compromise, Defendants requested that Plaintiffs identify the phone numbers unknown to Defendants in the call logs of Coleman, Delaney, Carter, Roberts, and White Sr. so that Defendants could use that information to further narrow the amount of calls subject to discovery.  Plaintiffs objected, again stating they had no obligation to provide the identities of the unidentified callers, that Defendants efforts to review the calls were untimely, and that Defendants were seeking irrelevant evidence.[6]

From the calls that were identified from the logs obtain through the October 2023 subpoena, Defendants are seeking to obtain and review 287 phone calls.  These calls request the phone calls of family members and friends who have relevant information about Plaintiffs' damages and/or knowledge about the underlying facts giving rise to their lawsuits.

Since the parties are at an impasse, Plaintiffs have filed a motion to quash the four IDOC subpoenas and to deny Defendants request to review phone calls that the parties already possess. Dkt. 649.  Plaintiffs argue that their motion should be granted for three reasons: 1) the subpoenas are untimely, 2) Plaintiffs' privacy interests outweigh the relevance of the calls, and 3) review of calls would impose an undue burden. Dkt. 649, p. 5.  As will be argued below, Plaintiffs are wrong on all three counts, and Plaintiffs' motion must be denied.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) broadly allows for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

---

[6] On January 18, 2024, Defendants asked Plaintiffs one more time to identify the unknown callers. Plaintiffs told Defendants that they "had the opportunity to seek this information during fact discovery." *See attached* Exhibit F, January 18, 2024 email correspondence. Plaintiffs' counsel states that they "believe it is unlikely [their clients] would remember phone numbers" but apparently have not asked. Plaintiff points out that three of the Plaintiffs whose phone calls Defendants seek, Allen Jackson, Phillip Thomas, and Lionel White Sr., are deceased. Relatives of those individuals now stand as the Plaintiffs, and they could know who Jackson, Phillip, and White were talking to in prison, but again, Plaintiffs' counsel has not asked.

needs of the case." Fed. R. Civ. P. 26(b). The information sought "need not be admissible in evidence to be discoverable." *Id.*

Federal Rule of Civil Procedure 45 lays out the requirements for issuing a proper subpoena. Fed. R. Civ. P. 45. The rule specifically notes that the "scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Young v. City of Chicago*, 2017 WL 25170, at *8 (N.D. Ill. Jan. 3, 2017). The Court must balance the privacy interests of the person seeking to quash the subpoena against the relevance and benefit of the information sought. *Pursley v. City of Rockford*¸ 18 C 50040, 2020 WL 7260797, at *2 (N.D. Ill. Dec. 10, 2020) ("*Pursley II*"). In doing so, the Court considers "both the lesser privacy expectation for an incarcerated individual who knows his calls are being recorded, as well as the difficulty in identifying which phone calls were relevant without listening to the recordings." *DeLeon-Reyes v. Guevara*, No. 18-CV-1028, 2020 WL 7059444, at 3 (N.D. Ill. Dec. 2, 2020).

Even when the material sought is not exactly known in substance, it may still be discoverable. As part of the discovery process, some "fishing" is permissible provided it is done within the bounds of Rule 26(b). *See Whiteamire Clinic, P.A., Inc. v. Quill Corp*., No. 12-CV-5490, 2013 WL 5348377, at 6 (N.D. Ill. Sept. 24, 2013) ("It is part and parcel of the discovery process for parties to make discovery requests without knowing what they will get, or indeed, whether they will get anything at all. In that sense, most discovery involves an element of 'fishing.'"); *Craftwood II, Inc. v. Generac Power Sys., Inc.*, No. 17-CV-4105, 2018 WL 497282, at 2 (N.D. Ill. Jan. 22, 2018) (rejecting the assertion that the depositions sought were part of a "fishing expedition that [would] yield nothing of value" as "judges are not clairvoyant . . . and neither are lawyers.") (citations omitted); October 3, 2023 Hr'g Tr., *Alvin Waddy v. City of Chicago,* 19 L 10035, at 11-12 (Cir. Ct. Cook Cty.) (J. Swanagan) (attached as Ex. G) (granting

9

defendants' motion to enforce subpoena to IDOC for plaintiff's phone calls in a state court case against Defendant Watts and others, holding "I do understand that there is some speculative nature to the assertion that this might lead to admissible evidence, but as the cases have said, when you're talking about phone calls, you can't really know, unless somebody listens to them, what they can provide in the way of useful evidence.")

## ARGUMENT

### I.      Plaintiffs omit many details about the timing of this discovery

Plaintiffs assert that Defendants "first sought discovery of test-case Plaintiffs' IDOC calls late October 2023" and did not issue subpoenas until December 12, 2023. (Dkt. 649 at 6). But as the timeline above shows the first subpoena went out in June 2020, more were received from a May 2023 subpoena, and it was Plaintiffs who held up Defendants from listening to those calls. Plaintiffs ignore the fact that the parties have been in possession of 502 phone calls since July 2020 and an additional 872 phone calls since May 2023. Though the May 2023 calls were inadvertently produced, Plaintiffs were immediately alerted and provided the calls to sequester them until the dispute could be resolved. The only reason any of these calls have not been reviewed is due to Plaintiffs' objections.

They cannot claim that they were surprised that Defendants wanted to review calls they already obtained. Nor does Plaintiffs' motion explain that they are really seeking a protective order to stop review of calls received in 2020 and May 2023, as well as quash the December 12, 2023 subpoena. Plaintiffs do not address the timeliness of the earlier subpoenas at all, and therefore Plaintiffs have waived any timeliness objections to those subpoenas.

If anything, it is Plaintiffs who have belatedly filed a motion to quash subpoenas. Certainly, that is true for Defendants' June 2020 subpoena. A third-party subpoena recipient may

object to a subpoena *duces tecum*, but must do so "before the earlier of the time specified for compliance or 14 days after the subpoena is served," or the objection is waived. Fed. R. Civ. P. 45(d)(2)(B); *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (third-party waived substantive objections to subpoena where not raised prior to the time specified for compliance or 14 days after the subpoena was served); *Young v. City of Chicago*, No. 13 C 5651, 2017 WL 25170, at *6 (N.D. Ill. Jan. 3, 2017) (same); *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 WL 2408898, at *1 (E.D. Wis. July 31, 2009) (same).

This Court has held that a party may opt to file a motion to quash before making objections. *Woodard v. Victory Recs., Inc.*, No. 14 CV 1887, 2014 WL 2118799, at *4 (N.D. Ill. May 21, 2014). But the Rule 45(d)(3) requires that such a motion be timely. *See* Fed. R. Civ. P. 45(d)(3)(iii), (iv) ("On *timely* motion, the court for the district where compliance is required must quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." (emphasis added)). Although Rule 45(d)(3) does not define what constitutes a "timely" motion, courts in this district have held that a motion to quash must be made at or before the time of compliance. *See id.* (collecting cases); *see also Cent. States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc.*, No. 1:06-CV-01205, 2009 WL 3255246, at *1 (N.D. Ill. Oct. 6, 2009).

Furthermore, Defendants' December 12, 2023 subpoenas are timely because Defendants had begun the process of attempting to obtain these final set of calls in October 2023 in an effort to narrow the subpoenas to an agreeable degree. Defendants staged the subpoenas in order to reach a compromise, first requesting the logs to identify the numbers called and eliminate some calls if possible before subpoenaing the calls themselves. As Plaintiffs admit in their motion, Defendants engaged in meet-and-confer process, which was ultimately unsuccessful, so

Defendants issued the final subpoenas on December 12, 2023, with return dates of December 18, 2023 - within the fact discovery period. Fed. R. Civ. P. 45(d); *see* Exhibit E.

Although the Court has discretion to quash untimely subpoenas, the present situation is unlike Plaintiffs' cited case of *Mitchell v. City of Chicago*, 862 F.3d 583 (7th Cir. 2017). In *Mitchell*, the subpoenas at issue were issued several months <u>after fact discovery closed</u>, not within the fact discovery period. *Id.* at 586. Defendants' subpoenas are also consistent with Local Rule 16.1 because they were to be complied with, not just requested, by the discovery deadline. L.R. 16.1(4). Also, Defendants were engaging in meet-and-confer communications *before* the subpoenas, and not beginning that process after the subpoenas were issued. Accordingly, Defendants' December 2023 subpoenas to IDOC are timely.

II.     **Plaintiffs Lack A Sufficient Privacy Interest to Quash Subpoenas or Prohibit Defendants from Listening to Calls Obtained**

Defendants agree with Plaintiffs that where a litigant's privacy interests are implicated, standing <u>may be</u> conferred to seek to quash the subpoena. *Malibu Media, LLC v. John Does 1-14*, No. 12-cv-263, 2012 WL 6019259 at 2 (N.D. Ind. Dec. 3, 2012). The burden of showing a privacy interest rests with the movant. *Id*. at 3. The Court must balance the privacy interests of the person seeking to quash the subpoena against the relevance and benefit of the information sought. *Rodriguez v. City of Chicago*, No. 18-cv-7951, 2021 WL 2206164 at *1 (N.D. Ill. June 1, 2021) (Cox, J.).

Here, Defendants believe that Plaintiffs have no standing because they are third parties (the subpoenas were to IDOC), and they had no expectation of privacy in the phone calls because they knew those phone calls were recorded. A party lacks standing to challenge a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege regarding the information sought. *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181,

12

186 (N.D. Ill. 2013); *Kessel v. Cook County*, No. 00 C 3980, 2002 WL 398506 at *2, (N.D. Ill. Mar. 13, 2002).

However, Defendants recognize that many courts in this District have found minimal privacy interests to confer standing. But the Courts have also found any privacy interest in IDOC calls extremely limited. *See Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 3231726 (N.D. Ill. July 29, 2021) (holding plaintiff's "claimed privacy interest is . . . greatly minimized"); *Rodriguez v. City of Chicago*, No. 18-cv-7951, 2021 WL 2206164 (holding for a subpoena of prison calls, "the privacy burden is relatively light"); Minute Order, *Chalmers v. City of Chicago*, 21-cv-01531, ECF No. 82 (N.D. Ill. Sept. 16, 2021) (Shah, J.) (attached as Ex. H) (denying the motion to quash, holding "Plaintiff has little to no privacy interest in his jail calls . . . ."); Minute Order, *Harris v. City of Chicago*, 20-cv-04521, ECF No. 58 (N.D. Ill. Aug. 5, 2021) (Shah, J.) (attached as Ex. I) (denying the motion to quash, holding "Plaintiff had no expectation of privacy in the recorded [prison] calls . . . ."); April 13, 2021 Hr'g Tr., *Marcel Brown v. City of Chicago*, 19 C 4082, at 10 (N.D. Ill.) (J. Ellis) (attached as Ex. J) (denying the motion to quash, holding "I do find that Mr. Brown and Mr. Branch do have an expectation of privacy in those calls, but that expectation of privacy is limited. These are calls that both men knew were being recorded and knew that prison officials would be listening to them, could be listening to them, and certainly that they were recorded and being kept."); *Coleman v. City of Peoria*, No. 15-cv-1100, 2016 WL 3974005 at *4 (C.D. Ill. July 22, 2016) (denying the motion to quash, holding "The impact on their privacy interests is less than a private citizen making phone calls at home because Coleman and Holland knew that the calls were recorded and could be heard by some other individuals."); *Tittle v. Carver*, No. 06-cv-938, 2008 WL 4425882 at 8 (E.D. Wis. Sept. 24, 2008) ("[W]here a

13

prison provides notice that calls may be monitored, there is no reasonable expectation of privacy in such communications.").

Here, Plaintiffs have not met their burden of showing a sufficient privacy interest in their IDOC calls to quash the most recent subpoenas or prevent Defendants from listening to the calls that have already been produced by IDOC. The calls Defendants seek are relevant and discoverable. The relevance standard is extremely broad. *Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 3231726 at *2 (N.D. Ill. July 29, 2021) (J. Cole) *citing Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). Federal Rule of Civil Procedure 26 allows for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

Defendants have not sought all calls for an unlimited time period. Defendants started requesting call logs specifically so they could narrow the subpoenas to those calls most likely to contain relevant information. Defendants' subpoenas target calls to individuals who have relevant information about Plaintiffs' damages and/or have knowledge about the underlying facts giving rise to their lawsuits.

The individuals that Defendants have identified below, most certainly have relevant information about the damages Plaintiffs have suffered. As stated above, Plaintiffs have refused to tell Defendants anything about the numbers that could not be identified, even though the burden is on Plaintiffs in a motion to quash. The nine Plaintiffs claim very similar, significant emotional damages as those expressed by Plaintiff Henry Thomas:

> Plaintiff states that defendants framed him in two separate cases where he was convicted and has since been exonerated. In each instance, Plaintiff was deprived of the opportunity to interact with his loved ones; to be present for holidays, births, deaths and other life events; to pursue his passions and interests; to engage in meaningful labor and develop a career; to obtain an education; and to live freely, as an autonomous being. Instead, during this time period, Plaintiff endured intermittent imprisonment in harsh, dangerous, and

14

isolating conditions. He was intimidated and threatened in prison. The deprivation of Plaintiff's liberty was made more traumatic by Plaintiff's knowledge that he was innocent. Plaintiff has had, and continues to have, difficulty trusting people. He is anxious and feels worried when he is in large groups of people. Today, Plaintiff prefers to be alone, which is a significant departure from his social, jovial personality before his wrongful imprisonment. Plaintiff also continues to experience depression, trouble sleeping, and anxiety. In addition, he now has difficulty building and maintaining relationships with people. Plaintiff further states that the stress and trauma of his wrongful imprisonment has had, and will continue to have, emotional and physical manifestations well into the future.

*See attached* Exhibit K, Henry Thomas' Answers to Interrogatories.; Exh. L, Allen Jackson's Answers to Interrogatories, No. 1; Exh. M, Phillip Thomas' Answers to Interrogatories, No. 25; Exh. N, Andre McNairy's Answers to Interrogatories, No. 8; Exh O, Clifford Roberts' Answers to Interrogatories, No. 1; Exh. P, Bobby Coleman's Answers to Interrogatories; Exh Q, Milton Delaney's Answers to Interrogatories, No. 11; Exh. R, William Carter's Answers to Interrogatories, No. 1.

As Plaintiffs have put the effects of their incarceration at issue in this lawsuit, Defendants should be allowed to hear what Plaintiffs had to say regarding their life in prison, while Plaintiffs were living in prison. Indeed, many the IDOC phone calls contain contemporaneous discussions between Plaintiffs and disclosed damages witnesses and are therefore the best evidence of Plaintiffs' claimed effects of incarceration. Moreover, as will be shown below, many of these same individuals have information about the underlying facts giving rise to these lawsuits.

Allowing Defendants to obtain the calls that they seek is also proportional to the needs of these nine cases. Plaintiffs have stressed throughout this litigation the extreme importance of the issues at stake, specifically, that each Plaintiff has suffered significant damages from being falsely arrested, wrongfully convicted, and imprisoned. However, the issues that underlie what is claimed to have occurred are significant to all Defendants as well, and Defendants have a very different version of what occurred. The calls Defendants seek to review are needed to ascertain whether in fact Defendants were falsely arrested and convicted, and if so, the extent to which they suffered damages.

Defendants have reviewed the record[7] and are only requesting the following phone calls from the following relevant individuals:

**Allen Jackson,** 18 C 1512, Dec. 12, 2023 subpoena issued for 52 calls out of 56 calls from May 15, 2009 – July 1, 2009. As an initial matter, Plaintiffs claim that "Defendants' lack of thoughtfulness in the IDOC subpoenas is further demonstrated by the fact that they subpoenaed Allen Jackson's calls even though the IDOC informed Defendants in May 2023 that they do not have call recordings for Mr. Jackson." Dkt. 649, p. 8. However, Plaintiffs are mistaken. IDOC did produce a call log for Allen Jackson. *See attached* Exhibit S, Allen Jackson Email and Call Log. Nineteen of those calls were to (XXX) XXX-0198 which is the phone number of Rosalyn Morris, who is disclosed as a witness by Jackson. *See attached* Exhibit T, Loevy Test Case Plaintiffs' Supplemental Disclosures, p. 5. Rosalyn Morris is the mother of Plaintiff's children. *See attached* Exhibit U, Allen Jackson IDOC record. Rosalyn Morris is listed on Jackson's 26(a) Disclosure as a witness who "may have knowledge concerning damages, as well as information concerning Defendant Watts and his team's misconduct." *Id.* In addition to having 19 calls with Plaintiff, Rosalyn also visited Plaintiff five times while incarcerated in IDOC. *See attached* Exhibit V, Allen Jackson IDOC visitor log. Given that Jackson has named Ms. Morris as a fact and damages witness, it is reasonable to believe they spoke about what happened and its effects on Jackson.

According a skip trace, the other thirty-three calls Plaintiff place with phone number (xxx) xxx-6236, were to a Shaunte R. Lance. Plaintiff's counsel has not disclosed what relationship Shaunte Lance has with Allen Jackson or confirmed that the number belonged to Lance, but given

---

[7] Since Plaintiffs have repeatedly refused to assist Defendants in identifying the unknown callers, Defendants have recently run a skip trace on said phone numbers and discovered evidence that several phone numbers belong to witnesses who were disclosed in Plaintiffs' numerous 26(a) Disclosures, answers to interrogatories, and deposition testimony, but have not been able to identify all the callers.

the number of phone calls over less than two months, it is likely that the person associated with this number had a close relationship with Jackson.

**Henry Thomas**, 18 C 5131, Dec. 12, 2023 subpoena issued for 104 out of 130 calls from May 31, 2009 – November 1, 2012. Phone number (XXX) XXX-7484 (104 calls) belongs to Linda Owens. Exhibit T, p. 7. Plaintiff disclosed Linda Owens as his "former girlfriend, who may have knowledge of his damages and the circumstances surrounding Plaintiff's false arrests and the subsequent convictions." *Id*. In 2021, Plaintiff testified that Linda Owens was his live-in girlfriend for at least the past ten years. *See attached* Exhibit W, Deposition of Henry Thomas, p. 34:22 - 36:4. According to Plaintiff, he has spoken to Ms. Owens about "the facts giving rise to his Complaint," more specifically, he has explained to her that he was "framed." Exhibit K, Henry Thomas' Answer to Interrogatory, No. 23. Plaintiff's admitted discussions of his claims with Ms. Owens, and his disclosure as a fact and damages witness is more than sufficient to show relevancy.

**Phillip Thomas**, 18 C 5132, Dec. 12, 2023 subpoena issued for 8 calls from February 7, 2009 – October 11, 2009 from two phone numbers. Phone number (XXX) XXX-4567 (5 calls) belongs to Vanessa Thomas. Exh. T, p. 8. Thomas disclosed Vanessa Thomas as his "ex-wife who may have knowledge of Plaintiff's damages, as well as circumstances surrounding his arrest." *See attached* Exhibit X, Coordinated Plaintiffs' February 4, 2019 Rule 26(a)(1) Disclosures. Vanessa Thomas testified on Plaintiff's behalf at his criminal trial that was based on his 2007 arrest; the arrest that is at issue in this lawsuit. *See attached* Exhibit Y, Deposition of Phillip Thomas. More specifically, Vanessa Thomas testified that Plaintiff sold pastries, candy, cookies, pop, and potato chips for a living, and that he was not a drug dealer. *See attached* Exhibit Z, Trial Testimony in *People v. Phillip Thomas*, 07 CR 11675. Given that Thomas has disclosed her as both a fact and damages witness it is reasonable to believe the calls to her will lead to relevant evidence.

The three remaining calls are to phone number (XXX) XXX-1442 (3 calls), which belongs to a Lauretta E. Sears, according to a skip trace. It is presently unknown what relationship Ms. Sears has with Phillip Thomas but Thomas's daughter, who is now the Plaintiff in his case may know. Given that there are only three phone calls here, the burden and privacy intrusion is minimal.

**Andre McNairy**, 18 C 5127, Dec. 12, 2023 subpoena issued for 123 calls from May 5, 2017 – July 6, 2018. Phone number (XXX) XXX-6676 (45 calls) belongs to Tina Patterson. *See attached* Exhibit AA, Andre McNairy's Answers to Defendant Alvin Jones' Interrogatories. Tina is McNairy's sister and he was living with Tina at the time of his arrest in September 2008. *See attached* Exhibit BB, Deposition of Andre McNairy, p. 42. Tina Patterson has "knowledge of the facts that relate to, at a minimum, Plaintiff's individual claims." Exh. AA. Given the close relationship and McNairy's admission that she knows of facts related to his claims and he was living with her at the time of his arrest, it is highly likely these calls contain relevant evidence.

The remaining 78 calls are to phone number (XXX) XXX-7159, which belongs to Danielle Barnett. *See attached* Exhibit CC, Andre McNairy PAN List. Danielle Barnett is Plaintiff's friend, and Plaintiff listed Ms. Barnett on his IDOC visitor's list. *See* Exhibit BB, Deposition of Andre McNairy, p. 87-88. Given that Plaintiff called her nearly twice as much as his sister, it is likely they had a close relationship and that he would have discussed the impact the incarceration was having on his life, and his belief that he was framed.

**Clifford Roberts**, 22 C 674, May 16, 2023 subpoena, Plaintiffs' counsel possesses 498 calls, out of 836 calls, that Defendants seek to review from March 8, 2013 – May 25, 2023. Phone (XXX) XXX-9657 (170 calls) belongs to Avis Roberts. *See attached* Exhibit DD, Clifford Roberts PAN List. Avis or Ades Roberts is disclosed as "Plaintiff's mother, who he was living with in Ida B. Wells in January 2003, and may have knowledge of Plaintiff's damages, as well as certain

Defendants' misconduct." Exh. T, p. 7. Avis also drafted an Affidavit on behalf of her son, Joseph Roberts, alleging misconduct by Sgt. Watts and other Defendant Officers. *See attached* Exhibit EE, Affidavit of Avis Roberts. As Clifford admits that Avis Roberts is a relevant witness to his case for both facts and damages, Defendants are entitled to review their calls.

Phone (XXX) XXX-6940 (114 calls) belongs to Darnell Poston. Exh. DD. Darnell Poston is disclosed as "Plaintiff's brother and may have knowledge concerning Plaintiff's damages." Exh. T, p. 7. Again, Clifford Roberts himself lists Mr. Poston as one of his witnesses, having relevant information, so Defendants have more than met their burden to review these calls.

Phone number (XXX) XXX-5899 (75 calls) belongs to Clifford's brother, Joseph Roberts. Exh. DD, Clifford Roberts PAN List. Joseph also drafted an Affidavit alleging that Sgt. Watts and Defendant Officers falsely arrested him in 2001, and again in 2007. *See attached* Exhibit FF, Affidavit of Joseph Roberts. As Clifford's brother who wrote an affidavit about Defendants, it is likely that he and Clifford would have discussed the Defendants who both alleged committed misconduct. These calls too are relevant.

Phone number (XXX) XXX-0603 (139 calls) belongs to Ava D. Poston, according to a skip trace. Ava Poston is disclosed as "Plaintiff's sister who may be able to testify to Plaintiff's damages." Exh. T, p. 7. Again, as Roberts' own disclosed witness, Defendants are likely to find relevant evidence between them in their calls.

**Lionel White, Sr.**, 17 C 2877, May 16, 2023 subpoena, Plaintiffs' counsel possesses 36 calls that Defendants seek to review from January 18, 2009 – September 17, 2012.[8] A skip trace of the following numbers revealed the following results. Phone number (XXX) XXX-9234 (9 calls) belongs to Kimberly D. Collins. Kimberly Collins is disclosed as an individual who has

---

[8] Lionel White placed 36 calls not 31 calls as stated in Plaintiffs' Exhibit A [Dkt. 649-1].

knowledge of the facts underlying Plaintiff's claims. *See attached* Exhibit GG, Lionel White's Rule 26(a)(1) Disclosures. Kimberly Collins was Lionel's girlfriend, who lived with him in the 575 building of the Ida B. Wells for serval years, and she filled out an affidavit on his behalf on August 3, 2016. *See attached* Exhibit HH, Kimberly Collins Affidavit. Kimberly claims that there were many instances in which Sgt. Watts and his team unlawfully searched her apartment, and that she knew they were "dirty and corrupt police." *Id*. She also spoke to Lionel after he was arrested, and he told her that several Defendant Officers entered their apartment, Defendant Officer Alvin Jones beat him up, and the officers tore up the apartment without cause. *Id*.

The remaining numbers have been identified through skip traces. It is presently unclear what relationship said individuals have with White Sr., but his daughter who is now Plaintiff may know.

(XXX) XXX-7595 (1 call) belongs to Jose A. Lira;

(XXX) XXX-5284 (1 call) belongs to Angelica A. Diaz;

(XXX) XXX-3217 (4 calls) belongs to David H. Dunne, Sr.;

(XXX) XXX-6036 (2 calls) belongs to Patricia A. Kirlew;

(XXX) XXX-9147 (1 call) belongs to Julieta Hernandez Sanchez;

(XXX) XXX-5451 (1 call) belongs to Nagham A. Albana;

(XXX) XXX-5621 (1 call) belongs to Alec Hessian Dorsey;

(XXX) XXX-9555 (1 call) belongs to Robert J. Young;

(XXX) XXX-0696 (1 call) belongs to Porche A. White;

(XXX) XXX-1032 (2 calls) belongs to Jasmine C. Lenoir;

(XXX) XXX-2455 (1 call) belongs to William Horace Prewitt, III;

(XXX) XXX-0789 (1 call) belongs to Tyresa White;

Defendants have been unable to identify the remaining numbers:

(XXX) XXX-0955 (1 call) is currently unknown, no results returned;

(XXX) XXX-9255 (1 call) is currently unknown, no results returned;

(XXX) XXX-3214 (1 call) is currently unknown, no results returned;

(XXX) XXX-3417 (2 calls) is currently unknown, no results returned.

(XXX) XXX-9055 (1 call) is currently unknown, no results returned

(XXX) XXX-0955 (4 calls) is currently unknown, no results returned

Defendants are requesting all 36 calls made by Plaintiff since the amount is relatively small, and Plaintiff is deceased, and thus unable to answer an interrogatory or give a deposition on this topic. Defendants have issued interrogatories for Plaintiffs to identify anyone that they have discussed their case with. Plaintiff's counsel representing White Sr.'s daughter may be able to identify them.

**Bobby Coleman**, 19 C 1094, June 19, 2020 subpoena, Defendants seek to review 10 calls that all parties possess from July 19, 2011 – September 30, 2011. Phone number (XXX) XXX-9189 (5 calls) belongs to Erika Hill. Exh. T, p. 3. Ericka Hill has knowledge of Plaintiff's damages. *See attached* Exhibit II, Plaintiff Bobby Coleman's Rule 26(a)(1) Disclosures, p. 4. Thus, by Coleman's own admission Ms. Hill is relevant to these proceedings. Given the small amount of calls, too, the intrusion and burden is minimal.

Phone number (XXX) XXX-8880 (4 calls) belongs to Dorothy J. Coleman, according to a skip trace. The skip trace identifies Dorohty as a relative of Plaintiff. Bobby Coleman could offer more information about his relationship to Dorothy if he has an argument that these calls are not relevant, but given the small number of calls, and the likelihood that a call with a relative would shed light on his damages, Defendants are entitled to review these calls.

Phone number (XXX) XXX2189 (1 call) belongs to Leonard Gipson, who brought his own suit against Watts and other officers, 18-cv-5120, and is part of this consolidated litigation. According to Plaintiff, he and Leonard Gipson were friends and both of them sold drugs together out of the 527 building of Ida B. Wells Housing Complex many times. *See attached* Exhibit JJ, Deposition of Bobby Coleman, p. 82:17-83:23. Yet Leonard Gipson denies drug dealing and claims he was falsely arrested for drug sales/possession multiple times by Defendant Officers. *See attached* Exhibit KK, Affidavit of Leonard Gipson. Given that they are both plaintiffs in these Watts cases, it is reasonable to believe that they discussed issues relevant to the facts of their cases. Also, given that it is one phone call, any privacy intrusion is the least it could be.

**Milton Delaney**, 19 C 1094, June 19, 2020 subpoena, Defendants seek to review 204 calls, out of 330 calls, that all parties possess from December 16, 2008 – March 15, 2011. Phone number (XXX) XXX-8759 (161 calls) belongs to LaQuita Bonds, according to a skip trace. LaQuita Bonds was Plaintiff's girlfriend. *See attached* Exhibit LL, Deposition of Milton Delaney, p. 126:2-10. LaQuita attended Plaintiff's criminal court proceedings, and may have hired an attorney to defend him. *Id*. at 107:12-108:22. LaQuita visited Plaintiff and had phone conversations with him while he was in IDOC custody. *Id.* at 126:1-127:10. Delaney has admitted that LaQuita was aware of his criminal proceedings and has his girlfriend he likely discussed the effects of his incarceration with her. Accordingly, Defendants have shown these calls are relevant.

Phone number (XXX) XXX-7639 (43 times) belongs to Arturo Haro, Sr. according to a skip trace. Delaney testified at his deposition that he doesn't remember that phone number, but given the number of times Delaney called him, it is likely they knew each other well. *Id*. at 127:23-128:4. Delaney should not be able to avoid these calls being reviewed by declining to provide Haro's relationship to him.

**William Carter**, 17 C 7241, June 19, 2020 subpoena, Defendants seek to review 126 calls, out of 162 calls, that all parties possess from December 23, 2008 – December 7, 2012. Phone number (XXX) XXX-9932 (81 calls) belongs to Angela Carter, according to a skip trace. Angela Carter is Plaintiff's sister. *See attached* Exhibit MM, Deposition of William Carter, p. 23:15-22. William Carter is likely to discussed the fact that he thought he was framed with his sister and likely shows the emotional effects of his incarceration. Calls to her are very likely to lead to relevant information.

Phone number (XXX) XXX-9047 (45 calls) belongs to Janine Maxwell, according to a skip trace. Janine Maxwell is Plaintiff's mother. *Id*. at p. 22:20-21. Carter testified that Sgt. Watts, and other Defendant Officers, came to the Ida B. Wells complex, asked his mother about drug dealing, became very angry with her, threw her against an elevator, injured her back, and caused her to have a $30,000 surgery on her back. *Id*. at 154-156. Given that testimony, if Carter believed he was wrongfully convicted by Watts, leading to his incarceration, it is very likely that he would have discussed that with Ms. Maxwell. These calls too, are relevant.

Defendants here have tailored the subpoenas and their review as much as they can without Plaintiffs assistance. Of the 1374 recorded phone calls obtained from the June 2020 and May 2023 subpoenas, Defendants have eliminated 500 and seek to review only 874 of those calls. Thus like Defendants in *Pursley II*, *Velez*, *Rodriguez*, *Chalmers, Marcel Brown*, *Coleman*, and others, the motion to quash should be denied.

Many of the above listed individuals have knowledge of Plaintiffs' damages. Many claim to have knowledge about the underlying facts giving rise to Plaintiffs' lawsuits. Some individuals claim knowledge of Defendants' alleged "prior bad acts," relevant for purposes of Federal Rule of Evidence 404(b) and Plaintiffs' *Monell* claims.

Contrary to what Plaintiffs argue [Dkt. 649, p. 8.], Defendants' requested calls are not an improper "fishing expedition" as in *Simon v. Nw. Univ.*, 1:15-CV-1433, 2017 WL 66818, at *2 (N.D. Ill. Jan. 6, 2017), nor tantamount to "dart throwing" as in *Pursley v. City of Rockford*, No. 18 CV 50040, 2020 WL 1433827 at *2 (N.D. Ill. Mar. 24 2020) ("*Pursley I*"). Defendants subpoenas have been narrowed, are for a short time period, and are not indiscriminately seeking all calls placed by Plaintiffs while in IDOC custody. In *Pursley I*, Defendants subpoenaed over 3,000 calls for one plaintiff, 2020 WL 1433827 at *4, and in *Simon*, the subpoena sought all calls over a 15-year period, 2017 WL 66818, at *4.

Defendants limited requests have been permitted by many courts, as cited above, and even the court in *Pursley I* eventually allowed the discovery of the phone calls once the subpoena was further narrowed to 200 calls in *Pursley II*. *Pursley II*, 2020 WL 7260797, at *3. *DeLeon-Reyes v. Guevara*, 2020 WL 7059444 (N.D. Ill. Dec. 2, 2020) is also distinguishable because the phone calls sought were not those made by a plaintiff or even a witness in the case. *Id.* at *2.

Defendants are not required to know the full content of what they are seeking before they receive the materials. *Whiteamire* at *6; *Waddy*, Exh. G. "Discovery is not a guarantee of success; it is not a matter of mathematics and equations in which certainty and exactness play central roles. It is, by its very nature, an enterprise with uncertain results and no assurance of ultimate success." *Velez*, 2021 WL 3231726, at *2 "[T]he fact that the recordings may include some incidental and irrelevant information does not support quashing the subpoena." *Pursley II*, at *3. By Plaintiffs' own disclosures and admissions, many of the individuals they called possess information about damages or the underlying facts of their lawsuits.

In cases where Defendants do not know the exact relationship of the caller to the Plaintiff, Defendants have attempted to request the most frequently called numbers by Plaintiffs.

Defendants contend that the higher the number of calls a Plaintiff placed to specific individuals, the more likely it is that the calls include relevant information to their lawsuit. For example, Plaintiff Henry Thomas disclosed his girlfriend, Linda Owens, on his 26(a)'s as someone with knowledge of his damages and the facts giving rise to his Complaint. It should come as no surprise then that Mr. Thomas called Ms. Owens 104 times.

Finally, to the extent this Court is concerned with Defendants obtaining calls from unknown persons regarding unknown subjects, Defendants will agree that all discovered calls are initially to be treated as confidential under the operative protective order. Those that are irrelevant may remain confidential.

Other cases bear out this logic and show how crucial the discovery of prisoner phone calls can be. For example, in *Harris v. City of Chicago*, No. 20-CV-4521, the plaintiff claimed he was falsely arrested for gun possession. *See Harris*, 2020 WL 7059445 (N.D. Ill. Sept. 2, 2020). The City subpoenaed the plaintiff's prison calls and learned he admitted to possessing the gun. *See* Defs.' Sum. J. Mot. in *Harris v. Chicago*, Case 20-CV-4521, 2021 WL 10864282, § 1. After the calls were discovered, the plaintiff's counsel withdrew, *see id.* at n.1, and summary judgment was granted in the City's favor, *see Harris*, 2020 WL 7059945.

In *Teague v. Salgado*, No. 19-CV-04113, the plaintiff claimed he was, *inter alia*, falsely arrested and framed for drug dealing. (*See* Exh. NN (excerpts of Def.'s Mot. to Compel in Case 19-CV-04113), p. 2.) The City obtained the plaintiff's calls, in which the plaintiff made damning admissions about his dealing drugs. (*See id.*) After these calls were discovered, the plaintiff dismissed his case with prejudice. (*See* Exh. OO)

In *Bishop v. White,* No. 16 C 6040, the Court originally quashed the phone call subpoena, but a narrower subpoena was issued that uncovered the plaintiff was tampering with witnesses and

had perjured himself. *See Bishop v. White*, 2023 WL 35157, *6-13 (N.D. Ill. Jan. 4, 2023). The calls obtained by the subpoena led to the dismissal of the lawsuit as a sanction. Id. at *13.

For all these reasons, the IDOC phone calls that Defendants seek are relevant, discoverable, and proportional to the needs of these cases.

### III.    There is No Undue Burden on Plaintiff or the Court.

Pursuant to Fed. R. Civ. P. 45(d)(3) a subpoena can be quashed if it subjects a party to undue burden.  The law is clear that a burden objection is not for a party to make, but rather the entity to whom the subpoena is directed. *See Allstate Ins. Co. v. Electrolus Home Prod., Inc.,* 2017 WL 5478293, at 3 (N.D. Ill. 2017); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013).  Therefore, IDOC may claim an undue burden, but Plaintiffs may not.

Plaintiffs' argument that it will be extremely time consuming and expensive to meticulously review the calls, also fails.  It is questionable whether Plaintiffs' counsel even needs to review the calls, because their clients should remember who they called and what they discussed.  To the extent their attorneys have trouble "deciphering" the calls, they can easily call their clients, or their numerous witnesses that they have disclosed, to decipher what was said. The parties have exchanged over 120,000 pages of documents related to *Monell* alone. *See Velez*, 2021 WL 3231726, at * 3 (comparing the *Monell* burden to that of reviewing phone calls).  If these proceedings merit such large-scale discovery, surely it is worth discovery related to only 1,161 IDOC phone calls from nine test-case Plaintiffs, averaging 129 calls per plaintiff. *See Velez* at *3 (holding the same).

Plaintiffs cited only one case in support of their undue burden argument, *Jump v. Montgomery Cty.*, No. 13-3084, 2015 WL 6558851 (C.D. Ill. Oct. 29, 2015).  However, *Jump* is unpersuasive.  In *Jump*, defendants subpoenaed the plaintiff's mother's private phone calls from

26

AT&T. *Id*. at 1. The Court found that "the subpoena at large sought large amounts of irrelevant information, and, therefore, placed an undue burden" on the mother. *Id*.

Unlike in *Jump*, Defendants' subpoena and requested calls in this case are narrowly tailored to obtain relevant information about Plaintiffs' damages and the facts underlying their lawsuits. Furthermore, the calls in *Jump* were entitled to a higher degree of protection because they were sought from a private citizen who was a third-party to the lawsuit, not from incarcerated individuals who enjoy a lesser degree of privacy for their phone calls, and who are now Plaintiffs seeking substantial damages in this pending litigation.

Lastly, Plaintiffs argue that Defendants should not be allowed to obtain IDOC calls because Defendants will "insist that further discovery (and extensions of time) are necessary" to identify more witnesses or other evidence. Dkt. 649, p. 10. This is pure speculation and must be ignored. The Federal Rules of Civil Procedure, and relevant case law, do not allow or disallow discovery based on whether the discovery sought will lead to more discovery. Any party may conduct discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). If any party, including Plaintiffs, believe there is good cause for an extension of the discovery deadline, that party may file the appropriate motion. Plaintiffs' claims of undue burden are unpersuasive.

**WHEREFORE,** Defendant Officers pray this Honorable Court deny Plaintiffs' Motion to Quash Subpoenas to Illinois Department of Corrections for Plaintiffs' Phone Calls [Dkt. 649], and order that Defendants are allowed to obtain, review, and produce to all parties the 1,161 IDOC phone calls referenced herein.

Respectfully Submitted,

By: /s/ *Jason Marx*
Special Assistant Corporation Counsel
One of the Attorneys for all Defendant Officers except
Cadman, Spaargaren, Ridgell, Mohammed, and Watts

Andrew M. Hale
Amy A. Hijawi
Anthony E. Zecchin
Kelly M. Olivier
William E. Bazarek
Jason M. Marx
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 334
Chicago, Il 60604
(312) 341-9646

## <u>CERTIFICATE OF SERVICE</u>

I, Jason Marx, an attorney, hereby certify that January 23, 2024, I caused to be filed with the Clerk of the Court's CM/ECF system <u>DEFENDANT OFFICERS' RESPONSE TO PLAINTIFFS' MOTION TO QUASH SUBPOENAS TO ILLINOIS DEPARTMENT OF CORRECTIONS FOR PLAINTIFFS' PHONE CALLS</u> which simultaneously served copies on all counsel of record via electronic notification.

/s/ *Jason Marx*