**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | Master Docket Case No. 19-cv-01717 |
| In re: WATTS COORDINATED | ) | |
| PRETRIAL PROCEEDINGS | ) | Judge Franklin U. Valderrama |
| | ) | |
| | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO QUASH DEFENDANT
OFFICERS' SUBPOENAS TO IDOC FOR TEST CASE PLAINTIFFS' PHONE CALLS**

Since 2020, Plaintiffs have objected to Defendants' pursuit of their IDOC phone calls.

Defendants acknowledged this in their response and further acknowledged that as a result of

Plaintiffs' objection, they have not listened to the calls that they obtained in the summer of 2020.

During the following three years, Defendants did not attempt to address this discovery dispute or

seek court intervention. When Plaintiffs were actively pursuing potentially disputed discovery

issues, such as the significant CR production from the City, the Rule 30(b)(6) deposition, and the

FBI/DEA recordings, they routinely informed the Court about the status of those issues in status

reports. By contrast, Defendants essentially did nothing after they received certain phone calls in

the summer of 2020 and then agreed not to listen to those calls as a result of Plaintiffs'

objections. Based on Defendants' subsequent inaction, Plaintiffs presumed that Defendants had

abandoned their pursuit of the IDOC calls.

For the first time, Defendants are now taking the position that Plaintiffs needed to move

for a protective order concerning the calls that Defendants received in 2020. Notably, in a

December 8, 2023 letter, defense counsel asked for "permission to listen to certain calls that

[they] currently possess." Ex. 1, Defs.' Dec. 8, 2023 Letter. After demanding an immediate meet

and confer that was unsuccessful, Defendants then proposed cross-briefing, where Plaintiffs

1

would move to quash Defendants' proposed new subpoenas to IDOC for calls and Defendants would move to compel the ability to listen to the calls that were produced in the summer of 2020. Ex. 2, Defense Dec. 12, 2023 Email to Pls.' Counsel. The parties subsequently agreed on the current procedure where Plaintiffs would address all of the recordings in one motion but did so for the sake of efficiency to avoid duplicative briefing on the same issues, not because Plaintiffs were obligated to initiate motion practice. Defendants' new position—that *Plaintiffs* were responsible for bringing this issue to the Court—is not tenable given the above-described record. And it certainly does not explain why Defendants waited to issue some of the disputed subpoenas until less than a week before fact discovery closed.

But even if Defendants had brought this issue to the Court in a timely fashion (or assuming that Plaintiffs were responsible for moving to quash the June 2020 subpoenas despite Defendants' agreement to not listen to the calls), the Court should still bar Defendants from listening to the calls they already have and quash the December 2023 subpoenas as well. Defendants have not provided any basis to think that the calls contain relevant information, and it will unduly burden the parties and their counsel to listen to and analyze such a high volume of calls at this stage in the case. Thus, the Court should grant Plaintiffs' motion.[1]

## **ARGUMENT**

### I.    **Plaintiffs Have Standing to Litigate Defendants' Requests for Their Recorded Calls.**

In Plaintiffs' motion, they established that they have standing to litigate Defendants' requests for their recorded prison calls. *See* Pls.' Mot. Quash Defs.' IDOC Subpoenas, Dkt. 649 at 4-5, Jan. 5, 2024, No. 19-cv-1717. Defendants recognize that the overwhelming majority of courts in this District that have considered the issue have found that parties retain some privacy

---

[1] As noted in Plaintiffs' motion, the calls relating to Plaintiffs Lionel White Sr. and Clifford Roberts were inadvertently produced by IDOC in response to a subpoena for call logs rather than a subpoena for calls.

interest in their recorded prison calls. *See* Defs.' Resp. to Pls.' Mot. Quash, Dkt. 668 at 13, Jan. 24, 2024, No. 19-cv-1717. That is enough to convey standing on Plaintiffs to challenge the requests for their calls. *See* Dkt. 649 at 4-5 (collecting cases addressing motions to quash subpoenas for recorded calls). Moreover, Defendants do not address or challenge the other grounds Plaintiffs can rely on for standing, which is that parties have the right to enforce court deadlines. *See* Dkt. 668. In essence, Defendants conceded standing, as they must given the applicable case law.

## II. Defendants Failed to Bring this Dispute to the Court as the Federal Rules of Civil Procedure Require.

Throughout their response, Defendants try to blame Plaintiffs for their tardy attempts to obtain IDOC calls and resolve any disputes as to those calls. As explained more thoroughly below, Defendants were responsible for seeking resolution of the dispute as the party pursuing the discovery. Because they failed to raise this issue in a timely manner during fact discovery, the Court should grant Plaintiffs' motion.

### a. *June 2020 Subpoenas*

In their response, Defendants improperly shifted the burden onto Plaintiffs, arguing that Plaintiffs did not promptly seek court intervention after objecting to Defendants' subpoenas in June 2020. Defendants contend that it was Plaintiffs' responsibility to raise these disputes with the Court. But this position contravenes the parties' previous practice in handling similar controversies.

As Defendants' response demonstrates, Defendants were well-aware of Plaintiffs' objections to the IDOC subpoenas and had agreed to not listen to the calls. When Defendants conferred with Plaintiffs, they communicated that they knew they would need a court order to listen to the calls that had been produced to date. Consistent with that understanding, Defendants

3

have not listened to the calls. Nor did they ever tell Plaintiffs that they intended to listen to the calls if Plaintiffs did not seek court intervention. Rather, as discussed above, shortly before discovery ended, Defendants conveyed that they planned to seek the Court's involvement to ask for permission to listen to the calls. Because Defendants also insisted on serving new subpoenas that would not be complied with until fact discovery had closed, Plaintiffs proposed that they would file one motion to address all of the calls, and Defendants agreed. Ex. 3, Email Exchange Between Defendants' & Plaintiffs' Counsel. But this agreement was entered solely to avoid burdening the Court with duplicative briefing, not because either side believed that it was Plaintiffs' obligation to seek court intervention with respect to the June 2020 calls.

Having earlier confirmed that they would not listen to the calls given Plaintiffs' objection, they can hardly complain now that Plaintiffs did not file a motion with the Court. *See, e.g.*, *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Services N.A., L.L.C.*, No. 03 C 760, 2004 WL 3021842, at *6 (N.D. Ill. Dec. 30, 2004) (denying plaintiffs' motion to compel, filed four days before discovery closed and "seeking an array of evidence that [plaintiffs] had not inquired about in almost thirteen months."); *see also*, *Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612, 2012 WL 1680109, at *5 (W.D. Ky. May 14, 2012) (affirming denial of a motion to compel, which had been filed only ten days before discovery closed, because the plaintiffs were aware of the defendants' objections to the discovery requests for six months).

> b. *December 2023 Subpoenas*

Because Defendants waited until six days before the discovery deadline to issue the December 2023 subpoenas, this Court should quash these subpoenas in their entirety as untimely.

Discovery requested before the discovery closing date but not scheduled for completion before the discovery closing date, is untimely. *See* L.R. 16.1; *Hansen v. Country Mut. Ins. Co.*,

No. 18 CV 244, 2021 WL 12101094, at *3, n. 2 (N.D. Ill. May 14, 2021) (noting that discovery requests, including subpoenas, are not timely unless they are both served and completed before the discovery cutoff); *Phipps v. Adams*, No. 3:11-CV-147-GPM-DGW, 2012 WL 3074047, at *2 (S.D. Ill. July 30, 2012) (same).

On December 12, 2023, Defendants requested the IDOC phone calls of four test-case plaintiffs— Allen Jackson, Phillip Thomas, Henry Thomas, and Andre McNairy. Defendants argue that their December subpoenas were timely because they issued them prior to the deadline and directed IDOC to comply by December 18, 2023, which was the fact discovery deadline. But allowing six days to comply with their subpoenas does not comply with Rule 45 or with the Court's scheduling orders. *See Layman v. Junior Players Golf Academy, Inc.*, 314 F.R.D. 379, 385-86, 330 Ed. Law Rep. 718 (D.S.C. 2016); *Nguyen v. Louisiana State Bd. of Cosmetology*, No. CV 14-80-BAJ-RLB, 2016 WL 320152 (M.D. La. Jan. 26, 2016) (granting motion to quash subpoena issued 17 days before discovery deadline); *Stokes v. Xerox Corp.*, No. 05-CV-71683-DT, 2006 WL 6686584 (E.D. Mich. Oct. 5, 2006) (granting motion to quash for subpoena issued eight days before discovery closed). This is particularly true given Defendants' previous assertions that IDOC often requires a lengthy period of time to comply with subpoenas. *See* Joint Status Report, Dkt. 415 at 3, Feb. 9, 2023 ("Defendants note that they will need to immediately issue subpoenas to entities such as the Cook County State's Attorney's Office, Cook County Public Defender's Office, and the Illinois Department of Corrections. Based on previous experience in these coordinated proceedings, Defendants may not receive responses to said subpoenas for many months,").

Furthermore, Defendants attempt to justify their delay by blaming Plaintiffs. Defendants claim that because Plaintiffs objected to the requests, they held off on issuing subpoenas until

December 2023. *See* Dkt. 668 at 5. Even if that is true, it does not justify sending out the subpoenas in December. Nothing, including Plaintiffs' position, prevented Defendants from issuing additional IDOC subpoenas for calls earlier or bringing this matter to the Court for resolution.

Additionally, Defendants implied that after the parties met and conferred in October, they were waiting for Plaintiffs to supply information to issue the remaining IDOC subpoenas for phone calls. *See* Dkt. 668 at 11-12. This was not so. During the October conversation, Defendants specifically told Plaintiffs that they were actively assessing which calls to request based on the records they had received from IDOC to date. The parties ended this conferral with Defendants advising Plaintiffs that they would notify them once they finished this internal assessment. Following this conversation, Plaintiffs did not hear from Defendants about their IDOC subpoenas until December 8, 2023, after Plaintiffs had informed Defendants that they would not agree to an extension of fact discovery in the test cases.

Finally, Defendants complain that their delay was in part because Plaintiffs "refused" to identify who the unknown phone numbers belonged to that were listed on their call logs. Dkt. 668 at 6-8. Again, this is not an accurate portrayal of what unfolded amongst the parties leading up to this motion practice. Contrary to their claim, Defendants asked Plaintiffs for this information for the first time in early December 2023, not earlier.

The Federal Rules of Civil Procedure provide several discovery tools that Defendants could have utilized earlier in litigation to learn the unknown callers' identities. Indeed, Defendants had much of the information that they claimed to need long before discovery ended, and could have obtained the rest if they had pursued it. Notably, Defendants had most of the test-case Plaintiffs' phone call logs since May 2023 at the latest. For example, in Bobby Coleman's

case, Defendants have had Mr. Coleman's call log since July 2020, and he was deposed in November 2023. See Ex. 4, IDOC Call Log of Bobby Coleman, June 23, 2020. Defendants could have asked Mr. Coleman who the individuals were that he called while incarcerated and what he had talked to them about. Defendants did not do so.

In short, nothing was stopping Defendants from pursuing IDOC calls during discovery or utilizing discovery methods to obtain the necessary information to determine if those calls might have relevant information. Plaintiffs were not required to informally provide Defendants with information that they could have obtained through formal discovery but chose not to pursue.

## III. Defendants have not Demonstrated any Genuine Bases to Believe These Calls Contain Relevant Information.

Even now, Defendants have failed to show that the calls they requested may contain relevant information to these proceedings. Discovery of recorded prison calls requires a concrete, non-speculative showing of relevance and proportionality. *DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 7059444, at *5 (N.D. Ill. Dec. 2, 2020). Specifically, "in order to overcome a prisoner's privacy interest in the recordings of her telephone calls, the subpoenaing party must offer more than mere speculation that the recordings could house relevant evidence." *Id.*

Like Defendants here, the defendants in *McClendon v. City of Chicago* subpoenaed the plaintiff's recorded jail calls. No. 22 C 5472, 2024 WL 260234, at *3 (N.D. Ill. Jan. 19, 2024). The plaintiff moved to quash the defendants' subpoena on the bases of undue burden, relevance, and proportionality. *Id.* at *2-4. In opposing this motion, the defendants argued that the plaintiff likely discussed his criminal case on these calls. *Id.* at *4. Rejecting this argument, the court reasoned that the defendants' contention was "based almost entirely on the supposition that a hypothetical person could be expected to discuss certain events with certain people at certain times, without any particularized basis to conclude that Plaintiff himself may have had those

discussions." *Id.* Thus, the court granted the plaintiff's motion to quash as to the 50 requested calls. *Id.*

Like the defendants in *McClendon*, Defendant Officers only offer a purely speculative basis to believe that these Plaintiffs discussed their false arrests from several years prior during phone calls while incarcerated for unrelated charges. Defendants have not cited any depositions or discovery answers that demonstrate that these Plaintiffs talked about the relevant events with their family or friends while incarcerated during the requested time periods.

For six of the nine test-case Plaintiffs at issue, Defendants requested calls that were made during incarcerations completely unrelated to the false arrests and wrongful convictions at issue here:

- Clifford Roberts – His relevant incarceration[2] was in 2003 through early 2004. Ex. 5, Roberts' IDOC Offender Custody History. Yet, Defendants requested to review IDOC calls of Mr. Roberts from 2013-2023.
- Andre McNairy – His relevant incarceration was from 2010-2013, but Defendants sought calls from 2017-2018. Ex. 6, McNairy's IDOC Offender Custody History.
- Bobby Coleman – His relevant incarceration occurred in 2005 but Defendants requested to review calls from 2011. Ex. 7, Coleman's IDOC Offender Custody History.
- Henry Thomas – His relevant incarcerations occurred in 2003-2005 and 2006 through mid-2008, but Defendants requested calls from 2009-2012. Ex. 8, H. Thomas's IDOC Offender Custody History.
- Allen Jackson – Defendants seek calls from an unrelated incarceration. The Court does not have to decide whether to quash Defendants' subpoena to IDOC for Allen Jackson's calls because IDOC no longer has call recordings for Mr. Jackson. Ex. 9, May 26, 2023 Email from IDOC. Defendants' response brief asserts that IDOC has call logs, but they have not responded to the fact that IDOC has informed the parties that it does not have the actual calls. *See* Dkt. 668 at 16.
- Lionel White Sr. – His relevant incarceration occurred in 2006-2008 but Defendants seek to review phone calls from an unrelated incarceration during 2009-2012.[3]

---

[2] For the purposes of this briefing, Plaintiffs use "relevant incarceration" to mean an incarceration that resulted from Plaintiffs' false arrests at issue in these proceedings.

[3] Further undermining their relevance argument, Defendants have sought 17 calls of Lionel White Sr. with individuals, none of whom are disclosed as witnesses in these cases. Defendants requested 10 calls between Mr. White Sr. and unknown individuals. Defendants have not offered, nor can they, grounds to believe that these calls contain any trace of relevance.

Defendants assert that they are entitled to some of the calls at issue because they are likely between a Plaintiff and an individual identified as a damages witness. For instance, Defendants point out that Henry Thomas admitted that he spoke with his long-time girlfriend, Linda Owens, about his false arrests, but nothing in the record suggests that these conversations occurred on the phone while Mr. Thomas was incarcerated, much less during the related incarceration. As another example, Mr. Jackson disclosed the mother of his children, Rosalyn Morris, as a witness in this litigation. Defendants are seeking 19 calls that Mr. Jackson had with Ms. Morris in 2009. Defendants argue that, based on these Rule 26 disclosures, it is "reasonable to believe they spoke about what happened and its effects on Jackson." Dkt. 668 at 16. However, Defendants provide no basis for this assertion. It would be speculative under any scenario without further evidence as to why they believe he would have spoken to Ms. Morris "about what happened and its effects on" him, but it is particularly speculative here. The calls at issue were made years after the incident at issue in Mr. Jackson's case, during an incarceration from charges that did not stem from Defendant Watts and his team's false arrest. It seems far more likely that Mr. Jackson called Ms. Morris in order to speak with his children, rather than to discuss his arrest by the Watts team years earlier.

During the meet-and-confer process, Defendants reasoned that Plaintiffs' calls to family and friends are relevant to their damages claims. Defendants further explained that if a plaintiff asserted that being incarcerated harmed his relationship with his mother, yet he talked to her on the phone every day, Defendants should be able to "test" this assertion by listening to their calls. However, courts have rejected similar arguments. Like Defendants here, the defendants in *Pursley* argued that the plaintiff placed his personal and familial relationships at issue by alleging his wrongful incarceration caused his emotional and mental damages due to being separated

from his family. 2020 WL 1433827, at *3. The court rejected this unpersuasive argument, reasoning that the plaintiff's allegations that he was harmed from his incarceration by being separated from his family could not be disproven with phone conversations. *Id.* at *3-4.

Beyond just saying it, Defendants have not provided any reason to think that calls Plaintiffs made to their family members and friends would somehow undercut their damages claims in these cases. Given the gravity of wrongful incarceration, it is difficult to imagine anything a plaintiff could say on a phone call to diminish that harm. Tellingly, Defendants do not even address that argument in their response.

Moreover, as explained in Plaintiffs' motion and acknowledged in Defendants' response brief, Defendants seek a number of calls where they do not even know the identity of the person being called, let alone know the relationship between the Plaintiff and that person. For example, Defendants seek 33 calls between Mr. Jackson and an individual they claim is Shaunte R. Lance, but no party has disclosed this individual as a witness in these proceedings. Defendants write that "Plaintiff's counsel has not disclosed what relationship Shaunte Lance has with Allen Jackson … but given the number of phone calls over less than two months, it is likely that the person associated with this number had a close relationship with Jackson." Dkt. 668 at 16-17.

Defendants do not and cannot explain what obligation Plaintiff's counsel might have to "disclose what relationship" one of their (now-deceased) clients has with a random person who is not even disclosed as a witness in the client's case. Nor do they even attempt to explain why Mr. Jackson having "had a close relationship" with Mr. Lance would justify getting all the calls that Mr. Jackson made to Mr. Lance. The argument is absurd. And if accepted, Defendants' position would warrant allowing Plaintiffs to obtain all of Defendants' emails and communications with

10

their own friends and family members because they presumably also talk to their friends and family about certain events and experiences and how those affected them.[4]

In light of Defendants' failure to identify any legitimate basis to believe the calls at issue are relevant, the Court should deny Defendants' efforts to listen to the calls they have or to obtain additional calls from IDOC.

## IV. Defendants' Subpoenas Would Impose an Undue Burden and are Disproportionate to the Needs of These Cases.

Under Rules 26 and 45, Defendants' quest for over 1,000 phone calls imposes an undue burden on all involved parties and is disproportionate to the needs of these cases. Defendants argue that Plaintiffs cannot rely on undue burden as grounds to argue quashing their IDOC subpoenas because Plaintiffs are not the subpoenas' recipients. But this position overlooks the plain language of Federal Rules of Civil Procedure 45 & 26 and the reality that Plaintiffs' counsel has a professional duty to review any phone calls that their clients are a party to that are disclosed in this litigation.

Pursuant to Rule 45, parties can challenge a subpoena to a non-party based on undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A) ("A court must quash or modify a subpoena that subjects *a person* to undue burden.") (emphasis added). Rule 45 does not restrict courts' ability to quash a subpoena to only when it imposes an undue burden on the subpoena recipient. Instead, the language of Rule 45 is broader, allowing courts to quash subpoenas for imposing an undue burden on any person. A party seeking to quash a subpoena bears the burden of demonstrating

---

[4] Defendants' brief is replete with similar examples of calls they seek that are: between Plaintiffs and unknown numbers; involve numbers to which they have purportedly attached a name but have no idea who that person is or what that person's relationship is to the Plaintiff; or involve damage witnesses where Defendants have not provided any concrete examples of how the calls might possibly have relevant information. Although Plaintiffs have not specifically responded to each individual call that Defendants are seeking, they have addressed the categories of calls and explained why none are likely to contain relevant information.

that the subpoena subjects the party to an undue burden. *AF Holdings LLC v. Doe,* No. 12 C
4222, 2012 WL 5520861, *1 (N.D. Ill. Nov. 13, 2012).

Under Rule 26, discovery must be proportional to the needs of the case, after considering
the importance of the discovery in resolving the issues in the case and whether the burden of the
discovery outweighs its benefit. Fed. R. Civ. Pro. 26. If the Court denies Plaintiffs' motion,
Plaintiffs will be unduly burdened because of the time and resources that will have to be diverted
to the massive task of listening to more than 1,000 calls. *See, e.g.*, *Noble Roman's, Inc. v.
Hattenhauer Distribg. Co.*, 314 F.R.D. 304, 306 (S.D. Ind. 2016) (finding that the party had a
legitimate interest in subpoenas issued to a nonparty because if these subpoenas were enforced,
the party would be required to devote attorney time, effort, and expense, to review the documents
requested). Likewise, review of a massive set of calls of speculative relevance is disproportional
to the needs of the case.

In *McClendon,* as here, the plaintiff argued that reviewing the IDOC phone calls was
disproportionate to the needs of the case. *Id.* at *2-4. Just as Defendants argued, the defendants in
*McClendon* attempted to minimize the burden on the plaintiff by suggesting that the plaintiff
would not need to listen to the calls. *Id.* But the court rejected this argument. *Id.* The court ruled
that the defendants' request for calls "fail[ed] to meet the proportionality standard." *Id.* at *4.
And the court recognized that the plaintiff's counsel had an obligation to review discovery
materials, which could require not only listening to the calls, but also transcribing, abstracting, or
otherwise organizing the information. *Id.* This burden was more than enough to outweigh the
theoretical relevance of the calls. *Id.*

Like the court in *McClendon* concluded that counsel's review *fifty* calls an undue burden,
which was disproportionate to the needs of the case, this Court should rule that the one thousand

12

calls requested would also impose a burden on Plaintiffs and are vastly disproportionate to the needs of the case.

Lastly, in their response, Defendants do not deny the possibility that they may ask for additional discovery for the test-cases as a result of obtaining and listening to the IDOC calls. But the discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Franklin v. Howard Brown Health Ctr.*, No. 17 C 8376, 2018 WL 4590010, at *6 (N.D. Ill. Sept. 25, 2018). Parties are entitled to a reasonable opportunity to investigate the facts and no more. *Vakharia v. Swedish Covenant Hospital,* 1994 WL 75055, *2 (N.D. Ill. 1994).

In the present cases, the parties have had more than a reasonable opportunity to investigate facts and pursue all potential theories and defenses. Although Defendants wish to leave the discovery door open indefinitely, doing so would undermine litigation efficiency, judicial economy, and the court's authority to regulate discovery. It is time for the parties to conclude this phase and move on to the next stage of litigation.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Plaintiffs' Motion to Quash Defendant Officers' IDOC Subpoenas for Test Case Plaintiffs' Phone Calls in its entirety.

Respectfully Submitted,

*Gianna Gizzi*
*One of Plaintiffs' Attorneys*

Jon Loevy
Arthur Loevy
Scott Rauscher
Josh Tepfer

Theresa Kleinhaus
Sean Starr
Gianna Gizzi
LOEVY & LOEVY
311 North Aberdeen Street,
Chicago, IL 60607
(312) 243-5900
gizzi@loevy.com

14