# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| )<br>)<br>)<br>)<br>In re: WATTS COORDINATED )<br>PRETRIAL PROCEEDINGS )<br>)<br>)<br>)<br>) | Master Docket Case No. 19-cv-1717<br><br>Judge Valderrama<br><br>Magistrate Judge Finnegan<br><br>JURY DEMANDED |

**This Document Relates to** *Lionel White v. City of Chicago*, No. 17-CV-2877

**<u>ANSWER TO PLAINTIFFS' COMPLAINT</u>**

Defendant Kallatt Mohammed ("Mohammed"), by and through one of his attorneys, Eric S. Palles of Mohan Groble Scolaro, P.C., respectfully submits the following answer to the Complaint filed by Plaintiff, Lionel White, as well as his defenses and jury demand, and states as follows:

### I. Introduction

1. Plaintiff Lionel White is one of many victims of the criminal enterprise run by convicted felon and former Chicago Police Sergeant Ronald Watts and his tactical team at the Ida B. Wells Homes in the 2000's.

**<u>ANSWER</u>: Defendant Mohammed objects to the term "criminal enterprise" as vague, argumentative, and undefined. Without waiver, and to the extent that the allegations in this paragraph purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

1

2. The Watts Gang of officers engaged in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "Watts Gang." Without waiver, except for those offenses specifically admitted in United States v. Mohammed, 12 CR 87-2 and to the extent that the allegations in this paragraph purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

3. High ranking officials within the Chicago Police Department were aware of the Watts Gang's criminal enterprise, but failed to take any action to stop it.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial terms "Watts Gang" and "criminal enterprise." Without waiver, Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

4. The Chicago Police Department's official policies or customs of failing to discipline, supervise, and control its officers and of a "code of silence" were a proximate cause of the Watts Gang's criminal enterprise.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial terms "Watts Gang" and "criminal enterprise." Without waiver, Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

5. White was one person harmed; Watts Gang officers subjected White to excessive force, arrested him without probable cause, fabricated evidence against him, and framed him for drug possession, a charge for which he served two years in prison.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "Watts Gang." Without waiver, and to the extent that the allegations in this paragraph purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

6. Based on the powerful evidence that has come to light about the Watts Gang's nearly decade-long criminal enterprise, on December 14, 2016, the Circuit Court of Cook County granted White's motion to vacate his conviction and on January 5, 2017, the Circuit Court of Cook County granted White a certificate of innocence.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial terms "Watts Gang" and "criminal enterprise." Without waiver, Defendant Mohammed admits that plaintiff's convictions were vacated by the Circuit Court of Cook County, and that he was granted a certificate of innocence, but denies the remaining allegations in this paragraph.**

7. White brings this lawsuit to secure a remedy for his illegal incarceration, which was caused by the Watts Gang, by the failure of high-ranking officials within the Chicago Police Department to stop the Watts Gang, by the code of silence within the Chicago Police Department, and by the Chicago Police Department's defective discipline policy.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "Watts Gang." Without waiver, this paragraph contains no factual allegations and, consequently, Defendant Mohammed makes no answer thereto.**

## II. Parties and Jurisdiction

8. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

**ANSWER: Defendant Mohammed admits to the jurisdiction of this Court.**

9. Plaintiff Lionel White is a resident of the Northern District of Illinois.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

10. Defendant City of Chicago is an Illinois municipal corporation.

**ANSWER: Upon information and belief, Defendant Mohammed admits the allegations contained in this paragraph.**

11. Defendants Ronald Watts, Alvin Jones, Elsworth Smith, Jr., Kallatt Mohammed, Manual Leano, Brian Bolton, Robert Gonzalez, and Douglas Nichols (hereinafter "individual officer defendants") were at all relevant times acting under color of their offices as Chicago police officers.

**ANSWER: Defendant Mohammed objects to the term "color of their offices" as vague and ambiguous. Without waiver, Defendant Mohammed admits that he was employed and performing his duties as a Chicago police officer at the time of this incident. He lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

12. Defendant Philip Cline was at all relevant times Superintendent of the Chicago Police Department. Plaintiff sues Cline in his individual capacity.

**ANSWER: Upon information and belief, Defendant Mohammed admits that Philip Cline was Superintendent of the Chicago Police Department. He lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

13. Defendant Debra Kirby was at all relevant times the Assistant Deputy Superintendent of the Chicago Police Department, acting as head of the Chicago Police Department Internal Affairs Division. Plaintiff sues Kirby in her individual capacity.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

4

### III. False Arrest and Illegal Prosecution of White

14. In April 2006, plaintiff was living in an apartment with his girlfriend, Kimberly Collins, in the Ida B. Wells Homes.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

15. On April 24, 2006, plaintiff was home alone when he heard a knock at the door.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

16. Plaintiff opened the door to defendants Watts and Jones.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

17. As plaintiff opened the door, defendant Jones struck him in the face.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

18. Jones stated in substance, "If we find one bag, we putting that bitch out."

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

19. Plaintiff knew that Jones's statement meant that if the officers claimed to have found any drugs in the apartment, they would cause Collins to be evicted.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

20. Plaintiff ran to the window and screamed for help while the officers searched the apartment.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

21. Watts and Jones grabbed plaintiff away from the window and beat him again.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

22. There were no drugs in the apartment or on plaintiff's person and neither Watts nor Jones found any drugs in the apartment or within plaintiff's possession or control.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

23. After their search of the apartment failed to turn up any evidence of a crime, Watts and Jones placed plaintiff in handcuffs and transported him to the police station.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

24. At the time of plaintiff's arrest:

a. Neither Watts nor Jones had a warrant authorizing their entry into the dwelling;
b. Neither Watts nor Jones had any lawful basis for entering the dwelling;
c. Neither Watts nor Jones had a warrant authorizing the arrest of plaintiff and neither believed that a warrant had been issued authorizing the arrest of plaintiff;
d. Neither Watts nor Jones had observed plaintiff commit any offense; and
e. Neither Watts nor Jones had received information from any source that plaintiff had committed an offense.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

25. Officers later took plaintiff to a hospital to receive treatment for the injuries inflicted by defendants Watts and Jones.

**ANSWER: To the extent that such allegations purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

26. Shortly after Watts and Jones arrested plaintiff, the individual officer defendants conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful

arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted.

**ANSWER:** **To the extent that such allegations purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

27. The false story fabricated by the officers consisted of the following prevarications:

a. Defendant Jones falsely claimed that he had seen plaintiff in a public area of the apartment building holding a plastic bag containing drugs;
b. Jones falsely claimed that he had announced that he was a police officer and plaintiff attempted to run away;
c. Jones falsely claimed that he had chased plaintiff and the two had scuffled;
d. Jones falsely claimed that plaintiff swung twice at Jones before Jones "gave the subject several elbow strikes until he was subdued;" and
e. Jones falsely claimed that he recovered a bag from plaintiff that contained 100 smaller bags of heroin.

**ANSWER:** **To the extent that such allegations purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

28. The acts of the individual officer defendants in furtherance of their scheme to frame plaintiff included the following:

a. One or more of the individual officer defendants prepared police reports containing the false story, and the other individual officer defendants each failed to intervene to prevent the violation of plaintiff's rights;
b. One or more of the individual officer defendants attested through the official police reports that they were witnesses to the false story, and the other individual officer defendants each failed to intervene to prevent the violation of plaintiff's rights;
c. Defendant Watts formally approved the official police reports despite knowing that they contained the false story; and
d. One or more of the individual officer defendants communicated the false story to prosecutors, and the other individual officer defendants each failed to intervene to prevent the violation of plaintiff's rights.

**ANSWER**: **To the extent that such allegations purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

29. Each of the individual officer defendants' wrongful acts was performed with knowledge that the acts would cause plaintiff to be wrongfully held in custody and falsely prosecuted for an offense that had never occurred.

**ANSWER**: **To the extent that such allegations purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

30. As a result of the individual officer defendants' wrongful acts, plaintiff was charged with several narcotics offenses, one of which was punishable under Illinois law as a "Class X" offense.

**ANSWER**: **To the extent that such allegations purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

31. Plaintiff knew that he would receive a life sentence if convicted of the Class X offense.

**ANSWER**: **Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

32. Plaintiff also knew that proving that the individual officer defendants had concocted the charges against him would not be possible.

**ANSWER**: **Defendant Mohammed objects to the undefined and prejudicial term "concocted." Without waiver, Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

33. Accordingly, on June 26, 2006, plaintiff accepted a plea offer to reduce the charges in exchange for a five-year sentence.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

34. Plaintiff pleaded guilty even though he was innocent.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

35. Plaintiff stated in open court during his plea hearing: The officers that did this to me, I was in my house. This is wrong and I'm scared to take my chances. When they was in my house beating me, I went to the window to holler out for help and the police came over and showed the time they say I did this. They was (sic) in my house beating me and I went to the hospital, your Honor. This is wrong. I am pleading guilty because I am scared. That's the honest to God truth, your Honor. I lost my momma, my daddy, my grandma, my auntie. I lost most of my family during all this time I have done. I don't have no problem if I done it, I will do the time. But I am scared. That's why I am taking the time, your Honor. Police came to my fiancée house and the time I came in two places at one time, your Honor, people beat me and put me in the hospital.

**ANSWER: Upon information and belief, Defendant Mohammed admits that this paragraph appears to accurately quote some of the statements plaintiff made during his plea hearing.**

36. As a result of the above-described wrongful acts of the individual officer defendants, plaintiff was deprived of his liberty during his incarceration.

**ANSWER: To the extent that such allegations purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

37. Plaintiff was continuously in custody from his arrest on April 24, 2006 until his release from the Illinois Department of Corrections on April 22, 2008.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

38. Plaintiff sought to vacate his conviction after he learned that federal prosecutors and lawyers for other wrongfully convicted individuals had uncovered evidence of the Watts Gang's criminal enterprise.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial terms "Watts Gang" and "criminal enterprise." Without waiver, Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

39. The State agreed to plaintiff's motion to vacate his conviction.

**ANSWER: Upon information and belief, Defendant Mohammed admits that this paragraph appears to accurately quote some of the statements plaintiff made during his plea hearing.**

40. On December 14, 2016, the Circuit Court of Cook County granted plaintiff's motion to vacate his conviction.

**ANSWER: Upon information and belief, Defendant Mohammed admits that this paragraph appears to accurately quote some of the statements plaintiff made during his plea hearing.**

41. On January 5, 2017, the Circuit Court of Cook County granted plaintiff a certificate of innocence.

**ANSWER: Upon information and belief, Defendant Mohammed admits that this paragraph appears to accurately quote some of the statements plaintiff made during his plea hearing.**

### IV. White's Arrest and Prosecution Were Part of a Long- Running Pattern Known to High Ranking Officials within the Chicago Police Department

42. Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, the Chicago Police Department had received numerous civilian complaints that defendant Watts and the Watts Gang were engaging in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "Watts Gang." Without waiver, Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

43. These civilian complaints were corroborated by information criminal investigators obtained from multiple cooperating witnesses.

**ANSWER: Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

44. Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, defendants Cline and Kirby knew about the above-described credible allegations of serious wrongdoing by Watts and the Watts Gang.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial terms "Watts Gang" and "wrongdoing." Without waiver, to the extent that such allegations purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

45. Defendants Cline and Kirby also knew, before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, that, absent intervention by the Chicago Police Department, Watts and his gang would continue to engage in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "Watts Gang." Without waiver, to the extent that such allegations purport to apply to him, Defendant Mohammed denies them. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

46. The Internal Affairs Division of the Chicago Police knew about the lawlessness of Watts and his gang in 2004 or earlier.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial terms "gang" and "lawlessness." Without waiver, Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations against other defendants contained in this paragraph.**

11

47. Defendants Cline and Kirby had the power and the opportunity to prevent Watts and his gang from continuing to engage in the above described wrongdoing.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial terms "gang" and "wrongdoing." This paragraph makes no claims against Defendant Mohammed and therefore he makes no answer thereto.**

48. Defendants Cline and Kirby deliberately chose to turn a blind eye to the pattern of wrongdoing by Watts and his gang.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial terms "gang" and "wrongdoing." This paragraph makes no claims against Defendant Mohammed and therefore he makes no answer thereto.**

49. As a direct and proximate result of the deliberate indifference of defendants Cline and Kirby, Watts and his gang continued to engage in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "gang." This paragraph makes no claims against Defendant Mohammed and therefore he makes no answer thereto.**

### V. Official Policies and Customs of the Chicago Police Department Were the Moving Force behind the Defendants' Misconduct

50. At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated and condoned the Defendants' misconduct.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

### A. Failure to Discipline

51. At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed**

**and therefore he makes no answer thereto.**

52. Before plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed**

**and therefore he makes no answer thereto.**

53. Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed**

**and therefore he makes no answer thereto.**

54. Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, each of the individual officer defendants had been the subject of ten or more formal complaints of official misconduct.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "Watts Gang." Without waiver, to the extent that such allegations purport to apply to him, Defendant Mohammed denies he engineered plaintiff's arrest, detention or prosecution. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

55. As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and controlling its officers and the policymakers' failure to address these problems, Watts and his gang continued to engage in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "gang." Without waiver, Defendant Mohammed denies the allegations contained in this paragraph.**

13

## B. Code of Silence

56. At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

**ANSWER: Defendant Mohammed lacks sufficient information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

57. Police officers are trained at the Chicago Police Academy not to break the code of silence. Officers are instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER: Defendant Mohammed lacks sufficient information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

58. This "code of silence" facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

**ANSWER: Defendant Mohammed denies the allegations contained in this paragraph.**

59. Consistent with this "code of silence," the few people within the Chicago Police Department who stood up to Watts and his gang or who attempted to report their misconduct were either ignored or punished, and the Watts Gang was able to engage in misconduct with impunity.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial terms "gang," "Watts Gang," and "misconduct." Without waiver, to the extent that such allegations purport to apply to him, Defendant Mohammed denies the allegations contained in this paragraph. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

60. Watts and his gang are not the first Chicago police officers who were allowed to abuse citizens with impunity over a period of years while the City turned a blind eye.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "gang."**

**Without waiver, Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the allegations contained in this paragraph.**

61. One example of this widespread practice is Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. One of the charges against Finnigan involved his attempt to hire a hitman to kill a police officer whom Finnigan believed would be a witness against him.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

62. Finnigan was part of a group of officers in the Defendant City's Special Operations Section who carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

63. Finnigan and his crew engaged in their misconduct at around the same time that plaintiff was subjected to the abuses described above.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

64. Finnigan, like the individual officer defendants in this case, had been the subject of many formal complaints of misconduct.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

65. Finnigan revealed at his criminal sentencing hearing in 2011, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

66. Defendants Watts and Mohammed were criminally charged in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "shaking down." Without waiver, Defendant Mohammed admits that in 2012, he was criminally charged for violation of 18 U.S.C. §§ 641 and 642. Except as specifically admitted, Defendant Mohammed denies the remaining allegations contained in this paragraph.**

67. Defendant Mohammed pleaded guilty in 2012.

**ANSWER: Defendant Mohammed admits that he pleaded guilty in 2012 to a violation of 18 USC §641. Except as specifically admitted, Defendant Mohammed denies the remaining allegations contained in this paragraph.**

68. Defendant Watts pleaded guilty in 2013.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

69. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007 "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

70. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

71. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

72. In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

73. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, the Task Force, and the Department of Justice was also in place when plaintiff suffered the wrongful arrest, detention, and prosecution, as described above.

**ANSWER: The allegations in this paragraph are not directed to Defendant Mohammed and therefore he makes no answer thereto.**

74. As a direct and proximate result of the City's code of silence, Watts and his gang continued to engage in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER: Defendant Mohammed objects to the undefined and prejudicial term "gang." Without waiver, to the extent that such allegations purport to apply to him, Defendant Mohammed denies the allegations contained in this paragraph. Defendant Mohammed lacks sufficient knowledge upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### VI. Claims

75. As a result of the foregoing, all of the defendants caused plaintiff to be deprived of rights secured by the Fourth and Fourteenth Amendments.

**ANSWER: Defendant Mohammed objects to the term "foregoing" as vague and overly broad. Without waiver, Defendant Mohammed denies the allegations contained in this paragraph.**

76. As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiff was subjected to a malicious prosecution under Illinois law.

17

**ANSWER: Defendant Mohammed objects to the term "foregoing" as vague and overly broad. Without waiver, Defendant Mohammed denies the allegations contained in this paragraph.**

77. Plaintiff hereby demands trial by jury.

**ANSWER: Defendant Mohammed admits that Plaintiff demand a trial by jury and joins in said demand.**

<u>**AFFIRMATIVE DEFENSES**</u>

1.      To the extent Defendant Mohammed was in fact involved in Plaintiff's arrest at issue, Defendant Mohammed is entitled to qualified immunity. He is a government official who performed discretionary functions. At the time of the incidents referenced in Plaintiff's Complaint, Defendant Mohammed was an on-duty member of the Chicago Police Department who was executing and enforcing the law. At all times relevant to Plaintiff's Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted Defendant Mohammed could have believed his actions to be lawful, in light of clearly established law and the information the officers possessed at the time.

2.      To the extent Defendant Mohammed was in fact involved in Plaintiff's arrest at issue, Defendant Mohammed is not liable for his individual participation in the arrest because, as a public employee, his actions were discretionary and he is immune from liability. 745 ILCS 10/2-201. As a result, the City of Chicago is also not liable to Plaintiff. 745 ILCS 10/2-109.

3.      A public employee is not liable for his act or omission in the execution of any law unless such act or omission constitutes willful or wanton misconduct. 745 ILCS 10/2-202. To the extent Defendant Mohammed was in fact involved in Plaintiff's arrest at issue, Defendant Mohammed was acting in the execution and enforcement of the law at the time of any interactions with Plaintiff and Defendant Mohammed's individual acts were neither willful nor wanton. As a

result, Defendant Mohammed is not liable to Plaintiff. 745 ILCS 10/2-109.

4.     To the extent Plaintiff failed to mitigate any of his claimed damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff had a duty to mitigate his damages, commensurate with the degree of failure to mitigate attributed to Plaintiff.

5.     Under the Tort Immunity Act, to the extent Defendant Mohammed was in fact involved in Plaintiff's arrest at issue, Defendant Mohammed is not liable for any injury allegedly caused by the instituting or prosecuting of any judicial or administrative proceeding when done within the scope of his employment, unless such action was done maliciously and without probable cause. 745 ILCS 10/2-208.

6.     Under the Tort Immunity Act, Defendant Mohammed is not liable for any injury caused by the action or omission of another public employee. 745 ILCS 10/2-204.

7.     To the extent Plaintiff seeks to impose liability based on testimony given by Defendant Mohammed, if any was in fact given by Mohammed, the officer is absolutely immune from liability. *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012);

8.     Plaintiff's claims in the Complaint are barred by the doctrines of *res judicata* and collateral estoppel.

**WHEREFORE**, Defendant, Kallatt Mohammed, denies that Plaintiff Lionel White is entitled to the relief requested in the Complaint, or to any relief whatsoever, against Mohammed and demands: 1) entry of a judgment dismissing Plaintiff's Complaint in its entirety as to Defendant Mohammed; 2) for an award of the costs incurred in defending this action; and 3) for such other relief as the Court deems appropriate.

19

## **JURY DEMAND**

Defendant, Kallatt Mohammed, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Eric S. Palles  #2136473
ERIC S. PALLES
Special Assistant Corporation Counsel

Eric S. Palles
Sean M. Sullivan
Yelyzaveta (Lisa) Altukhova
Mohan Groble Scolaro, P.C.
55 W. Monroe St., Suite 1600
Chicago, IL 60603
(312) 422-9999
*Counsel for Defendant Kallatt Mohammed*

## CERTIFICATE OF SERVICE

I hereby certify that on May 23rd, 2024, I caused the foregoing Defendant Kallatt Mohammed's Answer to Plaintiffs' Complaint to be served on all counsel of record using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Eric S. Palles
Special Assistant Corporation Counsel
One of the attorneys for Kallatt Mohammed