**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: WATTS COORDINATED PRETRIAL PROCEEDINGS | ) ) ) ) ) ) ) | Master Docket Case No. 19-cv-01717<br><br>Judge Franklin U. Valderrama<br><br>Magistrate Judge Sheila M. Finnegan |

THIS DOCUMENT RELATES TO ALL CASES

**DEFENDANT OFFICERS' CORRECTED SUPPLEMENT TO THEIR RESPONSE TO THE COOK COUNTY STATE'S ATTORNEY'S OFFICE'S MOTION TO QUASH THE SUBPOENA FOR DEPOSITIONS OF
ERIC SUSSMAN, JOSEPH MAGATS, MARK ROTERT, AND NANCY ADDUCI**

Defendant Officers, by and through their attorneys, hereby submit this Corrected Supplement[1] their Response[2] to the Cook County State's Attorney's Office's Motion to Quash the Subpoena for Depositions of Eric Sussman, Joseph Magats, Mark Rotert, and Nancy Adduci.[3] In support thereof, Defendant Officers state as follows:

**INTRODUCTION**

In its Motion to Quash, the Cook County State's Attorney's Office ("CCSAO") maintained that it has not waived any privilege regarding decisions made about vacating convictions in the cases that are part of the Watts Coordinated Pretrial Proceedings. However, based on documents previously produced by the Civilian Office of Police Accountability ("COPA")[4] and contrary to what CCSAO has asserted in its Motion and Reply, CCSAO had discussed in detail with COPA

---

1 Undersigned counsel spoke to ASA Wasserman from the CCSAO and advised her that Defendant Officers would be seeking to file this Corrected Supplement based on a software search issue that failed to locate documents that were believed to have not been previously produced.
2 Dkts. 567 & 568
3 Dkt. 534
4 Though COPA is an agency of the City of Chicago, COPA is represented by separate counsel for purposes of this litigation.

1

its reasons for agreeing to vacate Watts-related convictions. In fact, two of the very witnesses that Defendant Officers wish to depose about this very topic were part of these discussions with COPA.[5]

The COPA records reveal that, at the direction of the Conviction Integrity Unit's (CIU's) then-Director, ASA Rotert, then-CIU Deputy, ASA Adduci was interviewed on multiple occasions by COPA about the specific reasons the CCSAO agreed to vacate these convictions. Therefore, the CCSAO has waived any claimed deliberative process privilege, and Defendant Officers should therefore be allowed to question Sussman, Magats, Rotert, Adduci, and any other member or former member of the CCSAO about the decision-making process concerning all cases the CCSAO agreed to vacate.[6]

Counsel for Defendant Officers and ASA Wasserman and CCSAO Division Chief Lyle Henretty have conferred on the issues raised in this Corrected Supplement in an attempt to avoid or limit further briefing on these issues. These discussions are ongoing and the Court will be advised if any such agreement is reached, in whole or in part.

## ARGUMENT

Documents produced by COPA undermine any privilege assertion made by the CCSAO. These documents memorialize COPA's interviews of Adduci where she discloses and outlines the CCSAO's reasoning and rationale regarding its agreement to vacate almost two dozen convictions, all of which have now become a part of these Coordinated Pretrial Proceedings. These interviews demonstrate that any claim of privilege has been waived, not only in those cases, but for all other

---

[5] Based on its Motion and Reply, it is not clear if the CCSAO was aware of these interviews taking place prior to being provided with the COPA reports memorializing them.

[6] COPA's production are confidential and were made subject to the protective order in *In re Watts Coordinated Pretrial Proceedings*, 19 C 1717, so they are not being filed with this Supplement. Defendant Officers will provide them to this Court for *in camera* review, if requested. These documents were provided to the CCSAO for purposes of responding to this Corrected Supplement.

cases the CCSAO reviewed, agreed to vacate, and are now part of these Coordinated Pretrial Proceedings. For the reasons set forth below and in Defendant Officers' Response to the CCSAO's Motion, Dkts. 567, 568, this Court should find that the CCSAO has waived any claimed privilege, permit inquiry into why the CCSAO took the positions it did on Watts-related cases,[7] and deny the CCSAO's Motion.

I.    **The CCSAO's Decision to Participate in COPA's Investigation and Provide the Methodology Used to Determine Which Convictions Involving Watts to Vacate Is a Complete Waiver of Its Deliberative Process**

Documents produced in this litigation show that CCSAO waived any claimed deliberative process privilege and demonstrates that Deputy Chief ASA Jessica Scheller's Declaration to this Court in asserting the deliberative process privilege failed to account for her Office's participation in the COPA investigations related to Watts.

The documents clearly demonstrate that ASA Scheller's contention that "CCSAO and some of its agents spoke very generally about these cases to the press, there was no disclosure of specific factual or legal analysis, nor of the deliberative process for any specific case" is incorrect. Dkt. 534-3, ¶ 8. The produced documents show in fact that CIU's then-Deputy ASA Adduci, at the direction of then-CIU Director ASA Rotert, had detailed conversations with a third-party (COPA) about the CCSAO's analysis of how it determined whether to agree to vacate Watts-related convictions.

COPA Investigator Dion stated that ASA Rotert was willing to let COPA investigators "speak to Ms. Adduci about her deliberations in the Watts-related petitions," COPA-WATTS_142982-142983, and the documents produced show that discussion did, in fact, occur.

---

7 ASA Adduci was deposed in *Waddy v. City of Chicago, et al.*, 2019 L 010035, which is currently pending in the Circuit Court of Cook County. Her deposition in the Watts-related proceedings is stayed pending this Court's ruling on the CCSAO's Motion to Quash.

COPA has produced memoranda and notes detailing the discussions between COPA investigators and the CCSAO, primarily through ASA Adduci, across multiple days, with almost two dozen cases being discussed.[8] These documents make it clear that the discussions went well beyond simply discussing the facts of those cases; indeed, for every case discussed, the CCSAO openly discussed with COPA, in great detail, why it made decisions to vacate, or not vacate (COPA-WATTS_142983), convictions, as well as the processes by which the CCSAO would evaluate cases it was called to review. Not only were the individual factors discussed for each case, but ASA Adduci explained the overall methodology applied to the CCSAO's analysis of the Watts-related cases.

For example, in the Lionel White, Jr. case, according to COPA, Adduci told COPA the five reasons why the CIU agreed to vacate White, Jr.'s conviction. COPA-WATTS_142986. This same conversation took place for virtually every other case discussed, with the same level of detail being provided (*see* COPA-WATTS_142982-143008). Adduci also communicated to COPA the factors she considered in reviewing Watts-related cases to see if they fit the "pattern" of other complaints being made in these cases. COPA-WATTS_142986, n. 1 (quotation marks in original). Far from merely sharing fact work product, COPA's account of these discussions shows that the CCSAO not only provided, but *explained* the reasons why it agreed to vacate these convictions.

The CCSAO's detailed, comprehensive disclosure of information regarding its deliberative process for deciding to vacate certain Watts-related convictions to COPA, a third party, waives any privilege that it may have had. *See Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003)

---

8 The production recounts discussions with ASA Adduci regarding the following cases, all of which are now part of these Coordinated Pretrial Proceedings: Leonard Gipson (three arrests), Christopher Scott, Lionel White, Jr., Jamar Lewis, Frank Saunders, Marcus Gibbs, Andre McNairy, Henry Thomas, Jamell Sanders, Lee Rainey, William Carter, Shaun James, Allen Jackson, Robert Forney, Angelo Maurice Shenault (two arrests), Angelo Shenault (two arrests), Phillip Thomas, Taurus Smith, Bruce Powell, and Lionel White, Sr.

(disclosure to third party waives privilege); *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126-27 (7th Cir. 1997). What is more, these documents demonstrate that the CCSAO not only waived its privilege assertions with regard to the specific cases discussed, it waived the privilege entirely as to any other Watts-related cases in which the CCSAO agreed, or did not agree, to vacate a conviction.

At a minimum, Defendants must be permitted to depose Adduci and Rotert about the information contained in COPA's documentation. However, the waiver goes further than the discovery produced in this case. Rotert agreed to waive the privilege for the CCSAO when he agreed to allow COPA to interview Adduci. Because the privilege belongs to the Office and the Office waived the privilege, an individual ASA cannot avoid answering questions about the Office's decision-making in these matters by asserting the deliberative process privilege.

Allowing a party to decide what to disclose and to whom, but to assert a privilege and refuse to disclose to another, puts the opposing party at an unfair and unreasonable disadvantage. *See Permian Corp. v. United States,* 665 F.2d 1214, 1221 (D.C. Cir. 1981) (a "client cannot be permitted to pick and choose among his opponents, waiving the privilege as to some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit.") (citations omitted). In this instance, the CCSAO may not waive its privilege with COPA by having fulsome discussions regarding its processes and decision-making for Watts-related cases, but refuse to discuss the same information with the Defendant Officers under the guise of a privilege assertion.

In *Burden-Meeks*, attorneys retained by a municipality shared a risk-assessment report with the City of County Club Hills' mayor and sought to prevent disclosure of that report in civil

litigation based on attorney-client privilege. *Burden-Meeks*, 319 F.3d at 898-899. The district court did not reach the issue of whether it was protected by the attorney-client privilege, but nevertheless ordered the report to be turned over because it had been shared with the mayor (who was the defendant in the case). *Id.* at 899. The Seventh Circuit affirmed, holding that sharing the report with the mayor waived any claim of privilege. "Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option." *Id.* at 899; *Dellwood Farms, Inc.*, 128 F.3d at 1126-27; s*ee also J.M. v. City of Milwaukee*, 2016 WL 7264781, at *3 (E.D. Wis. Dec. 15, 2016) (noting that *Burden-Meeks* cites to *Dellwood Farms* in support of the rule that disclosure to a third party waives the privilege entirely).[9]

Furthermore, the law of this Circuit (and virtually all other Circuits) does not permit "selective disclosure," and the CCSAO should not be permitted to pick and choose which cases it will provide testimony about, and which cases it will not. *See, e.g., Burden-Meeks*, 319 F.3d at 899; *Dellwood Farms, Inc.*, 128 F.3d at 1126-27. The CCSAO's waiver should be applied to all cases that the CCSAO and COPA (as well as any other third party) discussed, and not be limited to solely the cases that Defendant Officers know were discussed at this point. The CCSAO's citation to *In re Sealed case*, 121 F.3d 729 (D.C. Cir. 1997) to support a limited waiver should not be considered by this Court as it was decided several years before *Burden-Meeks*, and it is not the law of this Circuit. The CCSAO's decision to discuss with COPA its reasons for agreeing to vacate certain convictions serves as a waiver as to all cases it discussed and any claim of waiver fails.

---

9 Indeed, only the Eighth Circuit has accepted the invocation of "selective waiver." *Diversified Industries, inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1978); *compare with Burden-Meeks*, 319 F.3d at 899, *Dellwood Farms, Inc.*, 128 F.3d at 1126-27; *In re Pacific Pictures Corp.,* 679 F.3d 1121, 1127 (9th Cir.2012) (rejecting the theory of selective waiver and citing similar decisions of the First, Second, Third, Fourth, Sixth, Seventh, Tenth, D.C., and Federal Circuits).

Documents produced in this litigation conclusively show that the CCSAO waived the deliberative process privilege to a third-party, COPA, in its many interviews regarding Watts-related cases, the CCSAO has waived any claim to privilege and its privilege claim must fail.

**II.     The CCSAO is the Only Source of This Information**

As additional support for its Motion to Quash, the CCSAO asserts that the information Defendant Officers are seeking is "largely available from other sources other than the CCSAO." Dkt. 590, p. 8. This document production proves that is not true. Although COPA investigators have provided summaries of what was discussed during their interviews with Adduci and Rotert, this does not mean that Defendant Officers should not be allowed to question Adduci or Rotert[10] more fully on the reasons or factors that were considered (or not considered) in agreeing to vacate these convictions. Indeed, the CCSAO is the *exclusive* source of this information, as none of the statements or factors attributed to Adduci are found in any press release or news article.

The only source of this information is those in attendance at those interviews (*i.e.*, the CCSAO or COPA staff). While COPA staff were present, the CCSAO is the actual, original source of that information, and the only party that could answer questions about the decisions it made, and whether COPA's memorialization of the information relayed are accurate. Indeed, COPA's recounting of the CCSAO's statements would be inadmissible hearsay at trial in any of these pending matters. Therefore, Defendant Officers are unable obtain information about why the CCSAO agreed to vacate these convictions from any other source.

**III.     These Interviews Occurred After the CCSAO Made Determinations to Vacate**

Alternatively, if CCSAO somehow tries to assert that its communications with COPA are somehow protected under deliberative process, the privilege would not cover these statements

---

10 Former ASA Fabio Valentini also appears to have been involved in decisions regarding the Baker and White, Sr. cases.

because these interviews took place on April 19, 24 and 26, 2018, and on May 3, 2018, after Watts-related convictions had already been vacated. In order for the deliberative process to apply, the information must be both predecisional and deliberative. *EnviroTech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 375 (7th Cir. 2004); *see EEOC v. Stauffer Chemical Co.,* 89 C 2725, 1990 WL 19967, at \*1 (N.D. Ill. Feb. 27, 1990) (explaining that predecisional documents are generated before the adoption of an agency policy or decision). Consequently, because these interviews of the CCSAO by COPA took place *after* the CCSAO decided not to oppose vacating these convictions these discussions were not predecisional, and this Court should find that the deliberative privilege does not apply. *Id.*; *see DeLeon-Reyes v. Guevara*, 18-cv-01028, 2021 WL 3109662, at \*4 (N.D. Ill. July 22, 2021).

## CONCLUSION

The CCSAO's voluntary disclosure of specific, detailed information about the reasons it agreed to vacate almost two dozen convictions, as well as the factors it considered in screening cases brought to it by Plaintiffs' counsel, undermine any argument that the privilege has not been waived. This waiver extends beyond the cases that were, in fact, discussed to all cases that the CCSAO has discussed with COPA, and the sole, original source of this information is the CCSAO. Therefore, and for the reasons set forth above and in Defendant Officers' Response to the CCSAO's Motion to Quash, this Court should find that: (1) the CCSAO waived any privilege regarding its decision-making process(es) in any of the Watts-related cases; (2) permit inquiry into why the CCSAO took the positions it did in all Watts-related cases; (3) deny the CCSAO's Motion; and (4) grant any other relief it deems proper.

Respectfully Submitted,

8

/s/ Anthony E. Zecchin
Special Assistant Corporation Counsel
One of the attorneys for the Individual Defendants

Andrew M. Hale
Hannah Beswick-Hale
William E. Bazarek
Kelly M. Olivier
Anthony E. Zecchin
Jason M. Marx
Special Assistant Corporation Counsel
Hale & Monico LLC
53 W. Jackson Blvd., Suite 334
Chicago, IL 60604

**CERTIFICATE OF SERVICE**

I, Anthony E. Zecchin, hereby certify that on June 17, 2024, I electronically files the forgoing, DEFENDANT OFFICERS' CORRECTED SUPPLEMENT TO THEIR RESPONSE TO THE COOK COUNTY STATE'S ATTORNEY'S OFFICE'S MOTION TO QUASH THE SUBPOENA FOR DEPOSITIONS OF ERIC SUSSMAN, JOSEPH MAGATS, MARK ROTERT, AND NANCY ADDUCI with the Clerk of the Court using the ECF system, which simultaneously served copies on all counsel of record via electronic notification.

*/s/ Anthony E. Zecchin*