IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Watts Coordinated Pretrial Proceedings | No. 1:19-cv-01717<br><br>Judge Franklin U. Valderrama<br><br>Magistrate Judge Sheila M. Finnegan |

THIS DOCUMENTS RELATES TO ALL CASES

**CCSAO'S RESPONSE TO DEFENDANT OFFICERS' CORRECTED SUPPLEMENT TO THEIR RESPONSE TO QUASH THE SUBPOENA FOR DEPOSITIONS OF ERIC SUSSMAN, JOSEPH MAGATS, MARK ROTERT, AND NANCY ADDUCI**

The Cook County State's Attorney's Office (CCSAO) submits this response to the Defendant Officers' Corrected Supplement to their Response to the Motion to Quash. CCSAO addresses the claims made by the Defendant Officers and reasserts the protection of the deliberative process privilege, clarifying that the information shared with the Civilian Office of Police Accountability (COPA) does not constitute a waiver of this privilege.

**Background**

CCSAO previously moved to quash the subpoena for depositions of Eric Sussman, Joseph Magats, Mark Rotert, and Nancy Adduci. R. 731. CCSAO argued that (1) these individuals were high-ranking public officials who could not provide relevant non-privileged evidence; (2) the communications sought were protected by the deliberative process privilege; and (3) mental impressions related to privileged

communications were protected by the mental process privilege and work-product privilege. *Id*.

In response, Defendant Officers argued that (1) the Apex Doctrine did not prevent the depositions; and (2) CCSAO's objections based on the deliberative process privilege should be overruled. R. 567. They acknowledged that various topics, including "recommendations on whether convictions should be vacated and petitions for COI opposed; what led to certain recommendations being overruled; [and] how each case fits within the criteria used by the CCSAO when evaluating cases and why the criteria changed over time," were protected by the deliberative process privilege. R. 567 at 21. The Officers argued, however, that CCSAO waived that privilege by making "numerous public comments" about the vacated convictions. R. 567 at 21–26. They also contended that, even if the deliberative process privilege were not waived, they could overcome the privilege due to their "particularized need for the information that outweighs the government's interest in confidentiality." R. 567 at 26.

This court granted in part and denied in part CCSAO's motion to quash the subpoena for depositions of Eric Sussman, Joseph Magats, Mark Rotert, and Nancy Adduci. R. 717. The court explained that it would allow the depositions to proceed but limit the topics and questions that could be posed to the witnesses. *Id*. The parties are currently in the process of scheduling these depositions.

Following the court's ruling, Defendant Officers filed this supplement based on COPA documents, which they had known about since 2022.[1] COPA is a government agency responsible for investigating allegations of police misconduct, aiming to increase transparency and accountability within the Chicago Police Department by conducting thorough and impartial investigations. *See* Municipal Code of Chicago, Chapter 2-78. COPA's investigatory files and reports are confidential. COPA Rules & Regulations, Article V, Section 5.2 (https://www.chicagocopa.org/about-copa/rules-regulations/). The documents produced by COPA were subject to a protective order and filed under seal.

These documents reflect ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defendant Officers argue that this

---

[1] It is undisputed that COPA produced a spreadsheet in 2022 identifying documents that the Defendants claim they were unaware of until after the briefing was complete. Exh. 1; R. 768 at 1. As such, Defendants had knowledge of these documents (which they allege waive *all* of the CCSAO's privileges, *prior* to meeting and conferring about these issues and engaging in motion practice.)

cooperation with COPA's investigation resulted in a broad waiver of the deliberative process privilege for all Watts-related cases.

## Argument

Defendant Officers incorrectly assert that CCSAO waived its deliberative process privilege by discussing Watts-related cases with COPA. The Northern District of Illinois has recognized that privileged communications disclosed for limited purposes—particularly to assist in government investigations and made under conditions intended to maintain confidentiality—are consistent with the principles of selective waiver. And, even if CCSAO's discussions with COPA waived the privilege as to additional third parties, any such waiver would be limited to the specific information discussed, rather than extending to all Watts-related cases.

I. **Defendant Officers Waived Any Argument Related to Waiver of Deliberative Process Privilege Based on the COPA Documents**

The Defendant Officers' failure to raise the issue of the COPA documents in their initial response constitutes waiver of any argument related to waiver of deliberative process privilege. Legal proceedings require that parties present all relevant arguments and defenses in a timely manner to ensure fairness and efficiency in the adjudication process. *See Puckett v. United States*, 556 U.S. 129, 134 (2009). By not disclosing their knowledge of the COPA documents and only raising this issue after their initial waiver argument failed, the Defendant Officers disrupted judicial efficiency and procedural fairness by depriving the CCSAO of the opportunity to address the matter comprehensively from the outset. Thus, any argument regarding waiver of the deliberative process privilege based on the COPA documents should be

considered waived due to the Defendant Officers' failure to raise it in their initial response.

As this Court is aware, the CCSAO and the Defendants engaged in lengthy meet-and-confer sessions with respect to the CCSAO's deliberative process claims. While Defendants argued, both in and out of Court, that the CCSAO had waived nearly all of its privileges by speaking to the press, at no time did they mention the COPA documents, or argue that they evidenced waiver. During that entire time, the Defendants had in their possession the spreadsheet (Exhibit 1 hereto) identifying the very documents they now claim are new information. Either Defendants were holding back these documents to ambush witnesses at their depositions, or they understood that such documents were unusable given the CCSAO's privilege (see Section II, below). The Defendants should have teed this issue up more than a year ago so the parties could have informed the Court about all issues pertaining to the CCSAO's privileges at once. This Court should not reward them for such tactical gamesmanship.

**II. Any waiver of privilege to COPA does not extend to other parties.**

Selective waiver "provides that a party may disclose documents to a government agency without waiving the privilege as to any other party." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 430 (N.D. Ill. 2006). The court takes a case-by-case approach in determining whether selective waiver applies. *See id.* ("[T]he court declines to adopt a *per se* rule regarding waiver with respect to government disclosures."); *see also American Oversight v. United States DOJ*, 45

F.4th 579, 594 (2d. Cir. 2022) (refusing to adopt "rigid" rule that all voluntary disclosures to government waive work-product protection). In doing so, courts consider factors such as whether the government and party seeking protection have taken steps to ensure confidentiality, *see Jaffe*, 244 F.R.D. at 430, and whether "selective disclosure will be used to obtain a strategic advantage," *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1127 (7th Cir. 1997). Applying these factors here, selective waiver applies to CCSAO's disclosures to COPA.

### A. Selective waiver is appropriate because the disclosure made to an oversight agency with the expectation of confidentiality.

The Northern District has held "selective waiver may be appropriate where the disclosing party took steps to preserve its privilege." *Jaffe*, 244 F.R.D. at 433. Accordingly, selective waiver is appropriate here because CCSAO shared information only with COPA and reasonably understood that the information would be kept confidential. COPA's Rules and Regulations state that "[a]ll COPA investigatory files and reports are confidential and will not be divulged to any person or agency, except to the United States Attorney, the Illinois Attorney General or the State's Attorney, as required by any relevant formal policy adopted by the City of Chicago, as required by law, or as otherwise directed by the Chief Administrator." COPA Rules & Regulations, Article V, Section 5.2 (https://www.chicagocopa.org/about-copa/rules-regulations/).

The court relied on similar language in *Jaffe* in concluding that defendants had not waived attorney-client and work-product privilege claims by disclosing privileged documents to the Securities and Exchange Commission ("SEC"). In *Jaffe,* a

confidentiality agreement allowed the SEC to disclose confidential information "to the extent that the Staff determines that disclosure is otherwise required by law or would be in furtherance of the Commission's discharge of its duties and responsibilities." *Jaffe*, 244 F.R.D. at 433. The court explained that this language—combined with a lack of evidence that "any restrictions on the documents' use were loose in practice"—was sufficient for purposes of applying selective waiver. *Id* (quoting *Qwest v. Communs. Int'l*, 450 F.3d 1179, 1194 (10th Cir. 2006)). Similarly, CCSAO disclosed information here only to an oversight body and with the understanding that the disclosed information would remain confidential. Nor is there any evidence that COPA's restrictions are "loose in practice." *Id*. Rather, COPA's production of this discovery has been coupled with protective orders and other measures to ensure confidentiality.

Notably, other courts have applied similar reasoning in holding that a privilege is not waived by disclosing information to a government agency during an investigation. For instance, in *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1978) (en banc), the plaintiff attempted to protect an internal investigation prepared by a law firm into allegations that it had bribed purchasing agents. The investigation had been voluntarily produced to the SEC. It was argued that this supplying of information to the government constituted a waiver of attorney-client privilege. The Eighth Circuit disagreed, holding that, because the plaintiff "disclosed these documents in a separate and nonpublic SEC investigation, . . . only a limited waiver of the privilege occurred." *Id.*

### B. Selective waiver is appropriate because CCSAO is not an adversary of the persons seeking disclosure.

Nor do the cases that Defendant Officers cite rejecting selective waiver apply to this case. Defendant Officers rely on *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981) for the proposition that a party should not be permitted "to disclose and to whom, but to assert a privilege and refuse to disclose to another". R. 768 at 5. But *Permian* stood for the proposition that a "client cannot be permitted to pick and choose among his *opponents*, waiving the privilege as to some and resurrecting the claim of confidentiality to obstruct others". *Id*. at 1221 (emphasis added). COPA, however, is not adversarial to CCSAO. There is no concern that CCSAO is "invok[ing] the privilege as to communications whose confidentiality [it] has already compromised for [its] own benefit." *Id*. at 1221. In fact, the Seventh Circuit has recognized that "a fear that selective disclosure will be used to obtain a strategic advantage" is "not operative [when] the government is not an adversary of the persons seeking disclosure." *Dellwood Farms v. Cargill*, 128 F.3d at 1127. The principles of fairness that have formed the basis for various circuits' rejection of selective waiver have no application here, where CCSAO is not a party to the litigation and did not disclose information for its own benefit.

### C. The Seventh Circuit has not rejected selective waiver.

Defendant Officers incorrectly assert that the Seventh Circuit has rejected selective waiver, relying on *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir. 1997) and *Burden-Meeks v. Welch*, 319 F.3d 897 (7th Cir. 2003). R. 768 at 6. But, as the Northern District of Illinois has recognized, the Seventh Circuit actually "left

the door open for this theory" in *Dellwood Farms. Jaffe*, 244 F.R.D. at 432. In *Dellwood Farms*, the government played tapes for corporate defense counsel to persuade the company to plead guilty. *Dellwood Farms*, 128 F.3d at 1124. During the subsequent litigation against the company, the plaintiffs argued that the government had waived its law enforcement privilege by playing the tapes. *Id*. Although the Seventh Circuit did not take a formal position on the selective waiver issue, it observed that courts generally have rejected it. But in doing so, the court explained that the basis of this rejection was the fact that "courts feel, reasonably enough, that the possessor of the privileged information should have been more careful, as by obtaining an agreement by the person to whom they made the disclosure to not spread it further." *Id*. at 1127. Ultimately, the court found that the government had not deliberately waived its privilege but had made a mistake by not securing a promise from the lawyers or directors to keep the notes confidential. *Id*. at 1126. The court did not foreclose the application of selective waiver in situations such as this, where a reasonable expectation of confidentiality existed.

*Burden-Meeks* similarly did not foreclose the application of selective waiver in this case. *Burden-Meeks* involved former city employees who sued their employer, the mayor of Country Club Hills, alleging wrongful termination. During the litigation, a dispute arose over access to report prepared for the Intergovernmental Risk Management Agency (IRMA) by its lawyers, assessing the city's efforts to curtail litigation exposure. *Burden-Meeks v. Welch*, 319 F.3d 897 (7th Cir. 2003). IRMA refused to disclose the report, asserting attorney-client privilege. The court concluded

that IRMA had waived the attorney-client privilege, however, because it had previously shared the report with the mayor, a defendant in the lawsuit. *Id*. at 899. The Seventh Circuit recognized that disclosure to third parties "almost invariably" waives the attorney-client privilege. *Id*. at 899. But the court also noted that one circuit court "thinks that disclosure to a regulatory body does not surrender the privilege with respect to other private persons," although "the majority view is otherwise." *Id*. It did not engage in further analysis, however, because "the Mayor of Country Club Hills was not acting as IRMA's regulator." *Id*. at 899. Thus, *Burden-Meeks* also did not determine the application of selective waiver in situations involving disclosures to government agencies for purposes of oversight.

*Burden-Meeks* and *Dellwood Farms* are also distinguishable in that they dealt with the attorney-client privilege and work-product privilege. As explained below, there is a stronger justification for application of selective waiver in the context of deliberative process privilege.

**D. Selective Waiver is Consistent with the Purpose of the Deliberative Process Privilege.**

There is an even stronger argument for applying selective waiver as to the deliberative process privilege than there was for applying it to the attorney-client privileges in *Jaffe* and *Diversified Industries*. Notably, the purpose of attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Courts that have rejected selective waiver did so in part on the reasoning in *Upjohn*,

concluding that selective waiver is incongruent with the purpose of the privilege. *See Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1425 (3d Cir. 1991) ("[S]elective waiver does not serve the purpose of encouraging full disclosure to one's attorney in order to obtain informed legal assistance; it merely encourages voluntary disclosure to government agencies, thereby extending the privilege beyond its intended purpose."); *see also Dellwood Farms*, 128 F.3d at 1127.

Conversely, the purpose of the deliberative process privilege is to protect open and frank discussion among government personnel to enhance the quality of decisions. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *Nat'l Immigrant Just. Ctr. v. U.S. DOJ*, 953 F.3d 503, 508 (7th Cir. 2020). The conversations between COPA and CCSAO personnel in this case were just that: frank discussions between government personnel in furtherance of the administration of justice.

## II. Even if selective waiver does not apply, a broad subject-matter waiver is not appropriate.

Even assuming selective waiver does not apply, there is no support for Defendant Officers' contention that "the CCSAO not only waived its privilege assertions with regard to the specific cases discussed[;] it waived the privilege entirely as to any other Watts-related cases in which the CCSAO agreed, or did not agree, to vacate a conviction." R. 768 at 5. Limited disclosures, especially those that are not public or are specific to certain investigations, do not constitute a waiver of privilege for all deliberative materials. *See In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) (explaining that "all-or-nothing approach has not been adopted with regard to

executive privileges generally, or to the deliberative process privilege in particular"); *Russell v. Department of the Air Force*, 682 F.2d 1045 (D.C. Cir. 1982) (holding privilege applied to pages of draft manuscript that were edited out of final history despite public release of final report).

The record here reflects at most a limited disclosure.   This contradicts Defendant Officers' assertion that CCSAO "agreed to waive the privilege." R. 768 at 5. To the extent that this court holds the CCSAO inadvertently waived the deliberative process privilege with regard to other parties, any such waiver applies only to what was actually discussed.

### IV. CCSAO is not the only source of this information.

Alternatively, Defendant Officers argue that there is a substantial need for these depositions because they cannot obtain the information from other, non-privileged sources. In doing so, Defendant Officers mischaracterize a statement from CCSAO's reply in support of its motion to quash. CCSAO did not "assert[] that the information Defendant Officers are seeking is 'largely available from other sources other than the CCSAO.'" Dkt. 734-2, p. 9 (quoting Dkt. 590, p. 8). The full sentence from which Defendants draw this language reads: "Even those requests that could be considered 'purely factual' are largely available from sources other than the CCSAO." Dkt. 590,

p. 8. While Defendants could obtain factual information from other sources, as explained in CCSAO's reply, *id.*, the information Defendants are seeking exceeds the bounds of what can properly be considered purely factual. Defendants seek detailed information about "the reasons or factors that were considered (or not considered) in agreeing to vacate . . . convictions," Dkt. 734-2, p. 9, which is not available from other sources, precisely because it is protected by the deliberative process privilege.

## Conclusion

This court should conclude that CCSAO's disclosures to COPA did not constitute a broad waiver of its deliberative process privilege.

    Respectfully,

    KIMBERLY M. FOXX
    Cook County State's Attorney

    By:    /s/ *Jessica Wasserman*
            Jessica Wasserman
            Lyle Henretty
            Assistant State's Attorneys
            500 Richard J. Daley Center
            Chicago, Illinois 60602
            (312) 603-5967
            (312) 603-3116
            Jessica.Wasserman@cookcountysao.org
            Lyle.Henretty@cookcountysao.org